United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 14, 2023

Nathan Ochsner, Clerk

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SORRENTO THERAPEUTICS, INC., *et al.*[1] | ) | Case No. 23-90085 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 390** |

### ORDER (I) APPROVING BID PROCEDURES, (II) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") approving the bid procedures attached hereto as Exhibit A (the "Bid Procedures"), approving the assumption and assignment procedures attached hereto as Exhibit C (the "Assumption and Assignment Procedures"), approving the form of the notices attached hereto as Exhibit B (the "Sale Notice") and Exhibit D (the "Cure Notice") and the manner of service thereof, and granting related relief, all as more fully set forth in the Motion; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court on April 14, 2023:[3]

---

[1]   The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842) and Scintilla Pharmaceuticals, Inc. (7956).  The Debtors' service address is: 4955 Directors Place, San Diego, CA 92121.

[2]   Capitalized terms used but not otherwise defined have the meanings ascribed to them in the Motion.

[3]   The findings and conclusions set forth in this Order constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**ACCORDINGLY, THIS COURT FINDS THAT:**

A.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  This Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and sufficient and no other notice be provided.

C.     The legal and factual bases set forth in support of the Motion establish just cause for the relief granted herein.  The Debtors demonstrated a compelling and sound business justification for this Court to enter this Order, approving the Bid Procedures and the Assumption and Assignment Procedures, and the dates and deadlines set forth therein.

D.     The Bid Procedures attached as Exhibit A are (i) fair, reasonable, and appropriate and (ii) designed to promote participation and active bidding to maximize value for the Debtors' estates.  The Bid Procedures were negotiated at arm's length, in good faith, and without collusion.

E.     The Assumption and Assignment Procedures attached as Exhibit C are (i) fair, reasonable, and appropriate and (ii) comply with section 365 of the Bankruptcy Code.

F.     The Sale Notice attached as Exhibit B and the Cure Notice attached as Exhibit D are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Sales, the Bid Procedures, and the Assumption and Assignment Procedures (and any cure amounts), respectively.

**ACCORDINGLY, THIS COURT ORDERS THAT:**

1.     ***Objections Overruled.***  Any and all objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights with respect to such relief, are overruled and denied on the merits with prejudice.

2.      ***Bid Procedures***.  The Bid Procedures attached as <u>Exhibit A</u> are fully incorporated and approved in their entirety.  All dates and deadlines set forth in the Bid Procedures are hereby established. The Bid Procedures shall govern the submission, receipt, and analysis of all bids relating to (a) the potential raising of debt, equity, or hybrid financing or consummation of a restructuring transaction through a chapter 11 plan of reorganization (any of the foregoing, a "<u>Capital Transaction</u>") and/or (b) the sale or disposition of all or any portion of the Debtors' assets (the "<u>Assets</u>") under section 363 of the Bankruptcy Code (a "<u>Sale</u>" and together with a Capital Transaction, a "<u>Transaction</u>").  Any party desiring to propose a Transaction shall comply with this Order, including the Bid Procedures.  The Debtors are authorized to schedule one or more Auctions in connection with the Bid Procedures.

3.      ***Sale Notice***.  The form of the Sale Notice attached as <u>Exhibit B</u> is approved.  The failure to specifically include a reference to any particular provision of the Bid Procedures in the Sale Notice shall not diminish or impair the effectiveness of such provision.  The Debtors shall serve the Sale Notice on all known parties in interest in the chapter 11 cases, post the Sale Notice on the Debtors' claims, noticing, and solicitation agent's website for these chapter 11 cases, and publish the Sale Notice in a national publication (with such modifications that the Debtors deem appropriate for publication purposes).  The manner of such notice is approved.  To the extent an Auction or Sale Hearing is scheduled, the Debtors shall provide notice thereof as soon as reasonably practicable.

4.      ***Stalking Horse Protections***.  The Debtors' rights to (i) select one or more stalking horse bidders, (ii) enter into a stalking horse agreement, and (iii) offer bid protections to such stalking horse (subject to further Court approval) are reserved.  If the Debtors select a stalking horse bidder or enter into a stalking horse agreement, they shall provide notice thereof by filing a

notice with the Court.  If the Debtors seek to offer bid protections to such stalking horse, they shall seek Court approval thereof and may do so on seven-days' notice (unless otherwise shortened by this Court).

5.    ***Sale Objection Deadline.***  Objections to any Sale—including any objection to the sale of any Assets free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests pursuant to section 363(f) of the Bankruptcy Code but excluding any objection to the (a) conduct of any Auction, (b) identity of any Successful Bidder, and (c) adequate assurance of future performance by any Successful Bidder—must be filed with this Court **no later than 4:00 p.m. (CT) on May 5, 2023**.  If a party fails to file a timely objection, such party shall be barred deemed to consent to such Sale "free and clear" for purposes of section 363(f) of the Bankruptcy Code.

6.    ***Successful Bidder Objection Deadline.***  Objections to the conduct of any Auction, the identity of any Successful Bidder, and the adequate assurance of future performance by any Successful Bidder must be filed with this Court **no later than seven business days after the Debtors file a notice with this Court indicating a Successful Bidder.**

7.    ***Assumption and Assignment Procedures.***  The Assumption and Assignment Procedures attached as Exhibit C are approved.  The Debtors will file with the Court and serve the Cure Notice attached as Exhibit D no later than 14 days after the date hereof and may file supplemental versions of the Cure Notice thereafter.  Any objections to a Cure Notice (whether an initial or supplemental version), including the Cure Amount or the potential assumption and assignment of any contract or lease included on the Cure Notice, must be filed and served **no later than 4:00 p.m. (CT) on the date 14 days after the service thereof.**  The inclusion of a contract or lease in any Cure Notice  will not (a) obligate the Debtors to assume or assign such contract or

lease or (b) constitute any admission or agreement by the Debtors that such contract is an executory contract or unexpired lease.  Only those contracts and leases that are included on a schedule of assumed and/or assigned contracts and leases attached to definitive documentation that is approved by this Court will be assumed and/or assigned (as applicable).

8.      ***Consent to Jurisdiction***.  All persons or entities (whether or not a Qualified Bidder) that participate in the bidding process for a Sale and/or a Capital Transaction will be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

9.      ***Miscellaneous***.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).  The terms and conditions of this Order are immediately effective and enforceable upon its entry.  The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.  The Debtors are authorized to execute any additional or supplemental document incident to the relief granted pursuant to this Order.

10.     ***Retention of Jurisdiction***.  This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed:  April 14, 2023.

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## <u>Exhibit A</u>

**Bid Procedures**

## BID PROCEDURES

On February 13, 2023, Sorrento Therapeutics, Inc. and Scintilla Pharmaceuticals, Inc. (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

The Debtors are conducting a dual-track (i) financing process for the potential raising of debt, equity, or hybrid financing or consummation of a restructuring transaction through a chapter 11 plan of reorganization (any of the foregoing, a "Capital Transaction") and (ii) marketing process for the sale or disposition of all or any portion of the Debtors' assets (the "Assets") under section 363 of the Bankruptcy Code, including (x) the Debtors' equity interests in its non-debtor subsidiaries, including, but not limited to, Scilex Holding Company (a "Stock Sale") and (y) the Debtors' other assets (an "Asset Sale" and together with the Stock Sale, the "Sales")—in each case, as set forth herein.

On the date hereof, the Bankruptcy Court entered the *Order (I) Approving Bid Procedures, (II) Approving Assumption and Assignment Procedures, and (III) Granting Related Relief* (the "Bid Procedures Order"), approving, among other things, the bid procedures to be used in connection with the potential Capital Transaction and the potential Sales (collectively, the "Bid Procedures"). The Bid Procedures are set forth below.

**Any party interested in proposing a Capital Transaction or bidding on the Assets should contact Moelis & Company (Project_Stallion_Sorrento_Bids_EXT@moelis.com), the Debtors' proposed investment banker and financial advisor, if they have any questions or need additional information.**

## Summary of Key Dates

| Date | Deadline/Event | Relevant Transaction (Capital Transaction / Stock Sale / Asset Sale) |
|---|---|---|
| April 14, 2023 at 9:30 a.m. (CT) | Bid Procedures Hearing | All |
| 14 days after the entry of the Bid Procedures Order | Deadline for Debtors to file the Assumption and Assignment Notice and Cure Schedule | All |
| 14 days after service of the Cure Schedule (or Supplemental Cure Schedule) at 4:00 p.m. (CT) | Deadline to object to the Debtors' proposed assumption and assignment of the Potentially Assigned Contracts and related Cure Costs | All |
| May 5, 2023 at 4:00 p.m. (CT) | Deadline to Object to the Sale of the Assets (other than the (i) conduct of | All |

| Date | Deadline/Event | Relevant Transaction (Capital Transaction / Stock Sale / Asset Sale) |
|---|---|---|
| | the Auction, (ii) identity of the Successful Bidder, and (iii) adequate assurance of future performance by the Successful Bidder) | |
| May 16, 2023 at 12:00 p.m. (CT) | Initial Bid Deadline for Stock Sale | Stock Sale |
| May 16, 2023 at 12:00 p.m. (CT) | Initial Bid Deadline for Capital Transaction | Capital Transaction |
| May 25, 2023 at 12:00 p.m. (CT) | Initial Bid Deadline for Asset Sale | Asset Sale |
| June 15, 2023 at 12:00 p.m. (CT) | Final Bid Deadline for Stock Sale | Stock Sale |
| June 15, 2023 at 12:00 p.m. (CT) | Final Bid Deadline for Capital Transaction | Capital Transaction |
| June 29, 2023 at 12:00 p.m. (CT) | Final Bid Deadline for Asset Sale | Asset Sale |
| TBD (June 19, 2023– June 30, 2023) | Auction for Stock Sale (if necessary) | Stock Sale |
| TBD (July 3, 2023– July 14, 2023) | Auction for Asset Sale (if necessary) | Asset Sale |
| 48 hours after conclusion of applicable Auction | Deadline to file Notice of Successful Bidder (with Designated Contracts to be Assumed and Assigned) | All |
| 7 business days after filing of applicable Notice of Successful Bidder | Deadline to object to (i) conduct of the Auction, (ii) identity of the Successful Bidder, and (iii) adequate assurance of future performance by Successful Bidder | All |

| Date | Deadline/Event | Relevant Transaction (Capital Transaction / Stock Sale / Asset Sale) |
|---|---|---|
| TBD | Sale Hearing(s) / Closing(s) | Sales |
| TBD | Deadline to Object to Capital Transaction / Related Hearing[1] | Capital Transaction |

## I.      CONSULTATION PARTIES

As appropriate throughout the Bidding Process, the Debtors will consult with the Official Committee of Unsecured Creditors, the Official Committee of Equity Holders, JMB Capital (the Debtors' postpetition lender), and any other party that the Debtors deem appropriate (collectively, the "Consultation Parties") and will (a) coordinate with Potential Bidders (as defined below) regarding the conduct of their respective due diligence, (b) evaluate bids from Potential Bidders, (c) following consultation with the Consultation Parties, negotiate any bid made (a "Bid"), and (d) following consultation with the Consultation Parties, make such other determinations as are provided for in these Bid Procedures (collectively, the "Bidding Process"); *provided* that the Debtors (i) will not consult with a Consultation Party that is actively participating (or intends to participate) as a bidder and (ii) will not consult with any Consultation Party if the Debtors determine, in their business judgment, that consulting with such Consultation Party regarding any issue, selection, or determination is (y) likely to have a chilling effect on potential bidding or (z) otherwise contrary to the goal of maximizing value, either through a Sale process or Capital Transaction, for the Debtors' estates, their creditors, and all other parties in interest.  To the extent a member of the Official Committee of Unsecured Creditors or the Official Committee of Equity Holders is actively participating (or intends to participate) as a bidder, such member shall be walled off from any consultation rights of the Official Committee of Unsecured Creditors or the Official Committee of Equity Holders (as applicable).

## II.     CONFIDENTIALITY AGREEMENT AND POTENTIAL BIDDERS

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process, each person or entity must enter into (unless previously entered into in form and substance satisfactory to the Debtors) with the Debtors an executed confidentiality agreement in form and substance satisfactory to the Debtors (the "Confidentiality Agreement").  Further, to participate in the diligence process and receive access to due diligence information, a party must, upon request by the Debtors, submit to the Debtors or their advisors sufficient information, as determined by the Debtors, to allow the Debtors to determine that the interested party (a) has the financial wherewithal to consummate the applicable Capital Transaction or Sale and (b) intends to access the Data Room (as defined below) for a purpose consistent with these Bid Procedures. Each person or entity that enters into the Confidentiality Agreement with the Debtors no later than the Initial Bid Deadline (as defined below) is hereinafter referred to as a "Potential Bidder."

---

[1]      For the avoidance of doubt, all parties' rights with respect to the consummation of a Capital Transaction (including a chapter 11 plan) and any objections thereto are reserved.

After a Potential Bidder enters into a Confidentiality Agreement with the Debtors, the Debtors shall deliver or make available (unless previously delivered or made available) to each Potential Bidder certain designated, confidential information (including, if applicable, financial data) with respect to the Assets.

## III.   DUE DILIGENCE

The Debtors will grant each of the Consultation Parties (on a professional eyes' only basis) and each Potential Bidder access to the Debtors' confidential electronic data room concerning the Assets (the "Data Room"). Up to and including the Final Bid Deadline (as defined below), the Debtors will afford any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors, in their business judgment, determine to be reasonable, available, and appropriate under the circumstances. The Debtors may designate one or more representatives to coordinate all reasonable requests for additional information and due diligence access from Potential Bidders. In the event that any such due diligence material is in written form and has not previously been provided to any other Potential Bidder, the Debtors will simultaneously provide access to such materials to all Potential Bidders. Each Potential Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Debtors and the Assets in conjunction with submitting its Bid.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Debtors or the Assets to any person or entity who is not a Potential Bidder.

The Debtors make no representation or warranty as to the information provided through this due diligence process or otherwise, including the documents in the Data Room, except as set forth in any executed definitive documents for the Capital Transaction or the Sales.

## IV.   NO COMMUNICATIONS AMONG BIDDERS

There shall be no communications regarding potential Bids, a potential Capital Transaction, or a potential Sale between or among any bidders unless the Debtors, after consultation with the Consultation Parties, have previously authorized such communication in writing. The Debtors reserve the right, in their reasonable business judgment and after consultation with the Consultation Parties, to disqualify any bidder that the Debtors believe in their reasonable judgement has communicated with another bidder in violation of these Bid Procedures.

## V.   CREDIT BIDDING

Each Potential Bidder that has a valid and perfected lien that secures an allowed claim on any of the Assets (a "Secured Creditor") may seek to credit bid all or any portion of the Secured Creditor's claim on a dollar-for-dollar basis pursuant to, and subject to, section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured and only to the extent such credit bid is permitted under the Bankruptcy Code and non-bankruptcy law.

## VI.   BID DEADLINES

*Stock Sale*.  A Potential Bidder that desires to make a Bid for a Stock Sale shall deliver written copies of its Bid in both Portable Document Format (.pdf) and Microsoft Word (.doc/.docx) to Moelis & Company (Project_Stallion_Sorrento_Bids_EXT@moelis.com), by no later than May 16, 2023 at 12:00 p.m. (Central Time) (as may be extended, the "Initial Stock Bid Deadline") and no later than June 15, 2023, at 12:00 p.m. (Central Time) (as may be extended, the "Final Stock Bid Deadline").

*Asset Sale*.  A Potential Bidder that desires to make a Bid for an Asset Sale shall deliver written copies of its Bid in both Portable Document Format (.pdf) and Microsoft Word (.doc/.docx) to Moelis & Company (Project_Stallion_Sorrento_Bids_EXT@moelis.com), by no later than May 25, 2023, at 12:00 p.m. (Central Time) (as may be extended, the "Initial Asset Bid Deadline") and no later than June 29, 2023, at 12:00 p.m. (Central Time) (as may be extended, the "Final Asset Bid Deadline").

*Capital Transaction*.  A Potential Bidder that desires to make a Bid for a Capital Transaction (which may be in the form of a term sheet for a plan of reorganization (a "Plan Term Sheet") shall deliver written copies of its Bid in both Portable Document Format (.pdf) and Microsoft Word (.doc/.docx) to Moelis & Company (Project_Stallion_Sorrento_Bids_EXT@moelis.com), by no later than May 16, 2023, at 12:00 p.m. (Central Time) (as may be extended, the "Initial Capital Bid Deadline" and together with the Initial Stock Bid Deadline and the Initial Asset Bid Deadline, the "Initial Bid Deadlines") and no later than June 15, 2023, at 12:00 p.m. (Central Time) (as may be extended, the "Final Capital Bid Deadline" and together with the Final Stock Bid Deadline and the Final Asset Bid Deadline, the "Final Bid Deadlines").

Any Bids submitted by the applicable Initial Bid Deadlines are referred to as "Initial Bids" and any Bids submitted by the applicable Final Bid Deadlines are referred to as "Final Bids."  As soon as reasonably practicable following each Bid Deadline, the Debtors will provide to the Consultation Parties copies of all Bids (with such distribution permissible by electronic means).

## VII.   INITIAL BID REQUIREMENTS

All Initial Bids must comply with the following requirements (collectively, the "Initial Bid Requirements"):

1.   **Identity.**  The Bid must fully disclose the identity of the Potential Bidder and provides the contact information of the specific person(s) whom the Debtors or their advisors should contact (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Capital Transaction or proposed Sale) in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder.  The Bid must fully disclose what connections the Potential Bidder has (if any) to the Debtors or the Debtors' principals.

2. **Purchase Price.**

   a. With respect to a proposed Sale, the Bid must set forth the purchase price to be paid by such Potential Bidder and the forms of consideration the Potential Bidder intends to use to pay such purchase price.

   b. With respect to a proposed Capital Transaction, the Bid must set forth the cash or other consideration to be furnished, including and identifying separately any cash and non-cash components.

3. **Terms**.

   a. With respect to a proposed Sale, the Bid must identify the Assets with reasonable specificity and the particular liabilities, if any, such bidder seeks to assume.

   b. With respect to a proposed Capital Transaction, the Bid must describe (i) in reasonable detail the terms and conditions of such Capital Transaction and (ii) in the event the Bid is a Plan Term Sheet, the treatment of various classes of creditor claims, which must comply with the applicable requirements of the Bankruptcy Code.

4. **Diligence**.  The Bid must contain an acknowledgment that the Potential Bidder has relied solely upon its own independent review, diligence, investigation, and/or inspection of any documents and any other information in making the Bid.

5. **Regulatory**.  In the Bid, the Potential Bidder must indicate whether it believes its Bid will be subject to any regulatory approvals, including review by the Committee on Foreign Investment in the United States or review under the Hart-Scott-Rodino Act.

The Debtors reserve the right, after consultation with the Consultation Parties, to seek Bankruptcy Court approval of an Initial Bid prior to the Final Bid Deadline and without an Auction (as defined below), to the extent the Debtors determine that doing so would maximize value for their estates.

## VIII. STALKING HORSE / BID PROTECTIONS

After consultation with the Consultation Parties, the Debtors reserve the right to select one or more Potential Bidders to act as stalking horse bidders in connection with a Sale or Capital Transaction (each, a "Stalking Horse Bidder") and to enter into an agreement with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement").  The Debtors will provide notice of any Stalking Horse Bidder designation and any Stalking Horse Agreement by filing a notice with the Bankruptcy Court.  The Debtors also reserve the right to offer a break-up fee and/or expense reimbursement to a Stalking Horse Bidder ("Bid Protections") and to seek Bankruptcy

Court approval thereof on seven-days' notice (unless otherwise shortened by the Bankruptcy Court).

## IX.    FINAL BID REQUIREMENTS

All Final Bids must comply with the following requirements (collectively, the "<u>Final Bid Requirements</u>" and together with the Initial Bid Requirements, the "<u>Bid Requirements</u>"):

1.    **Documentation**.

    a.    With respect to a proposed Sale, the Bid must be accompanied by an executed purchase agreement, based on either a form provided by the Debtors or the Stalking Horse Agreement, if one exists.

    b.    With respect to a proposed Capital Transaction, the Bid must be accompanied by a detailed transaction document capable of being executed, whether that be a credit agreement, Plan Term Sheet, or otherwise, as applicable.

2.    **Identity.**  The Bid must fully disclose the identity of the Potential Bidder and provides the contact information of the specific person(s) whom the Debtors or their advisors should contact (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Capital Transaction or proposed Sale) in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder.  The Bid must fully disclose what connections the Potential Bidder has (if any) to the Debtors or the Debtors' principals.

3.    **Purchase Price.**

    a.    With respect to a proposed Sale, the Bid must set forth the purchase price to be paid by such Potential Bidder and the forms of consideration the Potential Bidder intends to use to pay such purchase price.

    b.    With respect to a proposed Capital Transaction, the Bid must set forth the cash or other consideration to be furnished, including identifying separately any cash and non-cash components.

4.    **Minimum Bid**.  In the event a Stalking Horse Bidder is designated, each Bid must exceed (a) the Stalking Horse Bid *plus* (b) the amount of the Bid Protections payable to such Stalking Horse Bidder (if any).

5.    **Terms**.

    a.    With respect to a proposed Sale, the Bid must identify the Assets (including the specific executory contracts and unexpired leases)

such Potential Bidder wishes to bid on and the liabilities and obligations (including applicable cure costs) to be assumed by the Potential Bidder in the Sale, and must acknowledge that the Potential Bidder shall be solely responsible for the payment of any cure cost(s) required pursuant to section 365 of the Bankruptcy Code.

b.   With respect to a proposed Capital Transaction, the Bid must describe (i) in reasonable detail the terms and conditions of such Capital Transaction and (ii) in the event the Bid is a Plan Term Sheet, the Bid must also provide the treatment of various classes of creditor claims, which must comply with the applicable requirements of the Bankruptcy Code.

6.   **Irrevocable.**  The Bid must be irrevocable unless and until the Debtors accept a higher or otherwise better Bid and such bidder is not selected as the Backup Bidder (as defined below).  If the Bid is chosen as the Backup Bid (as defined below), the Bid must remain irrevocable until the Debtors and the Successful Bidder consummate the Capital Transaction or Sale, as applicable.

7.   **No Contingencies.**  The Bid must not be subject to contingencies or conditions of any kind, including, without limitation, contingencies related to financing, internal approval, or due diligence.

8.   **Diligence**.  The Final Bid must contain an acknowledgment that the Potential Bidder has relied solely upon its own independent review, diligence, investigation, and/or inspection of any documents and any other information in making the Bid.

9.   **Backup Bid**.  The Bid must provide that the Potential Bidder agrees to serve as a backup bidder (the "Backup Bidder") if the Potential Bidder's Qualified Bid (as defined below) is the highest or best bid after the Successful Bid (as defined below) (the "Backup Bid") through the applicable closing date (the "Closing Date").

10.  **Adequate Assurance of Future Performance**.  With respect to a proposed Sale, the Bid must be accompanied by adequate assurance of future performance information (the "Adequate Assurance Information"), which should include (i) information about the Potential Bidder's financial condition, such as federal tax returns for the previous two years, a current financial statement, or bank account statements, (ii) information demonstrating (in the Debtors' business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale, (iii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, and (iv) such additional information regarding the

Potential Bidder as the Potential Bidder may elect to include. By submitting a Final Bid, each Potential Bidder agrees that the Debtors may disseminate its Adequate Assurance Information to affected counterparties to any contracts or leases potentially being assumed and assigned in connection with the Sale and the Consultation Parties in the event that the Debtors determine such bid to be a Qualified Bid (as defined below).

11. **Good Faith Deposit; Financial Capacity**. The Bid must be accompanied by (i) a deposit in the form of a certified check or wire transfer, payable to the order of the Debtors, in the amount of (x) in the event of a Sale, 10% of the cash consideration of the Bid and/or (y) in the event of a Capital Transaction, 10% of the cash proceeds to be distributed to the Debtors, which funds will be deposited into an escrow account to be identified and established by the Debtors (a "<u>Good Faith Deposit</u>"), and (ii) written evidence, documented to the Debtors' satisfaction, that demonstrates the Potential Bidder has available cash and/or a commitment for financing if selected as the Successful Bidder (as defined below) (*provided, however*, that the closing shall not be contingent in any way on the Successful Bidder's financing), and such other evidence of ability to consummate the transaction(s) as the Debtors may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (*provided further* that such commitments may have covenants and conditions acceptable to the Debtors). The Debtors reserve the right to increase the Good Faith Deposit for one or more Qualified Bidders (as defined below) in their sole discretion after consulting with the Consultation Parties.

12. **Regulatory**. In the Bid, the Potential Bidder must indicate whether it believes its Bid will be subject to any regulatory approvals, including review by the Committee on Foreign Investment in the United States or review under the Hart-Scott-Rodino Act.

## X.    DESIGNATION OF QUALIFIED BIDS

The Debtors will review each Final Bid received from a Potential Bidder and, after consultation with the Consultation Parties, determine whether it meets the requirements set forth above. A Final Bid received from a Potential Bidder that meets the Final Bid Requirements, and is otherwise satisfactory to the Debtors, will be considered a "<u>Qualified Bid</u>" and each Potential Bidder that submits a Qualified Bid will be considered a "<u>Qualified Bidder.</u>" The Debtors shall inform Potential Bidders whether or not their Final Bids have been designated as Qualified Bids prior to any Auctions and, in the event the Debtors inform a Potential Bidder that it has not submitted a Qualified Bid, they shall provide information as to what is needed for the Potential Bidder to submit a Qualified Bid and become a Qualified Bidder.

The Debtors, in their business judgment, and after consultation with the Consultation Parties, reserve the right to reject any Bid at any time if such Bid, among other things:

(1)      requires any indemnification of the Potential Bidder;

(2)      is not received by the applicable Bid Deadline;

(3)      does not comply with the applicable Bid Requirements or the Bankruptcy Code;

(4)      is contrary to the best interests of the Debtors and their estate;

(5)      is subject to any contingencies or conditions (including representations, warranties, covenants, and timing requirements) of any kind or any other conditions precedent to such party's obligation; or

(6)      does not, in the Debtors' determination (after consultation with the Consultation Parties), include fair and adequate terms or the acceptance of which would not be in the best interests of the Debtors' estates or the Auction.

Any Bid rejected pursuant to the foregoing shall not be deemed to be a Qualified Bid; *provided* that the Debtors have the right to work with the parties to any rejected Bid to cure any such defects.  In the event that any Bid is so rejected, the Debtors shall cause the Good Faith Deposit of such Potential Bidder (including all accumulated interest thereon) to be refunded to it no later than five business days after the Bid Deadline.

## XI.   AUCTION

After consultation with the Consultation Parties, if the Debtors receive only one Qualified Bid with respect to any particular Assets (or all of the Assets) or otherwise determine that an auction would not maximize value for the Debtors' estates with respect to a proposed transaction, (a) the Debtors may not hold an auction with respect to such transaction; (b) the Qualified Bid, as applicable, may be deemed the Successful Bid with respect to such transaction; (c) the Qualified Bidder may be named the Successful Bidder with respect to such transaction; and (d) the Debtors may seek Court approval of the Successful Bidder and provide separate notice thereof.

If the Debtors determine to conduct an auction (an "Auction"), they will provide further notice of the Auction to parties in interest. Unless otherwise ordered by the Bankruptcy Court for cause shown, only the applicable Qualified Bidders are eligible to participate at the applicable Auction. The Consultation Parties and the U.S. Trustee, however, shall be permitted to attend the Auctions. In addition, any creditor of the Debtors, or any party the Debtors deem appropriate, may observe the Auctions; *provided, however*, that any such party must provide notice of its intent to observe to the Debtors at least one day before the applicable Auction by electronic mail to Ebba Gebisa (ebba.gebisa@lw.com) and Jonathan Gordon (jonathan.gordon@lw.com). At least one day prior to the start of the applicable Auction, each Qualified Bidder must inform the Debtors in writing whether it intends to participate in the Auction.

The bidding at the Auctions will be transcribed and the Debtors will maintain a transcript of all Bids made and announced at the Auctions. Each Qualified Bidder participating in the Auctions will be required to confirm in writing, and on the record at the applicable Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful

Bidder. All bidders at the Auctions will be deemed to have consented to the core jurisdiction and constitutional authority of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auctions, the Sales, and all agreements entered into in connection with any proposed sale transaction.

The Debtors will determine, after consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best applicable Qualified Bid for purposes of constituting the opening bid at the applicable Auction (the "Starting Bid(s)"). The determination of which Qualified Bid constitutes the Starting Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors (after consultation with the Consultation Parties) deem relevant to the value of the Qualified Bid to the Debtors' estate, including, among other things, the following: (a) the amount and nature of the consideration, including any obligations to be assumed; (b) the executory contracts and unexpired leases of the Debtors, if any, for which assumption and assignment or rejection is required, and the costs and delay associated with any litigation concerning executory contracts and unexpired leases necessitated by such bid; (c) the extent to which such modifications are likely to delay closing of the proposed transaction and the cost to the Debtors of such modifications or delay; (d) the likelihood of the Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals) and the timing thereof; (e) the net benefit to the Debtors' estate; and (f) the tax consequences of such Qualified Bid. The Starting Bid(s) will be provided to Qualified Bidders prior to the applicable Auction.

Bidding at the Auctions will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one Subsequent Bid (as defined below) is submitted by a Qualified Bidder that the Debtors determine, after consultation with the Consultation Parties, is (i) for the first round, a higher or otherwise better offer than the Starting Bid and (ii) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below) (a "Subsequent Bid"). After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that it believes to be the highest or otherwise best applicable offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid, subject to the Debtors' authority to revise the Auction procedures as set forth below.

## XII.    SUCCESSFUL AND BACKUP BIDS

Immediately prior to the conclusion of the applicable Auction, the Debtors, after consultation with the Consultation Parties, will: (a) determine, consistent with the Bid Procedures, which bid constitutes the highest or otherwise best bid (the "Successful Bid") and (b) notify all Qualified Bidders at the Auction, prior to its conclusion, of the name of the maker of the Successful Bid (the "Successful Bidder") and the amount and other material terms of the Successful Bid.

The Debtors may, after consultation with the Consultation Parties, designate the Backup Bid (and the corresponding Backup Bidder) to close with respect to a proposed transaction in the event that the Successful Bidder does not close its proposed transaction. In the event that a Successful Bidder fails to close prior to such date as specified in the applicable documents (or such date as may be extended by the Debtors), the Debtors, upon written notice to the Backup Bidder,

may designate the applicable Backup Bid as the Successful Bid for such transaction, in which case the Backup Bidder will be deemed to be the Successful Bidder for such transaction and the Debtors will be authorized, but not directed, to close the transaction with the Backup Bidder subject to the terms of the Backup Bid and any orders of the Bankruptcy Court.

Unless the Bankruptcy Court orders otherwise, the Debtors will not consider any Bids or Subsequent Bids submitted after the conclusion of the applicable Auction and any and all such Bids and Subsequent Bids will be deemed untimely and will under no circumstances constitute a Qualified Bid.

Within 48 hours following the conclusion of the applicable Auction, the Debtors will file a notice on the Bankruptcy Court's docket identifying (with specificity) the Successful Bidder(s), any applicable Backup Bidders, and, if applicable, the list of executory contracts and unexpired leases that the Successful Bidder(s) want assumed and assigned (with their corresponding cure amounts) (a "Notice of Successful Bidder").

The Debtors' presentation to the Bankruptcy Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtors' acceptance of such Bid. The Debtors will have accepted a Successful Bid only when such Successful Bid has been approved by the Bankruptcy Court.

## XIII.    BANKRUPTCY COURT HEARING

Each Successful Bid and any Backup Bid (or if no Qualified Bid other than that of one applicable Qualified Bidder is received and no Auction is held, then the Qualified Bid of such Qualified Bidder) is subject to approval by the Bankruptcy Court. As and when appropriate, the Debtors will schedule, and provide notice of, a hearing for the Bankruptcy Court to consider approval of the transaction(s) contemplated by the Qualified Bid(s) (in the event of a Sale, the "Sale Hearing").

## XIV.    RETURN OF GOOD FAITH DEPOSIT

The Good Faith Deposits of all Qualified Bidders shall be held in escrow, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court. The Debtors shall retain any Good Faith Deposit submitted by each Successful Bidder. At the closing of a transaction contemplated by a Successful Bid, the applicable Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided. The Good Faith Deposit of any Backup Bidder shall be retained until three business days after the Closing Date. The Good Faith Deposits of any other Qualified Bidders will be returned no later than seven business days following the applicable Auction.

If a Successful Bidder (or, if the transaction is to be closed with a Backup Bidder, then the Backup Bidder) fails to consummate the transaction because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the applicable transaction documents (as such documents may be amended or modified at the Auction), the Debtors and their estates shall be entitled to retain the Good Faith Deposit of such Successful Bidder (or, if the transaction is to be closed with the Backup Bidder, then such Backup Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

## XV.     RESERVATION OF RIGHTS AND MODIFICATIONS

Notwithstanding any of the foregoing, the Debtors, after consultation with the Consultation Parties, reserve the right to modify these Bid Procedures, including, without limitation, to extend the deadlines set forth herein, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all potential bidders, adjourn or cancel the Auctions at or prior to the Auctions, seek Bankruptcy Court approval for a private sale before a Bid Deadline (i.e., without an Auction), and/or adjourn any Bankruptcy Court hearings.

The Debtors also may, after consultation with the Consultation Parties, announce at the Auctions additional procedural rules (*e.g.*, the amount of time to make Subsequent Bids, the amount of any required incremental overbids, the requirement that parties submit "best and final" Bids, and conducting an open cry auction, one or more rounds of sealed bidding, or any combination of the foregoing) for conducting the Auctions or otherwise modify these Bid Procedures; *provided* that such rules (1) are not materially inconsistent with these Bid Procedures, the Bankruptcy Code, or applicable orders of the Bankruptcy Court and (2) are disclosed to each Qualified Bidder during the applicable Auction.

For the avoidance of doubt, nothing in these Bid Procedures prevent the Debtors from pursuing or consummating any other transactions that do not constitute a Capital Transaction or Sale, and the Debtors reserve all rights to effectuate the foregoing.

## XVI.    CONSENT TO JURISDICTION

All Potential Bidders submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bid Procedures, any sale documents, or any chapter 11 plan in the Debtors' chapter 11 cases.

## XVII.   AS-IS / WHERE-IS

Any Assets sold pursuant to these Bid Procedures will be conveyed on the applicable Closing Date in their then-present condition, as is, with all faults, and without any warranty whatsoever, express or implied, except as otherwise expressly provided in the transaction documents with the Successful Bidder.

## XVIII. FIDUCIARY DUTIES

Notwithstanding anything to the contrary in these Bid Procedures, nothing in these Bid Procedures shall require the Debtors, after consulting with counsel, to take any action or refrain from taking any action with respect to any proposed Capital Transaction or proposed Sale if taking or failing to take such action would be inconsistent with applicable law or their fiduciary duties.

**Exhibit B**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SORRENTO THERAPEUTICS, INC., *et al.*[1] | ) | Case No. 23-90085 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## <u>NOTICE OF BID PROCEDURES AND POTENTIAL SALES</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1.      On February 13, 2023, Sorrento Therapeutics, Inc. and Scintilla Pharmaceuticals, Inc. (the "<u>Debtors</u>") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code  (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>").

2.      The Debtors are conducting a dual-track (i) financing process for the potential raising of debt, equity, or hybrid financing or consummation of a restructuring transaction through a chapter 11 plan of reorganization (any of the foregoing, a "<u>Capital Transaction</u>") and (ii) marketing process for the sale or disposition of all or any portion of the Debtors' assets (the "<u>Assets</u>") under section 363 of the Bankruptcy Code, including (x) the Debtors' equity interests in its non-debtor subsidiaries, including, but not limited to, Scilex Holding Company (a "<u>Stock Sale</u>") and (y) the Debtors' other assets (an "<u>Asset Sale</u>" and together with the Stock Sale, the "<u>Sales</u>").

3.      On April 10, 2023, the Debtors filed the *Debtors' Emergency Motion for Entry of an Order (I) Approving Bid Procedures, (II) Approving Any Sale of the Debtors' Assets Free and Clear, (III) Approving Assumption and Assignment Procedures, and (IV) Granting Related Relief* [Docket No. 390], seeking approval of (a) procedures pursuant to which the Debtors are authorized to solicit and pursue a Capital Transaction or Sale (the "<u>Bid Procedures</u>"), (b) one or more Sales, free and clear of any liens, claims, and encumbrances under section 363 of the Bankruptcy Code, and (c) the procedures in connection with the assumption and assignment of any executory contracts or unexpired leases the Debtors wish to have assumed and assigned (the "<u>Assumption and Assignment Procedures</u>").

4.      On April [14], 2023, the Court entered the *Order (I) Approving Bid Procedures, (II) Approving Assumption and Assignment Procedures, and (III) Granting Related Relief* [Docket

---

[1]      The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842) and Scintilla Pharmaceuticals, Inc. (7956).  The Debtors' service address is: 4955 Directors Place, San Diego, CA 92121.

No. [ ● ]] (the "<u>Bid Procedures Order</u>"),[2] approving the Bid Procedures and the Assumption and Assignment Procedures, each as attached to the Bid Procedures Order.

5.      Pursuant to the Bid Procedures Order, a party interested in submitting a bid for a Sale or Capital Transaction (a "<u>Bidder</u>" and such bid, a "<u>Bid</u>") must deliver written copies of their Bid in both Portable Document Format (.pdf) and Microsoft Word (.doc/.docx) to Moelis & Company (Project_Stallion_Sorrento_Bids_EXT@moelis.com), by the following deadlines and in compliance with the requirements set forth in the Bid Procedures:

    **(a)**    <u>**Stock Sale**</u>

        **Initial Bid Deadline:  May 16, 2023 at 12:00 p.m. (Central Time)**
        **Final Bid Deadline: June 15, 2023, at 12:00 p.m. (Central Time)**

    **(b)**    <u>**Asset Sale**</u>

        **Initial Bid Deadline:  May 25, 2023 at 12:00 p.m. (Central Time)**
        **Final Bid Deadline: June 29, 2023, at 12:00 p.m. (Central Time)**

    **(c)**    <u>**Capital Transaction**</u>

        **Initial Bid Deadline:  May 16, 2023 at 12:00 p.m. (Central Time)**
        **Final Bid Deadline: June 15, 2023, at 12:00 p.m. (Central Time)**

6.      If the Debtors determine, in accordance with the Bid Procedures, to conduct an auction with respect to a Sale or Capital Transaction (an "<u>Auction</u>"), they will provide further notice of such Auction as soon as reasonably practicable.  The Auction for a Stock Sale (if necessary) will likely take place between June 19, 2023 and June 30, 2023; and the Auction for an Asset Sale (if necessary) will likely take place between July 3, 2023 and July 14, 2023.  If any Auction is scheduled, the Debtors will provide notice of such Auction to parties in interest.  Unless otherwise ordered by the Bankruptcy Court for cause shown, only the applicable Qualified Bidders are eligible to participate at the applicable Auction.  The Consultation Parties and the U.S. Trustee, however, shall be permitted to attend the Auctions.  In addition, any creditor of the Debtors, or any party the Debtors deem appropriate, may observe the Auctions; *provided, however*, that any such party must provide notice of its intent to observe to the Debtors at least one day before the applicable Auction by electronic mail to Ebba Gebisa (ebba.gebisa@lw.com) and Jonathan Gordon (jonathan.gordon@lw.com).

7.      Objections to approval of the Sale(s) (with the exception of objections related solely to the conduct of the Auction(s), identity of the Successful Bidder(s), and ability of the Successful Bidder(s) to provide adequate assurance of future performance, which must be received by a later deadline set forth in the next paragraph), must be filed with the Bankruptcy Court before **4:00 p.m. (Central Time) on May 5, 2023.**

---

[2]      Capitalized terms used but not defined herein have the meanings ascribed to them in the Bid Procedures Order.

8.      Objections related solely to the conduct at the Auction(s), identity of the Successful Bidder(s), and adequate assurance of future performance by the Successful Bidder(s) must be filed with the Bankruptcy Court **no later than seven business days after the filing of the Notice of Successful Bidder**.

9.      Objections to approval of a Capital Transaction will be due by a date to be determined and separately noticed.  If the Debtors seek to consummate a Capital Transaction or Sale, they will also provide further notice of the hearing to consider approval of such transaction.

10.      **UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE DEBTORS' REQUESTED RELIEF WITHOUT FURTHER HEARING AND NOTICE.**

11.      This notice is subject to the terms and conditions of the Bid Procedures Order. The Debtors encourage all parties-in-interest to review the Bid Procedures Order in its entirety (including the Bid Procedures attached thereto). Parties interested in receiving more information regarding the Capital Transaction or Sales and/or copies of any related document, including the Bid Procedures or Bid Procedures Order, may email Ebba Gebisa (ebba.gebisa@lw.com) or Jonathan Gordon (jonathan.gordon@lw.com). In addition, copies of the Bid Procedures, the Bidding Procedures Order, this notice, and other documents filed in these chapter 11 cases are available on the Debtors' claims and noticing agent's website free of charge at https://cases.stretto.com/Sorrento.

Dated:   April [ ● ], 2023

/s/ _____

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Kristhy M. Peguero (TX Bar No. 24102776)
Genevieve M. Graham (TX Bar No. 24085340)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
       kpeguero@jw.com
       ggraham@jw.com

– and –

Caroline Reckler (S.D. Tex Bar No. IL6275746)
Ebba Gebisa (admitted *pro hac vice*)
Jonathan Gordon (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile:  (312) 993-9667
Email:  caroline.reckler@lw.com
       ebba.gebisa@lw.com
       jonathan.gordon@lw.com

– and –

Jeffrey E. Bjork (admitted *pro hac vice*)
Kimberly A. Posin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile:  (213) 891-8763
Email:  jeff.bjork@lw.com
       kim.posin@lw.com

*Counsel to the Debtors*

## **Exhibit C**

**Assumption and Assignment Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SORRENTO THERAPEUTICS, INC., *et al.*[1] | ) | Case No. 23-90085 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

---

**ASSUMPTION AND ASSIGNMENT PROCEDURES**

On February 13, 2023 (the "<u>Petition Date</u>"), the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>").

On the date hereof, the Court entered the *Order Approving Bid Procedures, Approving Assumption and Assignment Procedures, and Granting Related Relief* (the "<u>Bid Procedures Order</u>"), which approved (a) procedures pursuant to which the Debtors are authorized to solicit and pursue debt, equity, or hybrid financing, a restructuring transaction, and/or a sale of all or a portion of the Debtors' assets (a "<u>Transaction</u>") (the "<u>Bid Procedures</u>") and (b) the procedures in connection with the assumption and assignment of any executory contracts or unexpired leases the Debtors wish to have assumed and assigned in connection with a Transaction (the "<u>Designated Contracts</u>"), as set forth below (the "<u>Assumption and Assignment Procedures</u>").[2]

1. The Assumption and Assignment Procedures are as follows:

    a. **The Cure Notice**. On or before fourteen days after entry of the Bid Procedures Order (the "<u>Initial Cure Notice Deadline</u>"), the Debtors shall file with the Court and serve on each counterparty (a "<u>Counterparty</u>") to an executory contract or unexpired lease (the "<u>Executory Contracts or Unexpired Leases</u>") a notice setting forth the following (the "<u>Cure Notice</u>"):[3]

---

[1] The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842) and Scintilla Pharmaceuticals, Inc. (7956). The Debtors' service address is: 4955 Directors Place, San Diego, CA 92121.

[2] Capitalized terms used but not defined have the meanings ascribed to them in the Bid Procedures Order.

[3] The Debtors will serve on all parties requesting notice pursuant to Bankruptcy Rule 2002, via first class mail, a modified version of the Cure Notice, without the list of Potentially Assumed Contracts, which will include instructions regarding how to view the Potentially Assumed Contracts list at https://cases.stretto.com/sorrento.

i. each of the Executory Contracts and Unexpired Leases that *potentially* could be assumed and assigned in connection with a Transaction, including the name of each Counterparty (the "Potentially Assumed Contracts"),

ii. the amount of cure owed on account of each such Potentially Assumed Contract according to the Debtors' books and records (the "Cure Amount");

iii. an express disclaimer that the assumption or assignment of any Executory Contracts or Unexpired Leases is not guaranteed and is subject to Court approval; and

iv. the Cure Objection Deadline (as defined below).

b. **The Cure Objection Deadline**. If a Counterparty objects to the Cure Amount for its Potentially Assumed Contract, the Counterparty must file with the Court an objection (a "Cure Objection") **no later than 14 days following the date of service of such Cure Notice** (the "Cure Objection Deadline").[4]  The Cure Objection must state with specificity the legal and factual grounds for such objection, including, without limitation, the Cure Amounts the Counterparty believes are required to cure defaults under the relevant Executory Contracts or Unexpired Leases.

c. **The Supplemental Cure Notice and Objections**.  Following the initial Cure Notice, the Debtors may file with the Court and serve, by overnight delivery, on the Counterparties a supplemental Cure Notice.  Such Counterparties shall file a Cure Objection to the supplemental Cure Notice **no later than 14 days following the date of service of such supplemental Cure Notice**.

d. **The Notice of Successful Bid**.  As set forth in the Bidding Procedures, within 48 hours after an Auction concludes, the Debtors will file with the Court a notice identifying the Successful Bidder (a "Notice of Successful Bid"), which shall set forth, among other things, the Designated Contracts (if applicable) and their respective Cure Amounts.

e. **Objection to Adequate Assurance of Future Performance**.  If a Counterparty objects to the adequate assurance of future performance by the Successful Bidder (or the conduct of the Auction or the identity of the Successful Bidder), the Counterparty shall file with the Court an objection (an "Adequate Assurance Objection") **no later than seven business days after the filing of the Notice of Successful Bid**.

f. **Reservation of Rights**.  The Debtors' inclusion of any Executory Contract or Unexpired Lease on any Cure Notice is not a guarantee that such Potentially Assumed Contract ultimately will be assumed or assumed and assigned.  The Debtors will seek Court approval of their assumption and assignment of only those

---

[4] The Counterparty's filing of its Cure Objection will automatically serve the objection on the Debtors and other applicable parties in interest.

Executory Contracts or Unexpired Leases that have been selected to be Designated Contracts. The Debtors and their estates reserve any and all rights with respect to any Executory Contracts or Unexpired Leases that are not ultimately designated as Designated Contracts.

g.    **No Objections**. If no Cure Objection or Adequate Assurance Objection is timely received with respect to an Executory Contract or Unexpired Lease designated as a Designated Contract: (i) the Counterparty to such Designated Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Successful Bidder of the Designated Contract and shall be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder); (ii) the Cure Amount for such Designated Contract shall be controlling, notwithstanding anything to the contrary in such Designated Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Designated Contract against the Debtors and their estates or any Successful Bidder, or the property of any of them, that existed prior to the entry of the order approving the assumption and assignment of such Designated Contract; and (iii) upon payment of the Cure Amount, any and all defaults under the Designated Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code.

h.    **Dispute Resolution**. To the extent that the parties are unable to consensually resolve any Cure Objection (any such dispute, a "<u>Cure Dispute</u>"), such Cure Dispute will be adjudicated at the hearing to approve the Transaction or at such other date and time as may be determined by the Debtors or fixed by the Court. To the extent a Cure Dispute exists, the Designated Contract may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Cure Dispute after notice and a hearing, in a form satisfactory to the Successful Bidder in its reasonable discretion. If a Cure Dispute is not satisfactorily resolved, the Successful Bidder may determine that such Designated Contract should be rejected and not assigned, in which case the Debtors and Successful Bidder will not be responsible for any Cure Amounts in respect of such contract.

2.    Counterparties to the Designated Contracts may request adequate assurance of future performance by the Successful Bidder by contacting the undersigned counsel to the Debtors. Such adequate assurance may be provided on a confidential basis for all nonpublic information.

3.    The Successful Bidder will pay undisputed cure amounts consistent with the terms and procedures set forth in the Successful Bidder's asset purchase agreement.

4.    The inclusion of an Executory Contract or Unexpired Lease, or Cure Amounts with respect thereto, on any notice shall not constitute or be deemed a determination or admission by the Debtors or any other party in interest that such contract or lease is an executory contract or

unexpired lease within the meaning of the Bankruptcy Code.  The Debtors reserve all of their rights, claims, and causes of action with respect to all Executory Contracts and Unexpired Leases.

5.  **Assumption and assignment of any Designated Contract shall result in the full release and satisfaction of any cures, claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption.  Any and all proofs of claim based upon executory contracts or unexpired leases that have been assumed in the chapter 11 cases shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Court approving such assumption and (2) the effective date of such assumption, without the need for any objection or any further notice to or action, order, or approval of the Court**.

**Exhibit D**

**Cure Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| SORRENTO THERAPEUTICS, INC., *et al.*[1] | Case No. 23-90085 (DRJ) |
| Debtors. | (Jointly Administered) |

**NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) CURE AMOUNTS**

**You are receiving this notice because you may be a counterparty to a contract or lease with Sorrento Therapeutics, Inc. or Scintilla Pharmaceuticals, Inc. (collectively, the "Debtors"). Please read this notice carefully as your rights may be affected by the transactions described herein.**

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1. On February 13, 2023, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code  (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

2. On April 10, 2023, the Debtors filed the *Debtors' Emergency Motion for Entry of an Order (I) Approving Bid Procedures, (II) Approving Any Sale of the Debtors' Assets Free and Clear, (III) Approving Assumption and Assignment Procedures, and (IV) Granting Related Relief* [Docket No. 390], seeking approval of (a) procedures pursuant to which the Debtors are authorized to solicit and pursue debt, equity, or hybrid financing, a restructuring transaction, and/or a sale of all or a portion of the Debtors' assets (a "Sale") (any of the forgoing, a "Transaction") (such procedures, the "Bid Procedures"), (b) one or more Sales, free and clear of any liens, claims, and encumbrances under section 363 of the Bankruptcy Code, and (c) the procedures in connection with the assumption and assignment of any executory contracts or unexpired leases the Debtors wish to have assumed and assigned in connection with a Transaction, as set forth below (the "Assumption and Assignment Procedures").

3. On April [14], 2023, the Court entered the *Order Approving Bid Procedures, Approving Assumption and Assignment Procedures, and Granting Related Relief* [Docket No. [ ● ]] (the "Bid Procedures Order"), which approved the Bid Procedures and the Assumption and Assignment Procedures.

---

[1] The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842) and Scintilla Pharmaceuticals, Inc. (7956).  The Debtors' service address is: 4955 Directors Place, San Diego, CA 92121.

4.      Pursuant to the Bid Procedures Order, the Debtors may potentially assume and assign to a Successful Bidder (as defined in the Bid Procedures Order) one or more of those executory contracts and unexpired leases listed on <u>Schedule A</u> hereto (collectively, the "<u>Potentially Assigned Contracts</u>"), pursuant to section 365 of the Bankruptcy Code.

5.      The Debtors have indicated on <u>Schedule A</u> the cure amounts, if any, that the Debtors believe must be paid to cure any prepetition defaults and pay all amounts accrued under the Potentially Assigned Contracts (in each instance, the "<u>Cure Amount</u>").

6.      If you agree with the Cure Amount indicated on <u>Schedule A</u>, and otherwise do not object to the Debtor's assignment of your lease or contract, you need not take any further action with respect to this notice.

7.      The Debtors may (a) add or remove a contract or lease to or from <u>Schedule A</u> and/or (b) modify the Cure Amounts listed on <u>Schedule A</u>; *provided* that the Debtors will file an amended <u>Schedule A</u> reflecting such changes and serve such amendment on each of the non-Debtor counterparties affected by such amendments by first-class mail and/or email.

8.      Any party seeking to object to the potential assumption and assignment of their Potentially Assigned Contract or to the validity of the Cure Amount or otherwise assert that any other amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Potentially Assigned Contracts in order for such contract or lease to be assumed and assigned, must file with the Court an objection (the "<u>Cure Objection</u>") that sets forth the specific monetary amount the objector asserts to be due, and the specific types of the alleged defaults, pecuniary losses, accrued amounts and conditions to assignment and the support therefor, no later than **4:00 p.m. (Central Time) on [ ● ]**.

9.      The Debtors will file with the Bankruptcy Court a notice identifying (with specificity) the Successful Bidder(s), any applicable Backup Bidders, and, if applicable, the list of executory contracts and unexpired leases that the Successful Bidder(s) want assumed and assigned (with their corresponding cure amounts) (a "<u>Notice of Successful Bid</u>"), and will serve such notice upon parties in interest not later than 48 hours after the conclusion of an auction (if any).  The deadline for objecting to the assignment of the Potentially Assigned Contracts to such Successful Bidder(s) on the basis of adequate assurance of future performance ("<u>Adequate Assurance Objections</u>") (or the conduct of the auction or the identity of the Successful Bidder) is **seven business days from the date the Notice of Successful Bid is filed**.

10.     At a future hearing regarding approval of the Sale (the "<u>Sale Hearing</u>"), the Debtors will seek Court approval of the assumption and assignment to the Successful Bidder(s) of only those Potentially Assigned Contracts that have been selected by the Successful Bidder(s) to be assumed and assigned (collectively, the "<u>Designated Contracts</u>").  The Debtors and its estate reserve any and all rights with respect to any Potentially Assigned Contracts that are not ultimately designated as Designated Contracts.

11.     If no Cure Objection or Adequate Assurance Objection is timely received with respect to an executory contract or unexpired lease designated as a Designated Contract: (i) the Counterparty to such Designated Contract shall be deemed to have consented to the assumption

by the Debtors and assignment to the Successful Bidder of the Designated Contract and shall be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder); (ii) the Cure Amount for such Designated Contract shall be controlling, notwithstanding anything to the contrary in such Designated Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Designated Contract against the Debtors and their estates or any Successful Bidder, or the property of any of them, that existed prior to the entry of the order approving the assumption and assignment of such Designated Contract; and (iii) upon payment of the Cure Amount, any and all defaults under the Designated Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code.

12.     To the extent that the parties are unable to consensually resolve any Cure Objection (any such dispute, a "Cure Dispute"), such Cure Dispute will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors or fixed by the Court. To the extent a Cure Dispute exists, the Designated Contract may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Cure Dispute after notice and a hearing, in a form satisfactory to the Successful Bidder in its reasonable discretion. If a Cure Dispute is not satisfactorily resolved, the Successful Bidder may determine that such Designated Contract should be rejected and not assigned, in which case the Debtors and Successful Bidder will not be responsible for any Cure Amounts in respect of such contract.

13.     A Cure Objection or Adequate Assurance Objection will not constitute an objection to a Sale.  Objections to approval of the Sale(s) (with the exception of objections related solely to the conduct of any auction(s), identity of the Successful Bidder(s), and ability of the Successful Bidder(s) to provide adequate assurance of future performance, which must be received by a later deadline as set forth above), must be filed with the Bankruptcy Court before **4:00 p.m. (Central Time) on May 5, 2023**.  **The inclusion of a Potentially Assigned Contract on Schedule A does not (a) obligate the Debtors to assume any Potentially Assigned Contract listed thereon nor the Successful Bidder(s) to take assignment of such Potentially Assigned Contract or (b) constitute any admission or agreement of the Debtors that such Potentially Assigned Contract is an executory contract or unexpired lease, and all rights with respect thereto are expressly reserved.**

Dated:   April [ ● ], 2023

/s/ _____
**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Kristhy M. Peguero (TX Bar No. 24102776)
Genevieve M. Graham (TX Bar No. 24085340)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
         kpeguero@jw.com
         ggraham@jw.com

– and –

Caroline Reckler (S.D. Tex Bar No. IL6275746)
Ebba Gebisa (admitted *pro hac vice*)
Jonathan Gordon (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile:  (312) 993-9667
Email:  caroline.reckler@lw.com
         ebba.gebisa@lw.com
         jonathan.gordon@lw.com

– and –

Jeffrey E. Bjork (admitted *pro hac vice*)
Kimberly A. Posin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile:  (213) 891-8763
Email:  jeff.bjork@lw.com
         kim.posin@lw.com

*Counsel to the Debtors*

4

**<ins>Schedule A</ins>**

**UNEXPIRED LEASES**

| Landlord Name / Address | Address of Subject Property | Cure Amount |
|---|---|---|
|  |  |  |

**EXECUTORY CONTRACTS**

| Counterparty Name / Address | Description of Contract | Cure Amount |
|---|---|---|
|  |  |  |