**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| SORRENTO THERAPEUTICS, INC., *et al.*[1] | ) ) ) | Case No. 23-90085 (DRJ) |
| Debtors. | ) ) | (Jointly Administered) |

**DEBTORS' MOTION FOR
ENTRY OF AN ORDER APPROVING AND IMPLEMENTING
MEDIATION SETTLEMENT AND GRANTING RELATED RELIEF**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on June 29, 2023, at 1:00 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002.**
>
> **You may participate at the hearing either in person or by an audio and video connection. Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones' homepage. The meeting code is "JudgeJones". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842) and Scintilla Pharmaceuticals, Inc. (7956). The Debtors' service address is: 4955 Directors Place, San Diego, CA 92121.

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state the following in support of this motion (this "<u>Motion</u>"):

**<u>Relief Requested</u>**

1. The Debtors seek entry of an order, substantially in the form of the attached proposed order (the "<u>Order</u>"), (i) approving the settlement reached in mediation conducted by Judge Marvin Isgur of the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") by and among the Debtors and their Related Parties (as defined in <u>Exhibit D</u> to the Order) on the one hand and Immunotherapy NANTibody, LLC ("<u>NANTibody</u>"), NantCell, Inc. ("<u>NantCell</u>"), NantPharma, LLC ("<u>NantPharma</u>"), and their respective Related Parties (collectively, the "<u>Nant Parties</u>") on the other hand (such settlement, the "<u>Settlement</u>") and (ii) granting related relief.[2] The Settlement terms are set forth in the Order and summarized below.

2. The Debtors have previewed the relief requested with the U.S. Trustee, the DIP Lender, the Unsecured Creditors' Committee, and the Equity Committee. While the Unsecured Creditors' Committee is supportive of the relief requested, the U.S. Trustee, the DIP Lender, and the Equity Committee are still evaluating the relief requested, and all parties reserve all their rights related thereto. To the extent any such parties (or any other parties) object to the relief requested, the Debtors will work to resolve such objection(s) prior to a hearing on the Motion.

**<u>Jurisdiction and Venue</u>**

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

---

[2] The Debtors and the Nant Parties are still negotiating <u>Exhibit H</u> to the Order and will file such exhibit once final.

4. The bases for the relief requested herein are sections 105(a), 362, and 363(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), rule 9019 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and rule 9013 of the Bankruptcy Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

5. On February 13, 2023, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors' views concerning their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases are set forth in greater detail in the *Declaration of Mohsin Meghji, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions* [Docket No. 5] (the "First Day Declaration").

6. As described in greater detail in the First Day Declaration, Debtor Sorrento Therapeutics, Inc. ("Sorrento") has been involved in various litigation matters (as both plaintiff and defendant) with certain of the Nant Parties (the "Nant Litigation"). As a result of such litigation and two resulting judgments, the Debtors owe NantCell and NANTibody approximately $175 million collectively—the largest claims in these chapter 11 cases. Meanwhile, NantPharma owes the Debtors approximately $125 million, which the Debtors have been (unsuccessfully) trying to collect. And the Debtors assert that they have affirmative alter ego, derivative, and fraud claims either pending or to be brought shortly against various Nant Parties in other causes of action, and the Nant Parties dispute all such claims and causes of action.

7. On February 28, 2023, the U.S. Trustee appointed an official committee of unsecured creditors (the "Unsecured Creditors' Committee"), which was reconstituted on March 28, 2023 [Docket No. 313]. On March 30, 2023, the Court entered an order approving the Debtors' postpetition financing facility (the "DIP Facility" and the lender thereunder, the "DIP Lender") on a final basis [Docket No. 324]. The DIP Facility matures on July 31, 2023. On April 10, 2023,

3

the U.S. Trustee appointed an official committee of equity security holders (the "Equity Committee"), which was reconstituted on April 14, 2023 [Docket No. 448].

8. On March 16, 2023, the Court entered an order appointing Judge Isgur to mediate issues related to the Nant Litigation and these chapter 11 cases generally [Docket No. 234]. On May 10, 2023, the Debtors and the Nant Parties (along with the DIP Lender, the Unsecured Creditors' Committee, and the Equity Committee) participated in full-day mediation with Judge Isgur. The Debtors and the Nant Parties did not reach a resolution that day but did generally agree on a settlement framework, which they continued negotiating under the facilitation of Judge Isgur. After weeks of arm's-length, hard-fought, good-faith negotiations, the Debtors and the Nant Parties ultimately agreed to the terms of the Settlement, as set forth in the Order.

### Settlement Summary[3]

9. ***Debtors' Settlement with the Nant Parties—Payment or Mutual Releases.*** The Settlement has a toggle framework whereby the Debtors can either (i) raise sufficient funds to irrevocably pay the more than $175 million owed to NantCell and NANTibody (on account of their two respective judgments) (the "Nant Payments") or (ii) elect to not make such payments and "walk away" with a full "divorce" from the Nant Parties.

10. In the payment scenario, referred to in paragraph 9(i) above, the Debtors have agreed with the DIP Lender, the Unsecured Creditors' Committee, and the Equity Committee that they will not make the Nant Payments unless they have secured committed financing (without material contingencies) to pay each of (i) the DIP Facility, and (ii) unless otherwise agreed in

---

[3] The summary of the Settlement set forth below is subject to the more detailed terms of the Order. In the event of any inconsistency between this summary and the Order, the Order shall control.

advance in writing by the Unsecured Creditors' Committee, all allowed general unsecured claims in full in cash on the effective date of a chapter 11 plan of reorganization (a "Plan").

11. In the walk-away scenario, referred to in paragraph 9(ii) above, (i) the Debtors and the Nant Parties (including their respective Related Parties) will mutually release their pending litigation matters and all other claims and judgments against each other, including the approximately $175 million owed to NantCell and NANTibody; (ii) the Debtors will convey all of their ownership in NANTibody, NantCancerStemCell, LLC, and NantBio, Inc. to those respective entities (and Sorrento's membership, directorship, and any other rights in those entities, as applicable, will be canceled); (iii) NantBio will pay the Debtors $1.5 million; and (iv) NantCell and the Nant Parties will obtain a full release of the Debtors' royalty rights with respect to the PD-L1 antibody that is the subject of the April 21, 2015 Exclusive License Agreement between NantCell and Sorrento. In short, the walk-away would be a full divorce of all relationships between the Debtors and the Nant Parties (and their respective Related Parties), so that both sides can continue operating without needing to interact with each other, thereby minimizing the prospect of future litigation.

12. This toggle framework will allow the Debtors to preserve optionality in the near term and determine the most value-maximizing path forward, as they continue their ongoing sale and financing marketing process. The implementation of the Settlement with the Nant Parties (i) will be effectuated through the Plan if the Plan is effective on or prior to July 14, 2023, or (ii) if the Plan is not effective on or prior to July 14, 2023, will be effectuated prior to and separate from the Plan pursuant to the Order.

13. **Plan Support.** Upon the entry of the Order, the Nant Parties agree to support and vote to accept the Plan (and will take no actions that could interfere with or delay confirmation of

the Plan or that support any competing plan), provided that the Plan contains (i) the terms of the Settlement and all of the terms and conditions contained in the Order, (ii) no terms and conditions inconsistent with the Settlement or any terms and conditions contained in the Order, and (iii) only such other terms that are acceptable to the Nant Parties to the extent any of them are affected by any of such other terms.

14. ***Post-Judgment Discovery Related to the Approximately $125 Million Owed by NantPharma.*** The judgment debtor examination currently scheduled for June 14, 2023 in the Superior Court of the State of California, County of Los Angeles ("Los Angeles Superior Court") shall be adjourned by agreement of Sorrento and NantPharma to the earliest date available in Department 14 of Los Angeles Superior Court, on or after July 20, 2023. Nothing in the Order shall affect any party's rights or obligations with respect to (a) the subpoenas duces tecum previously served on NantWorks LLC ("NantWorks") and Nant Capital LLC ("Nant Capital") (save for the requirement to provide oral testimony on June 14, 2023), or (b) the written discovery requests previously served on NantPharma; provided, however, that NantPharma, NantWorks, and Nant Capital will not use the adjournment of the judgment debtor examination or anything else in the Order as a basis for any motion or argument to quash, modify, delay, or limit their responses to the subpoenas and written discovery.

15. ***Other Litigation.*** Other litigation proceedings[4] between the Debtors and the Nant Parties will be unaffected (until any releases are effectuated by the Order, if applicable). Nevertheless, if, at any time prior to July 14, 2023, the Chief Restructuring Officer of the Debtors (the "CRO") determines in his sole discretion that it is not expected to be reasonably possible for

---

[4] *Sorrento Therapeutics, Inc. vs. NantCell, Inc., et al.*, Case No. 19STCV11328, *Immunotherapy NANTibody, LLC, et al. v. Sorrento Therapeutics, Inc., et. al.*, Case No. 19STCV18304, and *Sorrento Therapeutics, Inc. v. Patrick Soon-Shiong*, Case No. 20STCV08789 (each in Los Angeles Superior Court).

Sorrento to make the Nant Payments, the CRO will promptly give written notice of this determination to counsel for the Nant Parties at Quinn Emanuel Urquhart & Sullivan LLP and counsel for the Debtors at Latham & Watkins LLP, whereupon Quinn Emanuel and Latham & Watkins shall meet and confer to, and exert their respective best efforts to, minimize legal expenses and costs to be incurred thereafter in any and all pending litigation between their respective clients.

## Basis for Relief

16. The Debtors believe the Settlement is in the best interests of the Debtors and their estates and seek approval thereof. Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing." A debtor may use property of the estate outside the ordinary course of business if there is a good business reason for doing so. *See, e.g., ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.),* 650 F.3d 593, 601 (5th Cir. 2011).

17. Bankruptcy Rule 9019 authorizes bankruptcy courts to approve compromises and settlements. Ultimately, a compromise must be "fair, equitable, and in the best interest of the estate." *In re Roqumore*, 393 B.R. 474, 479 (Bankr. S.D. Tex. 2008) (citation omitted). The decision to approve a compromise lies within the sound discretion of the bankruptcy court. *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984). The Fifth Circuit recognized that compromises are a "normal part of the process of reorganization . . . oftentimes desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated, and costly." *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)).

18. In determining the reasonableness of a settlement, courts in the Fifth Circuit consider the following three factors: (a) the probability of success in litigating the claim subject to

settlement, with due consideration for the uncertainty in fact and law; (b) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (c) all other factors bearing on the wisdom of the compromise. *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir.1997); *Jackson Brewing*, 624 F.2d at 602. Factors "bearing on the wisdom of the compromise" include: (a) the paramount interest of creditors, with proper deference to their reasonable views; and (b) the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion. *See Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917-18 (5th Cir. 1995).

19. Here, the Settlement is a fair and reasonable compromise, is in the best interest of the Debtors' estates, and is a sound exercise of the Debtors' business judgment. And to the extent the Debtors raise sufficient funds to make the Nant Payments, such payment is appropriate outside of a Plan because the Debtors will <u>not</u> make such payments unless they have secured committed financing (without material contingencies) to pay each of (i) the DIP Facility and (ii) unless otherwise agreed in advance in writing by the Unsecured Creditors' Committee, all allowed general unsecured claims in full in cash on the effective date of a Plan—thus paying the Nant Payments prior to the Plan's effective date is simply a matter of timing (and not unfair or unequitable treatment). *Cf. AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir. 1984) ("a bankruptcy court abuses its discretion in approving a settlement with a junior creditor <u>unless</u> the court concludes that priority of payment will be respected as to objecting senior creditors") (emphasis added). Additionally, the early payment requirement is a material term of the Settlement bargained for by Debtors and the Nant Parties, in light of pending litigation matters that require a prompt resolution of the issues at hand.

20. ***Probability of Success***.  First, the Debtors are not confident they will be able to recover their approximately $125 million claim against NantPharma directly from NantPharma in a timely manner (if at all).  Their efforts to collect on that judgment to date have not been successful.  And while the Debtors are pursuing other avenues to collect on that judgment, and are pursuing other affirmative claims that the Debtors believe to be valuable against the Nant Parties as well, the Debtors recognize that litigation is inherently unpredictable and uncertain.  Meanwhile, NantCell and NANTibody have similarly confirmed their arbitration award and obtained judgments against the Debtors, resulting in the approximately $175 million in claims (in the aggregate) owed by the Debtors—the largest unsecured claims in these chapter 11 cases.

21. ***Complexity, Duration, and Expense***.  Second, the Debtors' claims against the Nant Parties will take time and money to pursue—neither of which the Debtors have in abundance at the moment, given the pendency of their chapter 11 cases, their tight liquidity, and the maturity of their DIP Facility on July 31, 2023.  The Debtors' capital-raising efforts are ongoing, and if they are able to raise sufficient funds to pay the approximately $175 million in claims held by NantCell and NANTibody (along with other claims), then the Debtors will retain their affirmative claims and continue pursuing them (during and after these chapter 11 cases), and the relevant Nant Parties will be free to pursue their claims and assert defenses.  But if the Debtors are not able to raise sufficient capital, the Settlement provides the Debtors with a path to resolve the largest claim in their chapter 11 cases—which will help facilitate an exit from chapter 11.

22. ***Wisdom of the Compromise***.  Third, the Settlement is the product of hard-fought, good-faith, arms'-length bargaining overseen by Judge Isgur.  And the Settlement is the best interest of all stakeholders (including creditors and equity holders) because it helps facilitate a exit from chapter 11 that will enable the best recovery to both creditors and shareholders.  Such a result

9

likely would not be possible without addressing the approximately $175 million in claims of NantCell and NANTibody, which the Settlement does—whether by payment or a full release.

23. Overall, the Settlement provides the Debtors with optionality to either (i) continue pursuing their claims against the Nant Parties if they are able to raise sufficient funds (without material contingencies) to both (a) pay the more than $175 million in claims held by NantCell and NANTibody and (b) exit bankruptcy (including the payment of all other allowed claims in full in cash on the effective date of the Plan, unless otherwise agreed in advance in writing by the Unsecured Creditors' Committee with respect to general unsecured claims) <u>or</u> (ii) if the Debtors are not able to raise such funds, mutually release all claims by and against the Nant Parties, which will eliminate the two largest claims against the Debtors and reduce the funding needed to exit bankruptcy.  Thus, the Debtors have determined in their reasonable business judgment that the benefits of the Settlement outweigh the costs and request that the Court approve it.

### Notice

24. The Debtors will provide notice of this Motion to (a) the U.S. Trustee for the Southern District of Texas, (b) counsel to the DIP Lender, (c) counsel to the Unsecured Creditors' Committee, (d) counsel to the Equity Committee, (e) counsel to the Nant Parties, (f) the creditor matrix (which includes the Debtors' master service list, creditors, and equity holders), and (g) any other party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice need be given.

US-DOCS\142224284

The Debtors request that the Court enter the Order granting the relief requested in this Motion and such other and further relief as is appropriate under the circumstances.

Dated:   June 6, 2023

*/s/ Kristhy M. Peguero*
**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Kristhy M. Peguero (TX Bar No. 24102776)
Genevieve M. Graham (TX Bar No. 24085340)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: mcavenaugh@jw.com
       kpeguero@jw.com
       ggraham@jw.com

– and –

Caroline Reckler (S.D. Tex Bar No. IL6275746)
Ebba Gebisa (admitted *pro hac vice*)
Jonathan Gordon (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile:  (312) 993-9667
Email:  caroline.reckler@lw.com
        ebba.gebisa@lw.com
        jonathan.gordon@lw.com

– and –

Jeffrey E. Bjork (admitted *pro hac vice*)
Kimberly A. Posin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile:  (213) 891-8763
Email:  jeff.bjork@lw.com
        kim.posin@lw.com

*Counsel to the Debtors*

**Certificate of Service**

      I certify that on June 6, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                              */s/ Kristhy M. Peguero*
                                              Kristhy M. Peguero

US-DOCS\142224284