**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| *In re:* | ) | Chapter 11 |
| | ) | |
| SORRENTO THERAPEUTICS, INC., *et al.,*[1] | ) | Case No. 23-90085 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Re: Docket No. ___ |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO
(A) OBTAIN JUNIOR SECURED SUPERPRIORITY POSTPETITION
FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING LIENS
AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE
EXPENSE STATUS, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Sorrento Therapeutics, Inc. and Scintilla Pharmaceuticals, Inc (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363, 364, 503, 506, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-1(b), 4002-1 and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas and the Procedures for Complex Chapter 11 Bankruptcy Cases (together, the "Local Bankruptcy Rules") promulgated by the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"), seeking entry of an interim order (this "Interim Order"), among other things:

---

[1]   The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842) and Scintilla Pharmaceuticals, Inc. (7956). The Debtors' service address is: 4955 Directors Place, San Diego, CA 92121.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or Junior DIP Term Sheet (as defined below), as applicable.

(a)     authorizing the Debtors to obtain postpetition financing on a superpriority junior secured basis (the "Junior DIP Facility", and the loans made, advanced or deemed advanced thereunder, the "Junior DIP Loans") in the form of a term loan facility in an aggregate principal amount not to exceed the sum of (i) $20,000,000, *plus* (ii) the amount of the Commitment Fee and the Funding Fee (each as defined in the Junior DIP Term Sheet), *plus* (iii) the amount of the Junior DIP Lender Holdback (as defined herein), all of which shall be available to the Debtors in a single draw (the "Draw") upon entry of the Interim Order, in accordance with and subject to the terms and conditions (including, without limitation, any conditions precedent to each of the Junior DIP Loans) set forth in (x) that certain *Debtor-In-Possession Term Loan Facility Summary of Terms and Conditions*, substantially in the form attached to this Interim Order as **Exhibit 1** (as may be amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "Junior DIP Term Sheet"), (y) [Subordination Agreement] (substantially in the form attached to this Interim Order as **Exhibit 2**) (as may be amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "Subordination Agreement") (and, together with the Junior DIP Term Sheet and all other agreements, guarantees, pledge, collateral and security agreements, deeds, charges, control agreements, instruments, certificates, notes, any separate fee letter agreements between any of the Debtors, on the one hand, and the Junior DIP Lender, on the other hand, and other documents executed, filed and/or delivered in connection therewith, (each as amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, together with the Junior DIP Term Sheet, collectively, the "Junior DIP Loan Documents"), by and among the Debtors, as borrowers (the "DIP Borrowers"), each of the Guarantors (as defined in the Junior DIP Term Sheet) (collectively, the "DIP Guarantors", and together with the DIP Borrowers, the "DIP Loan Parties"), Scilex Holding Company, as the lender (together with its successors and permitted assigns, the "Junior DIP Lender"), and (z) this Interim Order;

(b)     authorizing the DIP Loan Parties to (i) execute, deliver, and perform under the Junior DIP Term Sheet and each of the Junior DIP Loan Documents, (ii) incur all loans, advances, extensions of credit, financial accommodations, indemnification and reimbursement obligations and other obligations, and pay all principal, interest, premiums, fees, costs, expenses, charges and all other amounts payable under the Junior DIP Loan Documents, including without limitation, all DIP Obligations (as defined in the Junior DIP Term Sheet) in accordance with the terms of the Junior DIP Loan Documents, and (iii) perform such other and further acts as may be necessary, required or desirable to implement and effectuate the terms of this Interim Order, the Junior DIP Loan Documents and the transactions contemplated hereunder and thereunder;

(c)     authorizing the DIP Borrowers to incur, and the DIP Guarantors to jointly and severally guarantee, all DIP Obligations, in accordance with this Interim Order and the Junior DIP Loan Documents;

-2-

(d)  granting to the Junior DIP Lender the Junior DIP Liens (as defined below) in all DIP Collateral (as defined in the Junior DIP Term Sheet), as set forth in this Interim Order, subject to the Carve Out, any transaction fee or the like owed to Moelis & Company or M3 Advisory Partners LP, and any Prior Permitted Liens (as defined below), subject to the relative priorities set forth in this Interim Order;

(e)  granting to the Junior DIP Lender allowed super-priority administrative expense claims against each of the Debtors, on a joint and several basis, in respect of all DIP Obligations, subject in each case to the Carve Out and the Senior DIP Superpriority Claims, as set forth in this Interim Order and the Junior DIP Loan Documents;

(f)  authorizing the Debtors to use the proceeds of the Junior DIP Facility and the DIP Collateral, including cash collateral, as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), solely in accordance with the terms and conditions set forth in this Interim Order and the Junior DIP Loan Documents, including the Approved Budget (as defined below) and Subordination Agreement, subject to any variances expressly permitted herein and under the Junior DIP Term Sheet;

(g)  approving the Debtors' waiver of the right to surcharge the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise;

(h)  approving the Debtors' waiver of the equitable doctrine of "marshaling" and other similar doctrines with respect to the DIP Collateral;

(i)  modifying or vacating the automatic stay imposed by sections 105(a) and 362 of the Bankruptcy Code or otherwise, to the extent necessary, required or desirable to implement and effectuate the terms and provisions of this Interim Order and the Junior DIP Loan Documents, as set forth herein, waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Interim Order, providing for the immediate effectiveness of this Interim Order, and granting related relief; and

(j)  scheduling a final hearing (the "Final Hearing") on the Motion to consider entry of a final order (the "Final Order") authorizing the relief requested in the Motion on a final basis, which order shall be in form and substance and on terms and conditions acceptable in all respects to the Junior DIP Lender.

The Court, having considered the Motion, the Junior DIP Loan Documents, the exhibits attached thereto, the evidence submitted and arguments proffered or adduced at the interim hearing held before this Court on July 5, 2023 (the "Interim Hearing"), and upon the record of the Chapter 11 Cases; and due and proper notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Local Bankruptcy Rules; and it appearing that

no other or further notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing established just cause for the relief granted herein; and it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, their creditors, and all other parties in interest, represents a sound exercise of the Debtors' business judgment, is necessary for the continued operation of the Debtors' businesses and is necessary to preserve and maximize the value of the Debtors and their estates; and the Debtors having provided notice of the Motion as set forth in the Motion; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    *Petition Date.* On February 13, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing these Chapter 11 Cases.

B.    *Debtors in Possession.* The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C.    *Committee Formation.* On February 28, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

"Unsecured Creditors' Committee"), which was reconstituted on March 28, 2023 [Docket No. 313] and again on June 7, 2023 [Docket No. 813]. On April 10, 2023, the U.S. Trustee appointed an official committee of equity security holders (together with the Unsecured Creditors' Committee, the "Official Committees"), which was reconstituted on April 14, 2023 [Docket No. 448].

D. *Jurisdiction and Venue*. This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. This Court's consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for these Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief set forth herein are sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Bankruptcy Rule 4001-2.

E. *Findings Regarding Corporate Authority.* Each of the DIP Loan Parties has all requisite power and authority to execute and deliver the Junior DIP Loan Documents to which it is a party and to perform its obligations thereunder.

F. *Senior DIP Facility*. On March 30, 2023, this Court entered a final order [Docket No. 74] (the "Senior Final DIP Order") approving the Debtors' senior secured postpetition financing facility with JMB Capital Partners Lending, LLC (the "Senior DIP Facility" and together with the Junior DIP Lender, the "DIP Lenders"). The "DIP Liens," the "DIP Superpriority Claims," and "DIP Obligations" in the Prior Final DIP Order are referred to herein as the Senior DIP Liens, Senior DIP Superpriority Claims, and Senior DIP Obligations, respectively.

G.   *Findings Regarding Junior DIP Facility and Use of Cash Collateral.*

(a)   *Good Cause*. Good and sufficient cause has been shown for the entry of this Interim Order and for the Debtors to obtain postpetition financing pursuant to the terms hereof and the Junior DIP Loan Documents.

(b)   *Need for Postpetition Financing and Use of Cash Collateral*. The Debtors have an immediate and critical need to obtain the Junior DIP Facility and use Cash Collateral in order to, among other things, (i) permit the orderly continuation and operation of their businesses, (ii) maintain business relationships with customers, vendors and suppliers, (iii) make payroll, (iv) make capital expenditures, (v) pay the expenses of the Chapter 11 Cases, including the costs needed to formulate and pursue a chapter 11 plan of reorganization, (vi) satisfy working capital and operational needs of the Debtors, and (v) for general corporate purposes, in each case, in accordance with and subject to the terms and conditions of this Interim Order and the Junior DIP Loan Documents, including the Approved Budget (subject to Permitted Variances, as defined in the Junior DIP Term Sheet). The Debtors require immediate access to sufficient working capital and liquidity through the incurrence of loans and other financial accommodations under the Junior DIP Facility in order to preserve, maintain and maximize the Debtors' going concern value and to facilitate an orderly and successful reorganization of the Debtors.  Without access to the Junior DIP Facility and the authorized use of Cash Collateral upon the terms set forth herein, the Debtors and their estates will be immediately and irreparably harmed.

(c)   *No Credit Available on More Favorable Terms.* The Debtors are unable to obtain financing or other financial accommodations on more favorable terms from sources other than the Junior DIP Lender. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code.  The Debtors are

also unable to obtain adequate secured credit allowable under section 364(c)(1) of the Bankruptcy Code in addition to the Senior DIP Facility without granting to the Junior DIP Lender the rights, benefits, remedies and protections set forth herein and the Junior DIP Loan Documents, including the Junior DIP Liens in all DIP Collateral and the Junior DIP Superpriority Claims upon the terms set forth herein.

        (d)    *Use of Proceeds of Junior DIP Facility and Cash Collateral*. As a condition to the Senior DIP Lender consenting to the Junior DIP Facility and to the Junior DIP Lender providing the Junior DIP Facility (including Cash Collateral), the Senior DIP Lender and Junior DIP Lender each require, and the Debtors have agreed, that all proceeds of the Junior DIP Loans and all Cash Collateral shall be used and/or applied solely for the purposes expressly permitted in, and in a manner consistent with, the Approved Budget (subject to Permitted Variances) including (i) to pay the costs of administration of the Chapter 11 Cases, (ii) for general corporate and working capital purposes, (iii) to pay certain obligations arising under the Senior DIP Facility, and (iv) to pay professional fees and expenses in accordance with this Interim Order, in each case, subject to the terms and conditions of this Interim Order and the Junior DIP Loan Documents.

        (e)    *Approved Budget and Variance*. The Debtors have prepared and delivered to the DIP Lenders the initial itemized cash flow forecast set forth on **Exhibit 3** attached hereto, which has been approved by the DIP Lenders (the "Initial Budget", as amended, supplemented or updated by the Debtors, and approved by the DIP Lenders, from time to time in accordance with the terms of this Interim Order and the Junior DIP Term Sheet, the "Approved Budget"), reflecting, on a line item, cumulative and aggregate basis, (i) the Debtors' projected cash receipts expected to be collected, and necessary disbursements and expenditures expected to be incurred or made, by the Debtors for each calendar week during the 5-week period from the calendar week beginning

on June 25, 2023 and (ii) the sum of weekly unused availability under the Junior DIP Facility, plus cash on hand. The Initial Budget is an integral part of this Interim Order, and the DIP Lenders are relying, in part, upon the Debtors' agreement to comply with the Approved Budget (subject to Permitted Variances) in determining to enter into the Junior DIP Facility and to allow the Debtors' use of proceeds of the Junior DIP Facility and Cash Collateral in accordance with the terms of this Interim Order and the Junior DIP Loan Documents.

(f)     *Section 506(c) and Marshalling Waivers*. As a material inducement to the Junior DIP Lender providing the Junior DIP Facility, and in consideration of (i) the Junior DIP Lender's agreement to subordinate their DIP Liens to the Carve Out and Senior DIP Liens, and (ii) the Junior DIP Lender's agreement to pay the expenses of the administration of these cases, subject to the Approved Budget (subject to Permitted Variances), and in accordance with the terms of this Interim Order and the Junior DIP Loan Documents, (i) the DIP Loan Parties waive their right to surcharge any costs or expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Junior DIP Lender or the DIP Collateral, whether pursuant to section 506(c) of the Bankruptcy Code or otherwise and (ii) the Junior DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

(g)     *Good Faith*. The terms of the Junior DIP Facility and the Junior DIP Loan Documents, and the terms upon which the Debtors may use Cash Collateral pursuant to the terms of this Interim Order and the Junior DIP Loan Documents, were negotiated in good faith and at arm's length among the DIP Loan Parties and the Junior DIP Lender, and their respective representatives, and all of the DIP Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the Junior DIP Facility, the Junior DIP Loan Documents and this

Interim Order, including, without limitation, all loans, advances, extensions of credit and other financial accommodations made to and guarantees issued by the DIP Loan Parties pursuant to the Junior DIP Loan Documents, shall each be deemed to have been extended by the Junior DIP Lender and each of their respective affiliates, in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by sections 364(e) of the Bankruptcy Code, and each of the claims, liens and security interests, rights, remedies, benefits and protections granted to the Junior DIP Lender (and its successors and assigns) pursuant to this Interim Order and the Junior DIP Loan Documents (including, without limitation, the Junior DIP Liens, the Junior DIP Superpriority Claims, and the DIP Obligations) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

(h)     *Fairness; Business Judgment.* Based on the Motion, the record presented to the Court at the Interim Hearing and in the Chapter 11 Cases, the terms of the Junior DIP Facility and the Junior DIP Loan Documents, and the terms upon which the Debtors may use Cash Collateral pursuant to the terms of this Interim Order and the Junior DIP Loan Documents (i) were negotiated in good faith and at arm's length among the DIP Loan Parties and the Junior DIP Lender, (ii) are fair, reasonable, and the best available to the Debtors under the circumstances, (iii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and (iv) are supported by reasonably equivalent value and fair consideration.

(i)     *Notice.* Proper, timely, sufficient and appropriate notice of the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice of the Motion, the Interim Hearing or the entry of this Interim Order shall be required.

(j)      *Immediate Entry; Relief Essential.* The Debtors have requested, and the Court hereby finds that sufficient cause exists for, the immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Unless the relief set forth in this Interim Order is granted, the Debtors' estates will be immediately and irreparably harmed. Consummation of the Junior DIP Facility upon the terms set forth in this Interim Order and the Junior DIP Loan Documents are necessary to preserve and maximize the value of the Debtors, are in the best interests of the Debtors and their estates, and are consistent with the Debtors' exercise of their fiduciary duties.

**NOW THEREFORE**, based upon the foregoing findings and conclusions, the Motion, the evidence adduced at the Interim Hearing and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      *Motion Granted.* The Junior DIP Facility and the use of Cash Collateral is hereby authorized and approved, in each case, on an interim basis and upon the terms and conditions set forth in this Interim Order and the Junior DIP Loan Documents. Any objections to any of the relief set forth in this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights or other statements inconsistent with this Interim Order, are hereby denied and overruled. This Interim Order shall become effective and enforceable immediately upon its entry.

2.      *Authorization of Junior DIP Facility and Junior DIP Loan Documents.*

(a)      *Authorization of DIP Loan Documents.* The DIP Loan Parties are hereby authorized to (i) execute, deliver, enter into and perform all of their obligations, and to pay all fees, costs, expenses, indemnities and other amounts contemplated, under the Junior DIP Loan Documents and this Interim Order, and (ii) perform all acts, to make, execute, deliver, enter into

and perform under any and all other agreements, instruments, certificates, notes, and other documents (including, without limitation, the execution and/or recordation of any collateral, pledge and security documents, deeds of trust, control agreements, financing statements, or other documents), and to perform all such other and further acts, that may be necessary, required or desirable for the DIP Loan Parties to perform their obligations under the Junior DIP Facility, the Junior DIP Loan Documents and this Interim Order and to implement the transactions contemplated thereunder and hereunder. All provisions of the Junior DIP Loan Documents are incorporated herein and approved, whether explicitly referenced or not.

(b)     *Authorization to Borrow.* The DIP Borrowers are hereby authorized to borrow, and the DIP Guarantors are hereby authorized to jointly and severally guarantee the payment in full in cash of such borrowing with respect to, the principal amount of $20 million (plus applicable interest (including interest and other amounts payable-in-kind), premiums, payments, fees (including professional fees and expenses), costs, expenses, charges and other amounts to the extent payable under this Interim Order and the Junior DIP Loan Documents in connection with such borrowing), under the Junior DIP Facility, subject to the terms and conditions (including any conditions precedent to such borrowing) set forth in the Junior DIP Loan Documents and this Interim Order. The Debtors are hereby authorized to use the proceeds of the Junior DIP Facility and all Cash Collateral solely in the manner and for the purposes expressly permitted in the Approved Budget (subject to Permitted Variances), the Junior DIP Loan Documents and this Interim Order.

(c)     *DIP Fees and Expenses; Indemnification.* Subject in all respects to the terms of the Junior DIP Loan Documents, including the Subordination Agreement, the DIP Loan Parties are authorized and directed to pay any and all (i) fees, premiums or other payments payable under

the Junior DIP Loan Documents, (ii) amounts due (or that may become due) to the Junior DIP Lender (solely in its capacity as such) in respect of the indemnification obligations under this Interim Order and the Junior DIP Loan Documents, and (iii) any other amounts payable in connection with the Junior DIP Facility, including without limitation, the payment of all reasonable, documented out of pocket costs, expenses and disbursements of the Junior DIP Lender (solely in its capacity as such), including, without limitation, the reasonable and documented fees and expenses of (A) Paul Hastings LLP (solely in its capacity as counsel to the Junior DIP Lender in its capacity as such) and (B) any other professionals that may be retained by the Junior DIP Lender (solely in their capacity as such), with the consent of the DIP Borrowers, such consent not to be unreasonably withheld or delayed, which consent of the DIP Borrowers shall not be required after the occurrence of a DIP Termination Event (as defined in the Junior DIP Term Sheet) (collectively, the "Junior DIP Professional Fees and Expenses"), whether or not the transactions contemplated herein or in the Junior DIP Loan Documents are consummated.

(d)     *Indemnification*. Subject in all respects to the terms of the Junior DIP Local Documents, including the Subordination Agreement, the Junior DIP Lender (and its affiliates (excluded the Debtors) and respective officers, directors, employees, advisors and agents) (each such person, including the Junior DIP Lender, an "Indemnitee") will have no liability for, and will be indemnified and held harmless against, any losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof, except to the extent they are found by a final, non-appealable judgment of a court of competent jurisdiction to arise from the fraud, gross negligence, bad faith, willful misconduct, or breach of a fiduciary duty of the relevant indemnified person (or any of its affiliates or any of its or its respective officers, directors, employees, advisors or agents).  Such indemnity shall not be

available (a) to the extent arising from a material breach of any obligation of such Indemnitee under the Junior DIP Loan Documents, (b) to the extent arising out of any loss, claim, damage, liability or expense that does not involve an act or omission of the Debtor and that is brought by an Indemnitee against another Indemnitee, or (c) to the extent determined by a final, non-appealable judgment of a court of competent jurisdiction to have arisen from the fraud, gross negligence, bad faith, willful misconduct, or breach of a fiduciary duty of the relevant Indemnitee.

(e) *Modification of DIP Loan Documents.* The DIP Loan Parties are hereby authorized to execute, deliver and perform under one or more amendments, waivers, consents, or other modifications to and under the Junior DIP Loan Documents, in each case, in accordance with the provisions of the Junior DIP Term Sheet governing amendments thereto, each without further application to or order of the Court; *provided, however,* that any amendment to the Junior DIP Term Sheet shall require, at a minimum, the prior written consent of each of the DIP Lenders; *provided, further, however*, that any amendment that (a) shortens the maturity of the extensions of credit thereunder, (b) increases the aggregate commitments thereunder, or (c) increases the rate of interest payable with respect thereto (each, a "Material DIP Amendment"), shall be provided (which may be by electronic mail) to the U.S. Trustee and lead restructuring counsel to the Official Committees and filed with the Court no later than three (3) Business Days prior to the anticipated date of effectiveness of any such Material DIP Amendment, and if no objection to the Material DIP Amendment is made by the U.S. Trustee or the Official Committees within such three (3) Business Day period, then, without further application to or order of the Court, such Material DIP Amendment shall automatically be deemed approved and effective; *provided further, however,* if an objection is made by the U.S. Trustee or the Official Committees within such three (3) Business

Day period, then such Material DIP Amendment shall be subject to a hearing and approval of the Court.

(f)        *Perfection in Cash*. Subject to the Carve Out, any transaction fee or the like owed to Moelis & Company LLC or M3 Advisory Partners, LP, and Prior Permitted Liens on the cash in the restricted lease collateral account ending in 9812 at Bank of America, N.A. (the "<u>BOA Collateral Account</u>"), and subject to the Remedies procedures outlined in paragraph 18 of this Interim Order, all financial institutions with which the DIP Loan Parties maintain accounts containing any of the DIP Loan Parties' cash or Cash Collateral are authorized and directed to comply with any request of the Junior DIP Lender to turn over to the Junior DIP Lender all cash or Cash Collateral therein without offset or deduction of any kind; *provided, further*, that notwithstanding anything to the contrary in this Interim Order or the Prior Final DIP Order, the lender(s) under the Senior DIP Facility shall have no recourse to such DIP Accounts (as defined in the Junior DIP Term Sheet) or the cash or Cash Collateral therein and such financial institutions shall not comply with any request of such lender(s) to turn over such cash or Cash Collateral to such lender(s). The Junior DIP Lender shall be entitled to all of the rights and benefits of all deposit account control agreements, blocked account control agreements, securities account control agreements, and similar agreements to which any of the DIP Loan Parties may be a party, without the need to enter into any such agreements, *provided*, that any rights and benefits in favor of the Junior DIP Lender on the BOA Collateral Account shall be subject to any Prior Permitted Liens. Notwithstanding (and without limiting) the foregoing, the DIP Loan Parties are authorized to enter into, and cause the financial institutions servicing or maintaining the DIP Loan Parties' deposit accounts (or other accounts) to enter into, such deposit account control agreements and other

collateral agreements with the Junior DIP Lender and such financial institutions as the Junior DIP Lender may reasonably request.

      3.    *DIP Obligations.*

      (a)    Upon execution and delivery of the Junior DIP Loan Documents, the Junior DIP Loan Documents shall constitute valid, binding, enforceable, and non-avoidable obligations of each of the DIP Loan Parties, and shall be fully enforceable against each of the DIP Loan Parties, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of the Chapter 11 Cases or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or relating to any of the foregoing, and/or upon the dismissal of any of the Chapter 11 Cases or any such successor cases (collectively, the "Successor Cases"), in each case, in accordance with the terms of the Junior DIP Loan Documents, including the Subordination Agreement, and this Interim Order.

      (b)    Upon execution and delivery of the Junior DIP Loan Documents, the DIP Loan Parties shall be jointly and severally liable for all DIP Obligations, including, without limitation, all loans, advances, indebtedness, obligations, extensions of credit, financial accommodations, principal, interest, payments, premiums or similar amounts, fees, costs, expenses, charges, indemnification and reimbursement obligations (whether contingent or absolute), and all other amounts, whenever the same shall become due and payable, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise, to the Junior DIP Lender under the Junior DIP Loan Documents or this Interim Order.  Subject in all respects to the terms of the Junior DIP Loan Documents, including the Subordination Agreement, the DIP Obligations shall be due and payable, without notice or demand, and the use of Cash

Collateral shall automatically cease, on the DIP Termination Declaration Date (as defined below) (subject to the Remedies procedures outlined in paragraph 18 hereof).

(c)     All obligations incurred, payments made, and transfers or grants of liens and security interests set forth in this Interim Order and the Junior DIP Loan Documents by the DIP Loan Parties are granted to or for the benefit of the DIP Loan Parties for fair consideration and reasonably equivalent value and are granted contemporaneously with the making of the loans and commitments and other financial accommodations secured thereby. No obligation, payment, transfer, or grant of liens or security interests under this Interim Order or the Junior DIP Loan Documents to the Junior DIP Lender shall be limited, stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law, or subject to any challenge, objection, defense or claim, including, without limitation, avoidance (whether under Chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), reclassification, disgorgement, disallowance, impairment, marshalling, surcharge, recovery or other cause of action of any kind or nature whatsoever, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise (subject, solely in the case of the Junior DIP Professional Fees and Expenses (as defined below), only to the Remedies procedures set forth in paragraph 10 of this Interim Order).

4.     *No Obligation to Extend Credit/Loan Cap.* The Junior DIP Lender shall have no obligation to make any loan or advance available under the Junior DIP Loan Documents unless all of the conditions precedent to the making of such loan or advance by the Junior DIP Lender have been satisfied in full (or waived) in accordance with the terms of the Junior DIP Loan Documents

and this Interim Order. Notwithstanding anything contained in this Interim Order or the Junior DIP Loan Documents to the contrary, in no event shall the aggregate principal amount of the Junior DIP Loans advanced under the Junior DIP Facility pursuant to the Junior DIP Term Sheet at any time (after giving effect to all Junior DIP Loans previously made or requested) exceed the DIP Commitments (as defined in the Junior DIP Term Sheet).

5. *No Duty to Monitor Compliance.* The Junior DIP Lender shall not have any obligation or responsibility to monitor the Debtors' use of DIP Collateral or Cash Collateral, and the Junior DIP Lender may rely upon the Debtors' representations that the use of DIP Collateral and Cash Collateral complies with and is in accordance with the requirements of this Interim Order and the Junior DIP Loan Documents.

6. *DIP Liens.*

(a)     As security for the prompt and complete payment and performance of all DIP Obligations when due (whether upon stated maturity, prepayment, acceleration, declaration or otherwise), effective and perfected as of the entry of this Interim Order, and without the necessity of the execution, recordation or filing by any of the DIP Loan Parties or the Junior DIP Lender of any pledge, collateral or security documents, mortgages, deeds of trust, financing statements, notations of certificates of title, or any similar document or instrument, or the taking of any other action (including, without limitation, entering into any control agreements or taking any other action to take possession or control of any DIP Collateral), the Junior DIP Lender is hereby granted valid, binding, enforceable, non-avoidable, and automatically and properly perfected liens and security interests (collectively, the "DIP Liens") in all DIP Collateral, in each case, subject and subordinate to the Carve Out and the Prior Permitted Liens (including the Senior

DIP Liens), and subject to the relative priorities set forth in this Interim Order and the Junior DIP Loan Documents, including the Subordination Agreement.

(b)     The term "<u>DIP Collateral</u>" means, subject to the Carve Out and except as otherwise provided in this Interim Order, each DIP Loan Party's right, title and interest in, to and under all the Debtor Loan Parties' assets, including, but not limited to the following, in each case, whether now owned or existing or hereafter acquired, created or arising and wherever located: all assets and property of such DIP Loan Party and its estate, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, including, without limitation, all contracts, contract rights, licenses, general intangibles, instruments, equipment, accounts, documents, goods, inventory, fixtures, documents, cash, cash equivalents, chattel paper, letters of credit and letter of credit rights, investment property, commercial tort claims, arbitration awards, money, insurance, receivables, receivables records, deposit accounts, collateral support, supporting obligations and instruments, fixtures, except as set forth in paragraph 6(d) of this Interim Order, all interests in leaseholds and real properties, all patents, copyrights, trademarks, all trade names and other intellectual property (whether such intellectual property is registered in the United States or in any foreign jurisdiction), including, without limitation, all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (as such terms are defined in the Uniform Commercial Code as in effect from time to time in the State of New York) and proceeds of any actions under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code, other than, in each case "<u>Excluded Assets</u>" (which shall be construed in a manner consistent with the Senior DIP Facility).  Excluded Assets shall include causes of action (and proceeds thereof) under chapter 5 of the Bankruptcy Code or otherwise related to (1) the distribution by Sorrento Therapeutics, Inc. of its common stock in the Junior DIP Lender to

Sorrento Therapeutics, Inc.'s shareholders on or about January 19, 2023, (2) the current or former directors or officers of the Debtors or the Junior DIP Lender (other than in connection with the Junior DIP Facility), (3) the Junior DIP Lender (other than in connection with the Junior DIP Facility), and (4) any insider or affiliate transaction, including investments by the Debtors in other companies.  Excluded Assets shall also include insurance policies and proceeds thereof related to the foregoing Excluded Assets.

(c)      Pursuant to section 364(c)(3) of the Bankruptcy Code, the Junior DIP Liens shall be valid, binding, continuing, enforceable, non-avoidable, fully and automatically perfected liens and security interests in all DIP Collateral, which DIP Liens shall be (1) subject to the Carve Out and any transaction fee or the like owed to Moelis & Company LLC or M3 Advisory Partners, LP, first-priority liens on and continuing security interests in all proceeds of the Junior DIP Facility and the DIP Accounts, and (2) with respect to all other DIP Collateral, subject only to (A) the Carve Out, (B) any transaction fee or the like owed to Moelis & Company LLC or M3 Advisory Partners, LP, and (C)(i) any liens and security interests that were valid, non-avoidable and properly perfected as of the Petition Date (or that were properly perfected subsequent to the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) and (ii) the Senior DIP Liens (all such liens in this clause (C), the "Prior Permitted Liens").

(d)      For the avoidance of doubt, none of the liens granted pursuant to this Interim Order shall attach to or encumber, and DIP Collateral shall not include, the Debtors' non-residential real property leases (or leasehold interest created thereby) that restrict or prohibit the grant of such liens or any security deposits held pursuant to such leases, but such liens shall attach solely to the proceeds of such leases, as applicable.

(e)     Notwithstanding paragraph 6(d) above, to the maximum extent permitted by the Bankruptcy Code, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document or other agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person or entity, in order for any Debtor to sell, assign, or otherwise transfer any interest therein (including any fee or leasehold interest), any proceeds thereof or other DIP Collateral, shall have no force or effect with respect to the granting of the Junior DIP Liens in any such interest therein or other DIP Collateral, or in the proceeds of any assignment and/or sale thereof by any Debtor in favor of the Junior DIP Lender in accordance with the Junior DIP Loan Documents and this Interim Order.

7.     *Junior DIP Superpriority Claims.* Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against each of the Debtors, with priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, any and all other administrative expense claims of the kind specified in or ordered pursuant to sections 105, 326, 327, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, or any other provision of the Bankruptcy Code whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment (the "Junior DIP Superpriority Claims"), subject only to the Carve Out, the Senior DIP Superpriority Claims, and the Prior Permitted Liens on the collateral in the BOA Collateral Account. The Junior DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code. The Junior DIP Superpriority Claims shall be payable by each of the Debtors,

on a joint and several basis, and shall have recourse to all DIP Collateral, subject only to the Carve-Out, the Senior DIP Superpriority Claims, and the Prior Permitted Liens on the collateral in the BOA Collateral Account. The Junior DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, including in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

8.      *Use of DIP Collateral and Cash Collateral.*

(a)      The Debtors are hereby authorized to use the proceeds of Junior DIP Loans and all Cash Collateral solely to the extent expressly permitted under the Approved Budget (subject to Permitted Variances) and subject to the terms and conditions set forth in the Junior DIP Loan Documents and this Interim Order.

(b)      Without the prior written consent of the Junior DIP Lender, the DIP Loan Parties shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral (or enter into any binding agreement to do so), except as may be expressly permitted by the Junior DIP Loan Documents and this Interim Order. Except with respect to the Prior Permitted Liens on the collateral in the BOA Collateral Account, all collection and proceeds of DIP Collateral, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnation, or otherwise, will be deposited and applied as required by this Interim Order and the Junior DIP Loan Documents. The Debtors shall not transfer any cash, assets, properties or other DIP Collateral to any non-Debtor affiliate of the Debtors without the prior written consent of the Junior DIP Lender, in their discretion, except to the extent provided for in the Approved Budget.

(c)      Following the indefeasible Payment in Full of the Senior DIP Obligations, the Debtors are authorized and directed, upon the closing of a sale of any of the DIP Collateral, to

immediately pay all proceeds of any such sale to the Junior DIP Lender to satisfy the DIP Obligations in accordance with this Interim Order and the Junior DIP Loan Documents until Paid in Full,[4] and any order approving the sale of such DIP Collateral shall provide that the sale is conditioned upon the payment of such DIP Obligations (except to the extent otherwise agreed in writing by the Junior DIP Lender).  For the avoidance of doubt, prior to the Payment in Full of the Senior DIP Obligations, all proceeds of any sale of any of the DIP Collateral must be paid in accordance with the terms of the Junior DIP Loan Documents, including the Subordination Agreement.

9.      [Reserved.]

10.     *Fees and Expenses; Payments.*

(a)     The payment of all Junior DIP Professional Fees and Expenses hereunder shall not be subject to further application to or approval of the Court, and shall not be subject to allowance or review by the Court or subject to the U.S. Trustee's fee guidelines, and no attorney or advisor to the Junior DIP Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

(b)     On the date that the Court enters this Interim Order, the Junior DIP Lender will hold back $[1,200,000][5] from the DIP Financing to pay all or any portion of the fees described in paragraph 10(a) above (the "Junior DIP Lender Holdback"). The Junior DIP Lender Holdback will be deemed to have been fully drawn by the Debtors from the Junior DIP Facility, but it will

---

[4]    For purposes hereof, the term "Paid in Full" or "Payment in Full" means, with respect to the Senior DIP Obligations and DIP Obligations, the irrevocable and indefeasible payment in full in cash of all Senior DIP Obligations or DIP Obligations (as applicable), other than contingent indemnification and expense reimbursement obligations for which no claim or demand has been asserted, and all commitments thereunder shall have irrevocably, permanently and finally expired or shall have been terminated, cancelled and discharged.

[5]    [NTD: Subject to negotiation.]

remain in the Junior DIP Lender's custody and control in a separate segregated, interest bearing (to the extent possible) bank account in the name of the Junior DIP Lender (the "Junior DIP Lender Holdback Account"). Funds deposited in the Junior DIP Lender Holdback Account shall be available and may be used solely for the payment of the Junior DIP Professional Fees and Expenses.  Neither the Debtors nor any creditor of any of the Debtors (except for the Junior DIP Lender) shall have a claim or interest in the funds in the Junior DIP Lender Holdback Account; *provided, however*, that any excess funds remaining in the Junior DIP Lender Holdback Account following payment of all Junior DIP Professional Fees and Expenses shall be applied to any outstanding DIP Obligations.  For the avoidance of doubt, until the indefeasible Payment in Full of the Senior DIP Obligations, payment of Junior DIP Professional Fees and Expenses shall be in accordance with the terms of the Junior DIP Loan Documents, including the Subordination Agreement.

(c)      Any time professionals for the Junior DIP Lender seek payment of fees and expenses from the Debtors from and after entry of the this Interim Order, but prior to the effective date of any confirmed chapter 11 plan, each such professional shall provide summary copies of its invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of their invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to lead restructuring counsel to the Debtors, the U.S. Trustee, the Senior DIP Lender, and lead restructuring counsel to the Official Committees (collectively, the "Review Parties"); *provided, however*, that the U.S. Trustee, the Senior DIP Lender, and the Official Committees reserve their rights to reasonably request additional detail

regarding the services rendered and expenses incurred by such professionals. Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the affected professional within ten (10) calendar days after delivery of such invoices to the Review Parties (such ten (10) day calendar period, the "Review Period"). If no written objection is received prior to the expiration of the Review Period from the Review Parties, the Junior DIP Lender, on behalf of the Debtors (until the funds deposited in the Junior DIP Lender Holdback Account are exhausted), or the Debtors shall pay such invoices within three (3) Business Days following the expiration of the Review Period.  If an objection is received within the Review Period from the Review Parties, the Junior DIP Lender or the Debtors, as the case may be, shall promptly pay the undisputed amount of the invoice within three (3) Business Days, and the disputed portion of such invoice shall not be paid until such dispute is resolved by agreement between the affected professional and the objecting party or by order of this Court. Any hearing to consider such an objection to the payment of any fees, costs or expenses set forth in a professional fee invoice hereunder shall be limited to the reasonableness of the fees, costs and expenses that are the subject of such objection.

(d)     Notwithstanding anything contained in this paragraph 10 to the contrary, the Junior DIP Lender, on behalf of the DIP Loan Parties, is authorized and directed to pay from the Junior DIP Lender Holdback (and upon exhaustion of the Junior DIP Lender Holdback, any such payments owed on account of Junior DIP Professional Fees and Expenses shall be made from other funds) the following: (i) upon the Draw (as defined in the Junior DIP Term Sheet), the Junior DIP Lender, on behalf of the DIP Loan Parties, shall pay in full in cash all Junior DIP Professional Fees and Expenses arising through and including the Draw, without the need for any professional engaged by or on behalf of the Junior DIP Lender to first deliver a copy of its invoice to any of the

Review Parties (other than the DIP Loan Parties), and (ii) following the Draw, the Junior DIP Lender or the DIP Loan Parties, as the case may be, shall pay in full in cash all Junior DIP Professional Fees and Expenses incurred after the Draw in accordance with and subject to the procedures set forth above in this paragraph 10 of this Interim Order.

(e)     Notwithstanding anything contained in this Interim Order to the contrary, any and all payments, premiums, fees, costs, expenses and other amounts paid at any time by any of the DIP Loan Parties to the Junior DIP Lender pursuant to the requirements of this Interim Order or the Junior DIP Loan Documents, including the Subordination Agreement, shall be non-refundable and irrevocable, are hereby approved, and shall not be subject to any challenge, objection, defense, claim or cause of action of any kind or nature whatsoever, including, without limitation, avoidance (whether under Chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), reduction, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), reclassification, disgorgement, disallowance, impairment, marshaling, surcharge or recovery or any other cause of action, whether arising under the Bankruptcy Code, applicable non-bankruptcy law or otherwise, by any person or entity (subject, solely in the case of the Junior DIP Professional Fees and Expenses, to paragraphs 10(c) and (d) of this Interim Order).

11.     *Reservation of Rights.* Except as otherwise expressly provided herein or in the Junior DIP Loan Documents, including the Subordination Agreement, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the Junior DIP Lender to seek any other or supplemental relief in respect of the DIP Loan Parties, (b) the rights of the Junior DIP Lender, the Bankruptcy Code, or applicable non-

bankruptcy law, including, without limitation, the right to request modification of the automatic stay of section 362 of the Bankruptcy Code, or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the Junior DIP Lender.

12.      *Modification of Automatic Stay.* The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby vacated and modified, without application to or further order of this Court, to permit: (a) the DIP Loan Parties to grant the Junior DIP Liens and the Junior DIP Superpriority Claims, and to perform such acts as the Junior DIP Lender may request to assure the perfection and priority of the Junior DIP Liens, (b) the DIP Loan Parties to incur all liabilities and obligations to the Junior DIP Lender as contemplated under this Interim Order and the Junior DIP Loan Documents, (c) the DIP Loan Parties to pay all amounts required hereunder and under the Junior DIP Loan Documents, (d) the Junior DIP Lender to retain and apply payments made in accordance with the terms of this Interim Order and the Junior DIP Loan Documents, including the Subordination Agreement, (e)  subject to the Remedies procedures outlined in paragraph 18 of this Interim Order, the Junior DIP Lender to exercise, upon the occurrence of any DIP Termination Event, all rights and remedies provided for in this Interim Order, the Junior DIP Loan Documents, or applicable law, (f) the DIP Loan Parties to perform under this Interim Order and the Junior DIP Loan Documents, and to take any and all other actions that may be necessary, required or desirable for the performance by the DIP Loan Parties under this Interim Order and the Junior DIP Loan Documents and the implementation of the transactions contemplated hereunder and thereunder, and (g) the implementation of all of the terms, rights, benefits, privileges, remedies, and provisions of this Interim Order and the Junior DIP Loan Documents.

13.     *Perfection of DIP Liens*.

(a)     This Interim Order shall be sufficient and conclusive evidence of the attachment, validity, perfection, and priority of all liens and security interests granted hereunder and under the Junior DIP Loan Documents, including, without limitation, the Junior DIP Liens, without the necessity of the execution, recordation or filing of any pledge, collateral or security agreements, mortgages, deeds of trust, lockbox or control agreements, financing statements, notations of certificates of title for titled goods, or any other document or instrument, or the taking of any other action (including, without limitation, entering into any deposit account control agreement or other act to take possession or control of any DIP Collateral), to attach, validate, perfect or prioritize such liens and security interests, or to entitle the Junior DIP Lender to the priorities granted herein (other than, to the extent applicable, any such filings required under applicable non-U.S. law to attach, validate, perfect or prioritize such liens).

(b)     Without in any way limiting the automatically effective perfection of the liens and security interests granted under this Interim Order and the Junior DIP Loan Documents, the Junior DIP Lender is hereby authorized, but not required, as they in their sole discretion may determine for any reason, to execute, file and record (and to execute in the name of the DIP Loan Parties, as their true and lawful attorneys, with full power of submission, to the maximum extent permitted under applicable law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession or control over cash or securities, or to amend or modify security documents, or to subordinate existing liens and any other similar action or action in connection therewith or take any other action in order to validate, perfect, preserve and enforce the liens and security interests granted to them hereunder or under the Junior DIP Loan Documents or to otherwise evidence such liens and security interests

in all DIP Collateral (each, a "Perfection Action"); *provided, however,* that, whether or not the Junior DIP Lender determines, in its sole discretion, to take any Perfection Action with respect to any liens or security interests granted hereunder, such liens and security interests shall nonetheless be deemed valid, perfected, allowed, enforceable, non-avoidable as of the entry of this Interim Order. Upon the request of the Junior DIP Lender, the DIP Loan Parties, without any further consent of any party, are authorized and directed to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the Junior DIP Lender to further validate, perfect, preserve and enforce the Junior DIP Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(c)   A certified copy of this Interim Order may, as the Junior DIP Lender may determine in its discretion, be filed with or recorded in filing or recording offices in addition to or in lieu of any financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the Junior DIP Lender to take all actions, as applicable, referenced in this paragraph 13.

14.   *Maintenance of DIP Collateral.*  Until such time as all DIP Obligations are Paid in Full (or as otherwise agreed in writing by each of the DIP Lenders), the DIP Loan Parties shall continue to maintain all property, operational, and other insurance as required and as specified in the Junior DIP Loan Documents. Upon the entry of this Interim Order, the Junior DIP Lender shall automatically be deemed to be named as additional insured and lender loss payee under each insurance policy maintained by the DIP Loan Parties, subject only to the rights of the Senior DIP Lender (including all property damage and business interruption insurance policies of the DIP

Loan Parties, whether expired, currently in place, or to be put in place in the future), and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies in accordance with the terms of this Interim Order and the Junior DIP Loan Documents.

15.     *Payments Held in Trust*. Subject to the terms of this Interim Order or the Junior DIP Loan Documents (including the Subordination Agreement), including in respect of the Carve Out, in the event that any person or entity receives any payment on account of a security interest in the DIP Collateral or receives any DIP Collateral or any proceeds of DIP Collateral prior to Payment in Full of all DIP Obligations under the Junior DIP Loan Documents, and termination of the Junior DIP Facility in accordance with the Junior DIP Term Sheet, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral and shall immediately turn over such proceeds to the Junior DIP Lender, for application in accordance with the DIP Credit Agreement and this Interim Order.

16.     *Cash Management.* Until such time as all DIP Obligations are Paid in Full, the DIP Loan Parties shall maintain the cash management system in accordance with the applicable "first day" order at Docket Number 312. The DIP Loan Parties shall not open any new deposit or securities account that is not subject to the liens and security interests of the Junior DIP Lender (in which case they shall be subject to the lien priorities and other provisions set forth in this Interim Order).

17.     *Reporting.* Without limiting the requirements contained herein or in the Junior DIP Loan Documents, the DIP Loan Parties and their representatives shall (a) provide the Junior DIP Lender (and its advisors) with (i) all reports, documents, and information required to be delivered under the Junior DIP Loan Documents (contemporaneously when the same is required to be delivered thereunder), and (ii)  reasonable access, upon reasonable notice and during regular

business hours, to the DIP Loan Parties' books and records, assets and properties, for purposes of monitoring the DIP Loan Parties' businesses and operations and the value of the DIP Collateral, and (b) cooperate and consult with, and provide reasonable information reasonably requested by the Junior DIP Lender (and its advisors) concerning the DIP Loan Parties' businesses, financial condition, properties, business operations and assets, and the DIP Loan Parties hereby authorize their representatives to cooperate and consult with, and promptly provide to the such parties (in each case, together with their respective advisors) such information.  For any budget, variance report, or other financial reporting that the Debtors deliver to the Junior DIP Lender, the Debtors shall deliver the same to the Official Committees concurrently with the Debtors' delivery to the Junior DIP Lender.

18.     *Junior DIP Termination Event; Exercise of Remedies.*

(a)     *Junior DIP Termination Events.* A "Junior DIP Termination Event" shall exist upon occurrence of any of the events listed in Section 6 of the Junior DIP Term Sheet that triggers the DIP Termination Date (as defined in the Junior DIP Term Sheet).

(b)     *Exercise of Remedies.* The DIP Loan Parties shall immediately provide notice to counsel to the Senior DIP Lender, the Junior DIP Lender and the Official Committees of the occurrence of any Junior DIP Termination Event. Subject to the terms of the Junior DIP Loan Documents, including the Subordination Agreement, upon the occurrence of a Junior DIP Termination Event, without further application to or order from the Court, the automatic stay provisions of Section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the Junior DIP Lender to take any of the following actions, at the same or different time: (i) deliver a written notice (which may be via electronic mail) to lead restructuring counsel for the Debtors, the U.S. Trustee, the Senior DIP Lender and lead restructuring counsel

for the Official Committees (the "Remedies Notice")[6] declaring the occurrence of a Junior DIP

Termination Event (such date, the "DIP Termination Declaration Date") and/or deliver a Carve

Out Notice (as defined in the Prior Final DIP Order), (ii) declare the termination, reduction or

restriction of the commitments under the Junior DIP Facility (to the extent any such commitment

remains), (iii) declare all DIP Obligations to be immediately due and payable, without

presentment, demand or protest or other notice of any kind, all of which are expressly waived by

the DIP Loan Parties, (iv) declare the termination of the Junior DIP Facility and the Junior DIP

Loan Documents as to any further liability or obligation thereunder, but without affecting the

Junior DIP Liens, the Junior DIP Superpriority Claims or the DIP Obligations, (v) declare the

reduction or restriction on the Junior DIP Facility or the Junior DIP Loan Documents, and

(vi) declare the termination, restriction or revocation of the ability of the Debtors to use Cash

Collateral (subject to the Debtors' rights under the Remedies Notice Period in paragraph 18(c));

*provided, however,* that following the occurrence of a DIP Termination Event, (i) the Junior DIP

Lender may not exercise or enforce any rights against DIP Collateral (other than the sweeping of

all cash or other amounts contained in any accounts controlled by the Junior DIP Lender or the

charging of interest at the default rate set forth in the Junior DIP Term Sheet) unless the obligations

under the Senior DIP Facility have been Paid in Full and (ii) subject thereto, prior to the exercise

or enforcement of any rights against DIP Collateral (including the sweeping of all cash or other

amounts contained in any accounts controlled solely by the Junior DIP Lender or the charging of

interest at the default rate set forth in the Junior DIP Term Sheet), the Junior DIP Lender shall be

required to file a motion with the Court on five (5) Business Days' notice (subject to the Court's

availability) seeking an emergency hearing (the "Stay Relief Hearing"), and the DIP Loan Parties

---

[6] For the avoidance of doubt, the Carve Out Notice and the Remedies Notice may be included in the same notice.

and the Official Committees shall not object to the shortened notice with respect to such Stay Relief Hearing. The Court may fashion any appropriate remedy at a Stay Relief Hearing, which may include, *inter alia*, the exercise of any and all rights or remedies available to the Junior DIP Lender under this Interim Order, the Junior DIP Loan Documents (including the Subordination Agreement) or applicable law against the DIP Collateral, *provided* that the rights of the Debtors to contest such relief are expressly preserved.

(c)      *Remedies Notice Period.* During the period from and after the Termination Declaration Date through the date of the Stay Relief Hearing (the "Remedies Notice Period"), the Debtors shall be permitted to use Cash Collateral solely to fund (i) payroll and other critical operating expenses included in (and subject to) the Approved Budget that are critically necessary to keep the Debtors' businesses operating or that have been consented to by the Junior DIP Lender, (ii) payment on account of Prior Permitted Liens from the BOA Collateral Account, and (iii) the Carve Out Trigger Notice Reserve (as defined in the Prior Final DIP Order); *provided, however,* that any fees or expenses incurred by the DIP Loan Parties or the Official Committees during the Remedies Notice Period shall permanently reduce the Carve Out Amount (as defined in the Prior Final DIP Order); *provided, further,* that the Debtors may seek an emergency hearing with the Court during the Remedies Notice Period. For the avoidance of doubt, during the Remedies Notice Period, the Junior DIP Lender shall not be obligated to provide any Junior DIP Loans or advance any credit at any time from and after the occurrence of a DIP Termination Event.

(d)      *Leased Premises.* Subject to the terms of the Junior DIP Loan Documents (including the Subordination Agreement), following a DIP Termination Event (subject to the terms of paragraph 18 herein), the Junior DIP Lender shall be entitled to enter upon any leased premises in accordance with (i) a separate agreement with the landlord by and between the Junior DIP

Lender and the applicable landlord, (ii) consent of the landlord, (iii) upon entry of an order of this Court, upon notice to the landlord and a hearing, or (iv) in accordance with the rights of the Junior DIP Lender under applicable non-bankruptcy law.

(e)     *Cooperation.* The DIP Loan Parties shall cooperate with the Junior DIP Lender in its efforts to enforce its liens and security interests in the DIP Collateral (without limiting in any way the Debtors' rights under the Remedies procedures set forth in this paragraph 18) the DIP Loan Parties shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such party from enforcing its rights or remedies in the DIP Collateral, provided that all such actions and efforts shall be consistent with and in accordance with the terms of the Junior DIP Loan Documents, including the Subordination Agreement.

19.     *No Waiver by Failure to Seek Relief.* The rights and remedies of the Junior DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the Junior DIP Lender may have under this Interim Order, the Junior DIP Loan Documents (including the Subordination Agreement), applicable law, or otherwise. The failure or delay on the part of any of the Junior DIP Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order, the Junior DIP Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of its respective rights hereunder, thereunder or otherwise. Except as expressly set forth herein, none of the rights or remedies of the Junior DIP Lender under this Interim Order or the Junior DIP Loan Documents shall be deemed to have been amended, modified, suspended, or waived unless such amendment, modification, suspension, or waiver is express, in writing and signed by DIP Lender. No consents required hereunder by the Junior DIP Lender shall be implied by any inaction or acquiescence by the Junior DIP Lender.

20. *Carve Out.* "Carve Out" as used in this Interim Order means the Carve Out defined in the Prior Final DIP Order, which (along with all related provisions, including but not limited to those in paragraph 20 of the Prior Final DIP Order) is hereby incorporated by reference (without duplication) and which shall continue in effect for the duration of these Chapter 11 Cases, including after the Senior DIP Obligations have been Paid in Full.  The Junior DIP Liens and the Junior DIP Superpriority Claims shall be subject and subordinate to payment of the Carve Out, any transaction fee or the like owed to Moelis & Company LLC or M3 Advisory Partners, LP, the Senior DIP Liens, and the Senior DIP Superpriority Claims.  The Carve Out shall be senior to all claims and liens over all assets of the Debtors, including any DIP Collateral, as set forth in this Interim Order, other than the Prior Permitted Liens in the BOA Collateral Account.

21. *Limitations on Use of DIP Collateral, Cash Collateral, Carve Out or Other Funds.* Notwithstanding anything contained in this Interim Order or any other order of the Court to the contrary, no DIP Collateral, Junior DIP Loans, Cash Collateral, proceeds of any of the foregoing, or any portion of the Carve Out may be used (including to pay professional fees) by any of the DIP Loan Parties, the Official Committee, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any Successor Cases, or any other party-in-interest (including without limitation any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), directly or indirectly, to:

> (a)     object to or seek to impair, modify or interfere with any of the rights, remedies, priorities, privileges, protections or benefits granted to the Junior DIP Lender under this Interim Order or the Junior DIP Loan Documents; *provided* that, for the avoidance of doubt, this provision shall not apply to an objection filed in the Court to the relief sought at the Final Hearing;

> (b)     object to or seek to prevent, hinder, interfere with or otherwise delay any of the Junior DIP Lender's assertion, enforcement, exercise of remedies or realization upon any DIP Collateral in accordance with this Interim Order or the Junior DIP Loan Documents (other than to contest whether a DIP Termination Event has occurred);

(c)      request authorization from the Court to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to sections 364(c) or (d) of the Bankruptcy Code or otherwise, unless such financing is sufficient to cause the Payment in Full of all DIP Obligations contemporaneously with the consummation of such financing (or as otherwise agreed in writing by the Junior DIP Lender);

(d)      request authorization from the Court to obtain superpriority claims or liens or security interests (other than liens or security interests expressly permitted under this Interim Order) in any portion of the DIP Collateral that are senior to or *pari passu* with the Junior DIP Liens or the Junior DIP Superpriority Claims unless all DIP Obligations have been Paid in Full (or as otherwise agreed in writing by the Junior DIP Lender); or

(e)      use, request authorization to use, Cash Collateral or sell or otherwise dispose of DIP Collateral (without the prior written consent of the Junior DIP Lender) other than as expressly permitted in this Interim Order and in the Junior DIP Loan Documents.

22.      *Limitation on Charging Expenses.* No costs or expenses of administration of the Chapter 11 Cases or any Successor Cases (or any future proceedings that may result therefrom) at any time, including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the Junior DIP Lender upon the DIP Collateral shall be charged against or recovered from the DIP Collateral, whether pursuant to section 506(c) of the Bankruptcy Code or other similar legal or equitable doctrine or otherwise, without the prior written consent of the Junior DIP Lender with respect to the DIP Collateral, in its sole discretion, and no such consent shall be implied, directly or indirectly, from anything contained in this Interim Order (including, without limitation, consent to the Carve Out or the approval of any budget hereunder) or from any other action, inaction, or acquiescence by the Junior DIP Lender to any charge, lien, assessment or claim against the Junior DIP Lender to the DIP Collateral, whether under section 506(c) of the Bankruptcy Code or otherwise.

23.      *No Marshalling.* In no event shall the Junior DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the DIP Obligations and all proceeds of DIP Collateral shall be received and applied in accordance with this Interim Order and the Junior DIP Loan Documents.

24. *Right to Credit Bid.* Subject to the terms of the Junior DIP Loan Documents (including the Subordination Agreement), the Junior DIP Lender or its designee (in each case, acting at the instruction of the Junior DIP Lender), shall have the unqualified right to credit bid for all or any portion of DIP Collateral in accordance with the Junior DIP Loan Documents up to the full amount of any DIP Obligations with respect to the sale of any of the DIP Loan Parties' assets, whether in a sale under or pursuant to section 363 of the Bankruptcy Code, a Chapter 11 plan subject to confirmation under section 1129(b)(2)(A) of the Bankruptcy Code, a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code, or otherwise. The Junior DIP Lender shall have the absolute right to assign, transfer, sell, or otherwise dispose of its respective rights to credit bid (subject to this Interim Order) to any acquisition vehicle formed in connection with such bid or other designee in accordance with the terms of the Junior DIP Loan Documents, including the Subordination Agreement.

25. *Binding Effect; Successors and Assigns.* Immediately upon entry of this Interim Order, the Junior DIP Loan Documents and this Interim Order, including all findings and conclusions of law herein, shall be binding upon all parties-in-interest in the Chapter 11 Cases and any Successor Cases, including without limitation, the Junior DIP Lender, the Official Committees or any other statutory or non-statutory committee appointed or formed in the Chapter 11 Cases and any Successor Cases, and their respective successors and assigns (including any chapter 11 trustee or chapter 7 trustee or examiner appointed or elected in the Chapter 11 Cases or any Successor Cases, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), and shall inure to the benefit of each of the Debtors and the Junior DIP Lender, and their respective successors and assigns; *provided, however,* that, for the

avoidance of doubt, the Junior DIP Lender shall have no obligation to make any loan, permit the use of DIP Collateral (including Cash Collateral) or extend any financing to any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of any Debtor in the Chapter 11 Cases or any Successor Cases.

26.     *No Modification of Interim Order.*

(a)     The DIP Loan Parties irrevocably waive the right to seek, and shall not seek or consent to, directly or indirectly, without the prior written consent of the Junior DIP Lender (unless and until the DIP Obligations have been Paid in Full), (A) any modification, stay, vacatur or amendment to this Interim Order, (B) the allowance of any claim against any Debtor in the Chapter 11 Cases or any Successor Cases equal or superior to the Junior DIP Superpriority Claims (other than the Carve Out and the Senior DIP Superpriority Claims), (C) the grant of any lien or security interest on any DIP Collateral with priority equal to or superior to the Junior DIP Liens, except as expressly permitted hereunder or under the Junior DIP Loan Documents, or (D) the entry of any order authorizing the use of DIP Collateral (including Cash Collateral) that is inconsistent with this Interim Order (except in connection with a request for approval of financing sufficient to cause the Payment in Full of all DIP Obligations contemporaneously with the consummation of such financing).

(b)     Without limiting the provisions of the immediately preceding paragraph, if at any time prior to the Payment in Full of all DIP Obligations, either the DIP Loan Parties, the DIP Loan Parties' estates, any chapter 11 trustee, chapter 7 trustee or examiner with enlarged powers, or any responsible officer subsequently appointed in any of the Chapter 11 Cases or any Successor Cases, shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Interim Order or the Junior DIP Loan Documents, then, unless

otherwise agreed in writing by the Junior DIP Lender, all of the cash proceeds derived from such credit or debt shall immediately be turned over to the Senior DIP Lender until the indefeasible Payment in Full of the Senior DIP Obligations and then to the Junior DIP Lender.

27. *Preservation of Rights Granted Under Interim Order.*

(a) *Senior to Other Liens.* Other than the Carve Out and Prior Permitted Liens (including the Senior DIP Liens), no claim (including any intercompany claim) or lien having a priority superior to or *pari passu* with those granted by the Interim Order to the Junior DIP Lender shall be permitted while any of the DIP Obligations remain outstanding, and, except as otherwise expressly provided in this Interim Order, (i) the Junior DIP Superpriority Claims shall not be subject or junior to any intercompany or affiliate claims of the Debtors; and (ii) the Junior DIP Liens shall not be: (A) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (B) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (C) unless the DIP Obligations have been Paid in Full, subordinated to or made *pari passu* with any liens arising after the Petition Date, including any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors; or (D) subject or junior to any intercompany or affiliate lies or security interests of the Debtors.

(b) *Payment in Full.* Until Payment in Full of all DIP Obligations, none of the DIP Loan Parties shall propose or support any chapter 11 plan or sale of all or substantially all of the DIP Loan Parties' equity or assets, or any order confirming such plan or approving such sale, that is not conditioned upon the Payment in Full (unless otherwise agreed in writing by the Junior

DIP Lender) of all DIP Obligations on or prior to the earlier to occur of the effective date of such chapter 11 plan or sale.

(c)      *Dismissal/Conversion.* Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code: (A) all of the claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections granted to the Junior DIP Lender hereunder and under the Junior DIP Loan Documents (including, without limitation, the Junior DIP Superpriority Claims and the Junior DIP Liens), shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations shall have been Paid in Full, and all such claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections shall, notwithstanding such dismissal or conversion, remain unaffected and shall remain binding on all parties in interest (and any such order shall, in accordance with sections 105 and 349 of the Bankruptcy Code, so provide), and (B) this Court shall retain jurisdiction, notwithstanding such dismissal or conversion, for the purposes of enforcing all such claims, liens and security interests, rights, priorities, privileges, remedies, benefits and protections granted to the Junior DIP Lender hereunder and under the Junior DIP Loan Documents.

(d)      *Reversal/Modification.* Based on the findings set forth in this Interim Order and the record presented during the Interim Hearing and the Chapter 11 Cases, and in accordance with section 364(e) of the Bankruptcy Code, in the event that any or all of the provisions of this Interim Order or the Junior DIP Loan Documents are hereafter reversed, modified, vacated or stayed by a subsequent judgment or order of this Court or any other court, any such reversal, stay, modification or vacatur shall not affect (i) the validity or enforceability of advances previously

made hereunder or under the Junior DIP Loan Documents by the Junior DIP Lender to the Debtors, (ii) the validity or enforceability of any obligation, indebtedness or liability incurred under this Interim Order or the Junior DIP Loan Documents (including, without limitation, the DIP Obligations) by the DIP Loan Parties to the Junior DIP Lender, (iii) the validity, enforceability, or perfection of any of the claims, liens, security interests, rights, privileges or benefits granted hereunder or under the Junior DIP Loan Documents to the Junior DIP Lender, or (iv) the payment of any fees, costs, expenses or other amounts to the Junior DIP Lender under this Interim Order and the Junior DIP Loan Documents, in each case, prior to the actual receipt of written notice by any DIP Lender of the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification or vacatur, the claims, liens, security interests, rights, privileges, remedies and benefits set forth in the Interim Order shall be governed in all respects by the original provisions of this Interim Order and the Junior DIP Loan Documents.

(e)     *Survival*. Except as expressly provided in this Interim Order, until all of the DIP Obligations have been Paid in Full (unless the Junior DIP Lender has otherwise agreed), all claims, liens and security interests, rights, priorities, privileges, remedies, benefits, and protections granted to the Junior DIP Lender under this Interim Order and the Junior DIP Loan Documents shall survive and shall not be modified, impaired, or discharged by: (i) the entry of an order confirming any chapter 11 plan in any of the Chapter 11 Cases (and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors hereby waive any discharge as to any remaining DIP Obligations), (ii) the entry of an order converting any or all of the Chapter 11 Cases to a case (or cases) under chapter 7 of the Bankruptcy Code, dismissing any or all of the Chapter 11 Cases or terminating the joint administration of the Chapter 11 Cases or by any other act or omission, or

(iii) the entry of an order approving the sale or disposition of any DIP Collateral (except to the extent expressly permitted in the Junior DIP Loan Documents).

28.     *Proof of Claim.* The Junior DIP Lender shall not be required to file proofs of claim in any of the Chapter 11 Cases or any of the Successor Cases in order to assert claims for payment of the DIP Obligations.  The Debtors' acknowledgments and the provisions of this Interim Order, together with the evidence accompanying the Motion and presented at the Interim Hearing, are deemed sufficient to and do constitute timely filed proofs of claim in respect of such claims arising under the DIP Obligations against each of the applicable Debtors.  The bar date order at Docket Number 856 shall not apply to the Junior DIP Lender or the DIP Obligations.

29.     *Limitation of Liability.*

(a)     Nothing in this Interim Order, the Junior DIP Loan Documents, or any documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Junior DIP Lender of any liability for any claim arising from, in connection with or related to the prepetition or postpetition activities of the DIP Loan Parties or their respective affiliates (as defined in section 101(2) of the Bankruptcy Code) in the operation of their businesses, their restructuring efforts or the administration of these Chapter 11 Cases.

(b)     In determining to make any loan or extension of credit under the Junior DIP Loan Documents, or permit the use of Cash Collateral, or in exercising any rights or remedies under this Interim Order, the Junior DIP Loan Documents, the Junior DIP Lender shall not (i) have any liability to any third party or be deemed to be in control of the operations of any of the DIP Loan Parties, (ii) owe any fiduciary duty to any of the DIP Loan Parties, their respective creditors, shareholders or estates, or (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of any of the DIP Loan Parties (as such

terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42, U.S. §§ 9601 *et seq*., as amended, or any other federal or state statute, including the Internal Revenue Code).

        (c)    The Junior DIP Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and all risk of loss, damage, or destruction of the DIP Collateral shall be borne solely by the DIP Loan Parties.

        30.    *Exculpation*.  The Debtors, the Junior DIP Lender, and their respective officers, directors, employees, and professionals are hereby released and exculpated from any claim, obligation, cause of action, or liability for any act or omission taken in connection with the Junior DIP Facility, including but not limited to any claim for breach of fiduciary duty owed to the Debtors, the Junior DIP Lender, and/or their respective shareholders and creditors (including, without limitation, any fiduciary duty which may be owed by Sorrento Therapeutics, Inc. to shareholders or creditors of the Junior DIP Lender as a significant shareholder of the Junior DIP Lender); *provided, however,* that the released and exculpated claims shall not include: (i) any act or omission that is determined in a final order of this Court to have constituted willful misconduct, gross negligence, criminal conduct, or fraud, and/or (ii) the rights of any entity to enforce this Interim Order and the Junior DIP Loan Documents.

        31.    *Fisher Scientific Matters*.  This Interim Order does not affect or impair any rights or remedies that Fisher Scientific and its divisions and subsidiaries (collectively, "FS") may have (a) in relation to any goods supplied to the Debtors in the ordinary course of business within forty-

five days prior to the Petition Date, (b) to assert an administrative expense claim against the Debtors under any applicable provision of the Bankruptcy Code, subject to the priorities set forth herein; or (c) in respect of any executory contracts between FS and the Debtors, if any.  Any such rights and remedies, if any, are preserved and reserved; *provided, however*, that the rights of the Debtors and all other parties in interest to oppose and object to FS's assertion of any such rights or remedies, if any, and to seek any related relief, are preserved and reserved.

32.     *Payments Free and Clear.* Any and all payments or proceeds required to be remitted to the Junior DIP Lender pursuant to the Junior DIP Loan Documents, this Interim Order, the Final Order (if and when entered) or any subsequent order of this Court shall be irrevocable (subject, solely in the case of the Junior DIP Professional Fees, only to the procedures set forth in paragraph 10 of this Interim Order), and shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code (whether asserted or assessed by, through or on behalf of the DIP Loan Parties) or otherwise.  Notwithstanding the foregoing, until the indefeasible Payment in Full of the Senior DIP Obligations, all payments and proceeds remitted shall be consistent with and subject to the terms of the Subordination Agreement.

33.     *Joint and Several Liability.* Nothing in this Interim Order shall be construed to constitute or authorize a substantive consolidation of any of the DIP Loan Parties' estates, it being understood, however, that the DIP Loan Parties shall be jointly and severally liable for all obligations (including all DIP Obligations) under this Interim Order and the Junior DIP Loan Documents.

34.     *Third-Party Beneficiary.* Except as expressly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor, equity holders, or any direct, indirect or incidental beneficiary.

35.     *Interim Order Controls.* Until such time as an amended interim order (if any) or Final Order shall have been entered, in the event of any conflict or inconsistency between or among the terms or provisions of this Interim Order and any of the Junior DIP Loan Documents, unless such term or provision in this Interim Order is phrased in terms of "defined in" or "as set forth in" the Junior DIP Term Sheet or DIP Loan Documents, or in the event of any conflict or inconsistency between the terms of this Interim Order and any other order of the Court, the terms and provisions of this Interim Order shall govern and control.

36.     *Effectiveness.* This Interim Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014, any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

37.     *Bankruptcy Rules.* The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

38.     *Headings.* Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order. When used in this Interim Order, the word "including" shall not imply limitation.

39.    *Necessary Action.* The DIP Loan Parties and the Junior DIP Lender are authorized to take any and all such actions as are necessary, required or appropriate to implement and effectuate the terms of this Interim Order, the Junior DIP Loan Documents, and the transactions contemplated hereunder and thereunder.

40.    *Retention of Jurisdiction.* The Court retains jurisdiction to hear, determine and enforce the terms of any and all matters arising from or related to the Junior DIP Facility, the Junior DIP Loan Documents and this Interim Order, and the Court's jurisdiction shall survive confirmation and consummation of any Chapter 11 plan for any of the Debtors notwithstanding the terms or provisions of any such Chapter 11 plan or any order confirming any such Chapter 11 plan.

41.    *Final Hearing.* The Final Hearing shall be held on _____, 2023, at _____(prevailing Central Time), and any objections to the final relief sought in the Motion shall be filed with the Court no later than _____, 2023 at 4:00 p.m. (prevailing Central Time).

Dated: _____, 2023
        Houston, Texas

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Junior DIP Term Sheet**

July [ ● ], 2023

**SORRENTO THERAPEUTICS, INC.**
**SCINTILLA PHARMACEUTICALS, INC.**

**Debtor-in-Possession Term Loan Facility**
**Summary of Terms and Conditions**

**This term sheet (together with the exhibits and schedules hereto, the "Term Sheet") sets forth a summary of the terms and conditions with respect to the DIP Facility (as defined below) from and after, and subject to, the entry of the Junior Interim Order (as defined below). This Term Sheet shall be a binding agreement from and after, and subject to, the entry of the Junior Interim Order with respect to the DIP Loans (as defined below) but does not purport to summarize all of the terms, conditions, representations and other provisions with respect to the DIP Facility, which will be set forth in the DIP Documents (as defined below). The obligation of the DIP Lender (as defined below) to provide financing pursuant to this Term Sheet is conditioned upon the execution and delivery of signature pages to this Term Sheet by each of the parties hereto and shall be subject to the conditions precedent and other terms and conditions set forth herein. In the event of any conflict between this Term Sheet and the terms of the Junior Interim Order or the Final Order (in each case, as defined below), the terms of the Junior Interim Order or the Final Order (as applicable) shall govern.**

*The statements contained in this Term Sheet and all discussions between and among the parties in connection herewith constitute privileged communications that shall not be disclosed or introduced pursuant to Federal Rule of Evidence 408 and/or other applicable law, unless otherwise required by judicial order or applicable law. All assumptions, principles and numbers are based upon and subject to continuing due diligence and are subject to change as the parties' positions develop further.*

| 1. | *Borrowers:* | • SORRENTO THERAPEUTICS, INC. ("**Sorrento**") and SCINTILLA PHARMACEUTICALS, INC. (each a "**Borrower**" and collectively, the "**Borrowers**"), as debtors and debtors-in-possession in Case **No. 23-90085 (DRJ) (Jointly Administered)** (the "**Chapter 11 Cases**" (the Borrowers shall be referred to herein under the Chapter 11 Cases, each as a "**Debtor**" and collectively, the "**Debtors**") under chapter 11 of title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") commenced in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") on February 13, 2023 (the "**Petition Date**"). |
|---|---|---|
| 2. | *Guarantors:* | • Each of Sorrento's existing and future, direct and indirect domestic or foreign subsidiaries that become debtors and debtors-in-possession in the Chapter 11 Cases (collectively, the "**Guarantors**" and together with the Borrowers, each a "**Loan Party**" and collectively, the "**Loan Parties**"). As of the date of the Junior Interim Order, the only two Loan Parties shall be the Borrowers.  No Guarantor shall be added as a Loan Party unless such Guarantor guarantees the Priming Obligations (as hereafter defined). |
| | | • The DIP Obligations (as defined below) of the Borrowers shall be unconditionally guaranteed, on a joint and several basis, by the Guarantors. |

| 3. | *DIP Lender:* | • SCILEX HOLDING COMPANY and/or its designees or its assignees (the "**DIP Lender**"). |
|---|---|---|
| 4. | *Type and Amount of the DIP Facility:* | • A non-amortizing super-priority junior secured term loan facility in an aggregate principal amount not to exceed the sum of (i) $20,000,000 (the "**Base Amount**"), *plus* (ii) the amount of the Commitment Fee and the Funding Fee, *plus* (iii) the amount of the DIP Lender Holdback (as defined in the Junior Interim Order) (the "**DIP Facility**"; the DIP Lender's commitments under the DIP Facility, the "**DIP Commitments**"; and the loans under the DIP Facility, the "**DIP Loans**"). For the avoidance of doubt, the DIP Loans will be funded net of items (ii) and (iii) above, which amounts will be retained by DIP Lender and applied in payment of such items in accordance with this term sheet and the Junior Interim Order, resulting in the cash proceeds of the DIP Loans to the Borrowers in the amount of $20,000,000. <br><br> • The borrowing of DIP Loans shall permanently decrease the DIP Commitments, and DIP Loans repaid may not be reborrowed. <br><br> • Loan proceeds to be funded into a newly established funding account (the "**DIP Accounts**"), subject to a first priority control agreement solely in favor of the DIP Lender to be entered into within seven business days of the entry of the Junior Interim Order, subject to a 15-day cure period if the Loan Parties are using commercially reasonable efforts to obtain a satisfactory control agreement. |
| 5. | *Availability:* | Upon the Bankruptcy Court's entry of the Junior Interim Order (as defined below), and satisfaction of all applicable conditions precedent described herein, the full amount of the DIP Facility shall be available to the Debtors, subject to compliance with the terms, conditions and covenants described in the DIP Documents, in a single draw (the "**Draw**"), upon one (1) business days' written notice (or such shorter period as may be reasonably agreed by the DIP Lender). |
| 6. | *Maturity and Termination* | Subject to the Subordination Agreement (as hereafter defined), all DIP Obligations (as defined below) shall be due and payable in full in cash (or such other form of consideration as the DIP Lender and the Borrowers may mutually agree) on the earliest of (such earliest date, the "**DIP Termination Date**"): <br><br>     i.    September 30, 2023; <br><br>     ii.    the effective date of any chapter 11 plan of reorganization with respect to the Borrowers or any other Debtor (a "**Plan**"); <br><br>     iii.    the consummation of any sale or other disposition of all or substantially all of the assets of the Debtors pursuant to Section 363 of the Bankruptcy Code; |

<table>
<tr><td></td><td></td><td>

iv.    the date of the acceleration of the DIP Loans and the termination of the DIP Commitments in accordance with the DIP Documents;

v.    dismissal of the Chapter 11 Cases or conversion of the Chapter 11 Cases into cases under chapter 7 of the Bankruptcy Code; and

vi.    July 31, 2023, unless the Final Order has been entered by the Bankruptcy Court on or prior to such date.

In no event shall the DIP Obligations mature before the maturity date of the Priming Obligations as in effect on the date of the Junior Interim Order.

</td></tr>
</table>

| 7. | *Interest Rate:* | • The DIP Loans shall bear interest at a per annum rate equal to 12.00% payable in kind (PIK) on the first day of each month in arrears and on the DIP Termination Date (the "**Non-Default Interest**").<br><br>• Notwithstanding the foregoing, after the occurrence and during the continuance of an Event of Default (as defined below), the DIP Loans shall bear interest at an additional per annum rate of 2.00%, payable in kind, plus the Non-Default Interest, on the first day of each month and on the DIP Termination Date. |
|---|---|---|
| 8. | *Commitment, Exit & Funding Fee:* | • The Borrowers shall pay to the DIP Lender a commitment fee equal to 1% of the Base Amount (the "**Commitment Fee**"). The Commitment Fee shall be fully earned and non-refundable, upon entry of the Junior Interim Order, and shall be payable on the date of the Draw by being added to the principal amount of the DIP Loans as contemplated above.<br><br>• The Borrowers shall pay to the DIP Lender a funding fee equal to 1% of the amount of the Base Amount (the "**Funding Fee**"). The Funding Fee shall be fully earned and non-refundable, upon entry of the Junior Interim Order and shall be payable on the date of the Draw by being added to the principal amount of the DIP Loans as contemplated above.<br><br>• Upon repayment or satisfaction of the DIP Loans in whole or in part the Borrowers shall pay to the DIP Lender in cash an exit fee equal to 2% of the aggregate principal amount of the DIP Facility on the date of the Draw (the "**Exit Fee**"). The Exit Fee shall be fully earned and non-refundable upon entry of the Junior Interim Order. If the DIP Termination Date has occurred solely as a result of the occurrence and continuation of an Event of Default under the DIP Documents, then the Exit Fee shall not be payable until the DIP Obligations have been accelerated by the DIP Lender or the DIP Obligations have matured in accordance with their terms.<br><br>• The Commitment Fee, the Exit Fee, and the Funding Fee shall be approved by the Bankruptcy Court as part of the Junior Interim Order and the Final Order, respectively. If such premiums are not approved |

| | | |
|---|---|---|
| | | by the Bankruptcy Court, this Term Sheet shall automatically terminate and be of no further force and effect. |
| 9. | ***Use of Proceeds:*** | • The proceeds of the DIP Facility shall be used only for the following purposes and, excluding payments pursuant to clause (ii) below, subject to the Budget and 20% permitted variances as set forth below:<br><br>    i.    working capital and other general corporate purposes of the Borrowers and the Guarantors and certain subsidiaries;<br><br>    ii.    professional fees and expenses of administering the Chapter 11 Cases, to the extent the Bankruptcy Court authorizes payment (including fees incurred prior to the Closing Date);<br><br>    iii.    interest, fees and expenses payable under the DIP Facility, including, without limitation, the Commitment Fee, the Funding Fee and the Exit Fee and the DIP Lender Legal Expenses; and<br><br>    iv.    interest and other amounts payable under the Priming Credit Agreement.<br><br>• Notwithstanding any other provision of this Term Sheet, no DIP Loans or DIP Collateral (as defined below), or any portion of the Carve-Out may be used directly or indirectly by any Debtor, any Guarantor, any official committee appointed in the Chapter 11 Cases, or any trustee appointed in the Chapter 11 Cases or any successor cases, including any chapter 7 cases, or any other person, party or entity:<br><br>    i.    [reserved];<br><br>    ii.    to prevent, hinder, or otherwise delay the DIP Lender's enforcement or realization on the DIP Obligations, DIP Collateral, and the liens, claims and rights granted to such parties under the Junior Interim Order or the Final Order, as applicable, each in accordance with the DIP Documents and the Junior Interim Order or the Final Order, as applicable; <u>provided</u>, <u>however</u>, that this shall not apply to objections to the Final Order;<br><br>    iii.    to seek to modify any of the rights and remedies granted to the DIP Lender under the Junior Interim Order or the Final Order (other than with the consents contemplated thereunder), or the DIP Documents, as applicable; or<br><br>    iv.    to apply to the Bankruptcy Court for authority to approve superpriority claims or grant liens (other than the liens permitted pursuant to the DIP Documents) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Claims, |

| | | |
|---|---|---|
| | | unless permitted under the DIP Documents or unless all DIP Obligations, and claims granted to the DIP Lender under the Junior Interim Order or the Final Order, as applicable, have been refinanced or paid in full in cash or otherwise agreed to in writing by the DIP Lender. |
| 10. | *Voluntary Prepayments:* | Subject to the Subordination Agreement, voluntary prepayments of the DIP Loans shall be permitted at any time, subject to (i) payment of the Exit Fee due thereon, which shall be due and payable on the date of such voluntary prepayment; and (ii) in minimum amounts of at least $1,000,000 of principal. |
| 11. | *Security:* | • As security for the DIP Obligations, each Loan Party shall grant to the DIP Lender, subject to the Carve-Out and any transaction fee or the like owed to Moelis & Company LLC or M3 Advisory Partners, LP: (i) a first-priority security interest in and continuing lien on all proceeds of the DIP Facility and the DIP Accounts and (ii) a second-priority security interest in and continuing lien on all of such Loan Party's right, title and interest in, to and under all the Loan Parties' other assets, including, but not limited to the following, in each case, whether now owned or existing or hereafter acquired, created or arising and wherever located (collectively, clauses (i) and (ii) the "**DIP Collateral**", and clause (ii) alone, the "**Common Collateral**"): all assets and property of such Loan Party and its estate, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, including, without limitation, all contracts, contract rights, licenses, general intangibles, instruments, equipment, accounts, documents, goods, inventory, fixtures, documents, cash, cash equivalents, chattel paper, letters of credit and letter of credit rights, investment property, commercial tort claims, arbitration awards, money, insurance, receivables, receivables records, deposit accounts, collateral support, supporting obligations and instruments, fixtures, all interests in leaseholds and real properties, all patents, copyrights, trademarks, all trade names and other intellectual property (whether such intellectual property is registered in the United States or any foreign jurisdiction), together with all books and records relating to the foregoing, all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (as such terms are defined in the Uniform Commercial Code as in effect from time to time in the State of New York) and proceeds of any actions under Sections 544, 545, 547, 548 and 550 of the Bankruptcy Code, other than, in each case "Excluded Assets" (which shall be defined in a manner consistent with the Priming Credit Agreement). Excluded Assets shall include causes of action (and proceeds thereof) under chapter 5 of the Bankruptcy Code or otherwise related to (i) the distribution by Sorrento of its common stock in the DIP Lender to Sorrento's shareholders on or about January 19, 2023, (ii) the current or former directors or officers of the Borrowers or the DIP Lender (other than in connection with the DIP Facility), (iii) the DIP Lender (other than in connection with the DIP Facility), and (iv) any insider or affiliate transaction, including investments by Sorrento in |

| | | |
|---|---|---|
| | | other companies.  Excluded Assets shall also include insurance policies and proceeds thereof relating to the foregoing Excluded Assets. <br> • In addition to appropriate orders of the Bankruptcy Court granting and perfecting such liens, the Loan Parties shall take all other commercially reasonable steps (including the execution and filing of UCC financing statements) requested by DIP Lender with respect to such security interests and liens. |
| 12. | ***Priority and Security:*** | • The liens on the DIP Collateral securing the DIP Obligations (the "**DIP Liens**") shall mean the liens described above and shall have the priority set forth in the Junior Interim Order and the Final Order. <br><br> • Until such time as the Priming Obligations have been indefeasibly paid in full in cash and all financing agreements between the Borrowers and the Priming Lender are terminated: (i) the DIP Lender will not receive any cash payments (other than as expressly set forth herein); provided, however, that the Borrowers shall be permitted to (x) make expense reimbursement payments (including in respect of the DIP Lender Legal Expenses) in accordance with the terms hereof, (y) make payments in kind of accrued interest and fees, in each case, in accordance with the terms hereof, and (z) repay the DIP Loans with any unused proceeds of the DIP Loans remaining in the DIP Accounts if Final Order on terms acceptable to the DIP Lender is not entered by July 31, 2023; (ii) any liens granted by the Borrowers in favor of the Priming Lender to secure the Priming Obligations shall in all respects be first and senior liens, superior to any DIP Liens (other than with respect to the proceeds of the DIP Facility and the DIP Accounts, which shall be Excluded Assets (under and as defined in the Priming Credit Agreement) and will secure the DIP Obligations on a senior basis (the "**First Priority DIP Liens**"), and, for the avoidance of doubt, shall not secure the Priming Obligations); (iii) any right of the DIP Lender to enforce any rights against the Common Collateral shall be suspended; and (iv) unless the Priming Obligations have been accelerated or have otherwise matured in accordance with their terms, any right to accelerate the maturity of the DIP Loans shall be suspended. <br><br> • The DIP Liens described herein shall, to the fullest extent permitted by applicable law, be effected and perfected upon entry of the Junior Interim Order and without the necessity of the execution of mortgages, landlord agreements, security agreements, pledge agreements, control agreements, financing statements or other agreements. <br><br> • Subject to (i) the Carve-Out, (ii) the Priming Obligations, and (iii) transaction fees and the like that may be owing to Moelis & Company LLC or M3 Advisory Partners, LP, all obligations of the Loan Parties under the DIP Documents, including, without limitation, all principal, accrued interest, costs, fees and premiums provided for therein, and all obligations of the Loan Parties under the DIP Facility (the "**DIP Obligations**") shall be entitled to super priority claim status pursuant to Section 364(c)(1) of the Bankruptcy Code, with priority over any and all administrative expense claims and unsecured claims, of any kind or |

|     |     |     |
| --- | --- | --- |
|     |     | nature whatsoever, now existing or hereafter arising under the Bankruptcy Code (the "**DIP Claims**"). |
|     |     | • Subject to the Carve-Out, the Priming Obligations, transaction fees and the like that may be owing to Moelis & Company LLC or M3 Advisory Partners, LP, and any equipment liens which were validly perfected as of the Petition Date, all DIP Obligations in respect of the DIP Facility shall be: |
|     |     |      i.     pursuant to Section 364(c)(1) of the Bankruptcy Code, be entitled to superpriority claim status in the Chapter 11 Cases (which claims shall be payable from and have recourse to all DIP Collateral); and<br>     ii.    secured, pursuant to Section 364(c)(2) of the Bankruptcy Code, by a valid, enforceable, fully perfected and automatic first-priority lien on the DIP Collateral. |
|     |     | • Subject to the Subordination Agreement, DIP Collateral shall also include litigation claim, judgements and any arbitration awards and any such awards hereafter granted or arising at any time before the DIP Obligations are indefeasibly paid in full and the DIP Commitments are terminated other than the Excluded Assets. |
| 13. | *Remedies* | • Subject to the Subordination Agreement, all remedies customarily available including (in the Chapter 11 Cases) without limitation those remedies customarily available to senior secured, administrative expense claim of a debtor-in-possession lender, including, without limitation:<br>     i.     declare that the DIP Commitments are terminated, whereupon the DIP Commitments shall be terminated;<br>     ii.    declare the unpaid amount of the DIP Obligations to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Loan Parties; or<br>     iii.   take any other action or exercise any other right or remedy (including, without limitation, with respect to the liens in favor of the DIP Lender permitted under the DIP Documents, or by applicable law.<br>• Any exercise of remedies by the DIP Lender shall be subject in all respects to the terms of the Junior Interim Order. |
| 14. | *Conditions Precedent to Draw:* | • The conditions to the funding of the DIP Loans shall be limited to the following:<br>     i.     entry of the Junior Interim Order on or before July 7, 2023, which order shall not be stayed or subject to appeal;<br>     ii.    delivery of the Initial Budget acceptable to the DIP Lender in its reasonable discretion;<br>     iii.   the Priming Lender shall have consented in writing to entry of the Junior Interim Order approving the DIP Facility and the terms thereof; |

|   |   |   |
|---|---|---|
|   |   | iv.    the DIP Lender and the Priming Lender shall have entered into a Subordination and Intercreditor Agreement (the "Subordination Agreement") on terms satisfactory to the Priming Lender and DIP Lender in all respects in their respective sole discretion; |
|   |   | v.    all out-of-pocket costs, fees and expenses required to be paid to the DIP Lender pursuant to this Term Sheet, the DIP Documents or the Junior Interim Order shall have been paid; |
|   |   | vi.    since the Petition Date, there shall not have occurred or there shall not exist any event, condition, circumstance or contingency that, individually, or in the aggregate, (a) has had or could reasonably be expected to have a material adverse effect on the business, operations, properties, assets, performance or financial condition of the Loan Parties and their subsidiaries, taken as a whole, (b) has resulted in, or could reasonably be expected to result in, a material adverse effect on the validity or enforceability of, or the rights, remedies or benefits available to the DIP Lender, or (c) has had or could reasonably be expected to have, a material adverse effect on the ability of the Loan Parties to perform their obligations under any DIP Document (and of the foregoing being a "**Material Adverse Effect**"); and |
|   |   | vii.    the Borrowers shall have delivered to the DIP Lender a customary borrowing notice. |
| 15. | *Documentation* | •   Definitive financing documentation (including the Junior Interim Order) with respect to the DIP Loans (the "**DIP Documents**") shall be reasonably satisfactory to the DIP Lender and provided that the loan and security agreement in respect of the DIP Facility shall be substantially similar to the Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement, dated as of March 30, 2023 (the "**Priming Credit Agreement**"; the obligations thereunder, the "**Priming Obligations**"), by and among the Borrowers, the guarantors from time to time party thereto and JMB CAPITAL PARTNERS LENDING, LLC (the "**Priming Lender**"), as in effect on the date of the Interim Hearing (as defined in the Junior Interim Order). <br><br> •   Terms of the DIP Documents shall be consistent with and substantially similar to the terms of the Priming Credit Agreement, as modified to reflect the nature of the DIP Facility as a second lien financing and the terms of this Term Sheet. |
| 16. | *Conditions Subsequent* | Subject to Bankruptcy Court approval, the DIP Documents shall be in agreed form by no later than the earlier of (i) fifteen (15) business days from the entry of the Junior Interim Order, and (ii) entry of the Final Order. |
| 17. | *Representations and Warranties:* | The DIP Documents shall contain representations and warranties with respect to the Loan Parties as are usual and customary in loan documents |

| | | |
|---|---|---|
| | | for similar debtor-in-possession financings and substantially consistent with the representations and warranties in the Priming Credit Agreement. |
| 18. | ***Affirmative Covenants:*** | Subject to the "Documentation" section above, the DIP Documents shall contain affirmative covenants (including the requirement to receive copies of the Budget) as are usual and customary with respect to the Loan Parties in loan documents for similar debtor-in-possession financings, including a requirement to maintain the proceeds of the DIP Loans in the DIP Account unless and until applied in accordance with the "Use of Proceeds" section above. |
| 19. | ***Negative Covenants:*** | Subject to the "Documentation" section above, the DIP Documents shall contain negative covenants with respect to the Loan Parties as are usual and customary in loan documents for debtor-in-possession financings; provided that the DIP Documents shall include (i) a general basket in respect of asset sales in an amount not to exceed $100,000,000, (ii) a general basket in respect of additional indebtedness in an amount not to exceed $25,000,000, and (iii) a general basket in respect of investments in an amount to be agreed; provided, further, that the indebtedness covenants in the DIP Documents shall cap the amount of the Priming Obligations at an amount equal to (a) the sum of the principal amount thereof outstanding as of the date of the Interim Hearing *plus* all fees and expenses payable under the Priming Credit Agreement (other than contingent indemnification obligations as to which no claim has been asserted) as in effect on the date of the Junior Interim Order, less (b) any principal amount of the Priming Obligations repaid or prepaid after the date of the Interim Hearing. |
| 20. | ***DIP Budget/Variance Reporting:*** | • The DIP Lender shall receive an extended weekly budget commencing with the week during which the Junior Interim Order is entered, containing line items of sufficient detail to reflect the consolidated operating cash flow of the Debtors through projected emergence (the "**Initial Budget**") (the Initial Budget, as modified from time to time in accordance herewith, shall be the "**Budget**"). |
| | | • The Budget shall be updated and provided to the DIP Lender on the fourth Wednesday following the prior Budget's approval and every fourth Wednesday thereafter, or more frequently at the reasonable discretion of both the Borrowers and DIP Lender, with such updated Budget extending the term thereof and the DIP Lender, in its reasonable discretion, shall have the right to approve any such updates (or any amendments) (other than any such updates or amendments that are approved by the Priming Lender under the terms of the Priming Credit Agreement and that do not result, in the aggregate when taken together with any other updates or amendments made since the most recent Budget was approved by DIP Lender, in more than a 15% variance from the most recent Budget approved by the DIP Lender) by providing the Borrowers specific notice thereof within five (5) business days after the delivery by the Borrowers of any such update or amendment ("**Updated Budget**") and, (ii) to the extent the DIP Lender provides written notice rejecting the updates (or any amendments), the then existing Budget shall continue to constitute the applicable Budget until such time as an |

update or amendment is approved by the DIP Lender. In the event the DIP Lender does not provide written notice of its rejection of the proposed updates within such five-day period, the Updated Budget shall become effective as the Budget.

- On a weekly basis thereafter, the Borrowers shall deliver to the DIP Lender a variance report for the four-week period ending the prior Friday comparing the difference/variance, expressed as a percentage (each, a "**Budget Variance**"), between: (x) total receipts for such period to total receipts for such period as set forth in the Budget on a cumulative 4-week rolling basis; (y) total disbursements (excluding professional fees) for such period to total disbursements (excluding professional fees) for such period as set forth in the Budget on a cumulative 4-week rolling basis (each a "**Measuring Period**") and explaining in reasonable detail all material variances, it being understood that any variance solely with respect to net operating disbursements that exceeds 20% shall be material and shall constitute an Event of Default under the DIP Documents (each such report, a "**Variance Report**," which shall be in a form satisfactory to the DIP Lender).

- For purposes of each Measuring Period, the Borrowers shall calculate: the numerical difference between "net operating disbursements" plus "net capital expenditures" (such terms reflecting those line items illustrated in the Budget) for such period to "net operating disbursements" plus "net capital expenditures" for such period as set forth in the Budget on a cumulative 4-week rolling basis, and to the extent the difference is a positive number, the percentage such difference is of the cumulative budgeted amount for disbursements for such period (the "**Disbursements and Capital Expenditure Variance**"). For purposes herein, a "Permitted Variance" shall be limited to not greater than 20% for budget variances with respect to the Disbursements and Capital Expenditure Variance, each as set forth in the applicable Variance Report.

| 21. | *Junior Interim Order:* | The order approving the DIP Facility, which shall be in form and substance reasonably acceptable to the DIP Lender (the "**Junior Interim Order**"), shall, among other things, authorize and approve: |
| --- | --- | --- |

       i.    the making of the DIP Loans;

      ii.    the granting of the superpriority claims and liens against the Debtors and their assets in accordance with this Term Sheet and the DIP Documents with respect to the DIP Collateral;

     iii.    the exculpation of the DIP Lender (and their respective officers, directors, employees, and professionals);

     iv.    the payment of all fees and expenses (including the fees and expenses of outside counsel and financial advisors)

| | | required to be paid to the DIP Lender as described herein under the heading "*Indemnification and Reimbursement of Expenses*" by the Debtors; and |
|---|---|---|
| | | v.  the payment of the Commitment Fee, the Exit Fee and the Funding Fee, which Commitment Fee, Exit Fee and Funding Fee payments shall not be subject to reduction, setoff or recoupment for any reason, and shall be fully earned upon entry of the Junior Interim Order, in each case only to the extent such fee is earned (in accordance with the DIP Documents) upon entry of the Junior Interim Order. |
| 22. | *Final Order* | The final order approving the DIP Facility, which shall be substantially in the same form as the Junior Interim Order (with such modifications as are necessary to convert the Interim Order into a final order) and otherwise in form and substance reasonably acceptable to the DIP Lender (the "**Final Order**") shall, among other things, authorize and approve the DIP Facility on a final basis, the total amount of the DIP Commitments, and the forms of the DIP Documents and be consistent with the terms of the Subordination Agreement. |
| 23. | *Carve-Out* | The liens and security interests in the DIP Collateral, and the super-priority administrative claims, shall be subject to the Carve-Out (which shall be defined in the Junior Interim Order) and any transaction fees and the like that may be owing to Moelis & Company LLC or M3 Advisory Partners, LP. |
| 24. | *Events of Default:* | • The DIP Documents shall contain events of default (collectively, "**Events of Default**") as are usual and customary for debtor-in-possession financing facilities of this type, and substantially consistent with the representations and warranties in the Priming Credit Agreement, including, without limitation: |
| | | i.  Payment, non-compliance with covenants set forth in the DIP Documents, judgements in excess of specified amounts, impairment of security interest in the DIP Collateral and other customary defaults, including the loss of the chief restructuring officer (unless a replacement reasonably acceptable to the DIP Lender is appointed within 7 days) and a final non-appealable order vacating the Cynviloq Award (which shall be defined in a manner consistent with the Priming Credit Agreement) (for the avoidance of doubt, the settlement of any litigation or disputes shall not constitute an Event of Default); |
| | | ii.  the entry of the Final Order shall have not occurred by July 31, 2023; |

11

iii. the dismissal of any of the Chapter 11 Cases or the conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code;

iv. non-compliance, subject to any applicable grace and/or cure periods, by any Loan Party or any of its subsidiaries with the terms of the Junior Interim Order or the Final Order;

v. the entry of an order staying, reversing, vacating or otherwise modifying the Junior Interim Order or the Final Order, in each case without the prior written consent of the DIP Lender;

vi. the entry of an order appointing a trustee, responsible officer, or an examiner having expanded powers (beyond those set forth under Sections 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1104 of the Bankruptcy Code (other than a fee examiner) in the Chapter 11 Cases, or the Bankruptcy Court shall have entered an order providing for such appointment, in each case without the prior written consent of the DIP Lender in its sole discretion;

vii. the entry of an order in any of the Chapter 11 Cases granting relief from any stay or proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure against any material assets of the Loan Parties to which the fair market value of which exceeds $30,000,000;

viii. the entry of an order (a) surcharging any of the DIP Collateral under Sections 105, 506(c) or any other section of the Bankruptcy Code, (b) allowing any administrative expense claim having priority over or ranking in parity with the DIP Claims or the rights of the DIP Lender, or (c) resulting in the marshaling of any DIP Collateral.

ix. any action by any Debtor to (a) challenge the rights and remedies of the DIP Lender under the DIP Facility in any of the Chapter 11 Cases or acting in a manner inconsistent with the DIP Documents or (b) avoid or require disgorgement by the DIP Lender of any amounts received in respect of the obligations under the DIP Facility;

x. entry of an order without the express written consent of the DIP Lender obtaining additional financing from a party other than the DIP Lender under Section 364(d) of the Bankruptcy Code except if such financing contemplates payment in full of the DIP Facility;

12

| | | | |
|---|---|---|---|
| | | xi. | the making of any material payments in respect of prepetition obligations other than (a) as permitted by the Junior Interim Order or the Final Order, (b) as permitted by any other order of the Bankruptcy Court reasonably satisfactory to the DIP Lender, (d) as permitted under the DIP Documents, or (d) as otherwise agreed to by the DIP Lender; |
| | | xii. | entry of an order by the Bankruptcy Court terminating or modifying the exclusive right of any Debtor to file a chapter 11 plan pursuant to Section 1121 of the Bankruptcy Code, without the prior written consent of the DIP Lender; |
| | | xiii. | the Debtors shall seek to, or support any other person's motion to, (a) disallow in whole or in part the DIP Obligations, (b) challenge the validity and enforceability of the DIP Liens, (c) contest any material provision of any DIP Document; |
| | | xiv. | any Debtor shall fail to execute and deliver to the DIP Lender any agreement, financing statement, trademark filing, copyright filing, notices of lien or similar instruments or other documents that the DIP Lender may reasonably request from time to time to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens created in favor of the DIP Lender (provided that mortgages shall not be required), subject to the time periods set forth in this Term Sheet; and |
| | | xv. | the Priming Lender declares the Priming Obligations due prior to their stated maturity, or the Priming Obligations are not paid in full at their stated maturity. |
| 25. | ***Indemnification and Reimbursement of Expenses:*** | • | The DIP Documents shall contain customary indemnification provisions for the benefit of the DIP Lender, and its related parties, including, without limitation, indemnification against losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated by the DIP Documents or the use or the proposed use of proceeds thereof. |
| | | • | Subject to the DIP Documents, including the Subordination Agreement, all out-of-pocket accrued and unpaid fees, costs, disbursements, and expenses of the DIP Lender (solely in such capacity), including the fees and expenses of Paul Hastings LLP, solely as counsel to the DIP Lender, and as necessary, other local counsel solely in their capacity as counsel to the DIP Lender, incurred in connection with the DIP Facility and the Chapter 11 Cases (collectively, the "**DIP Lender Legal Expenses**") shall be paid on a current basis; *provided*, for the avoidance of doubt, that (i) the provision of the DIP Lender Holdback (as defined in the Junior Interim |

| | | |
|---|---|---|
| | | Order) shall not be deemed to limit the expense reimbursement obligations of the Loan Parties hereunder, and (ii) subject to approval of the Bankruptcy Court (to the extent required), any DIP Lender Legal Expenses that are paid directly by the DIP Lender (other than through the DIP Lender Holdback and after the exhaustion of the funds deposited therein) shall be added to the principal amount of the DIP Loans. |
| 26. | ***Release:*** | • The Junior Interim Order and the Final Order shall include a customary release of the DIP Lender, with respect to any and all claims and causes of actions arising from or related to the DIP Facility. |
| 27. | ***Waivers:*** | • The Junior Interim Order and the Final Order (as applicable) shall include terms and conditions customary for final DIP financing orders and shall be acceptable to the DIP Lender, including, without limitation, waiver of the automatic stay, credit-bidding rights, "no marshaling" provisions, and waivers of the imposition of costs pursuant to Section 506(c) of the Bankruptcy code and the "equities of the case" exception in Section 552(b) of the Bankruptcy Code, in each case, to the extent applicable. |
| 28. | ***Governing Law:*** | • New York (and to the extent applicable, the Bankruptcy Code). |

**IN WITNESS WHEREOF,** the parties hereto have caused this Term Sheet to be executed as of the date first set forth above.

SORRENTO THERAPEUTICS, INC., as a Borrower
SCINTILLA PHARMACEUTICALS, INC., as a Borrower


By: _____
   Name:
   Title:




SCILEX HOLDING COMPANY


By: _____
   Name:
   Title:

**<u>Exhibit 2</u>**

**Subordination Agreement**

**Exhibit 3**

**Initial Budget**

**Sorrento Therapeutics**
Cash Flow Forecast

| Week # | 20 | 21 | 22 | 23 | 24 | Total |
|---|---|---|---|---|---|---|
| Week Beginning | 6/25 | 7/2 | 7/9 | 7/16 | 7/23 | |
| Week Ending | 7/1 | 7/8 | 7/15 | 7/22 | 7/29 | 24Wks |
| | Fcst. | Fcst. | Fcst. | Fcst. | Fcst. | |
| *($ in millions)* | | | | | | |
| **Cash Receipts** | | | | | | |
| Cash Operating Receipts | – | – | – | – | – | $1.71 |
| Non-Operating Receipts | | | | | | 0.77 |
| Senior DIP Funding | 5.00 | – | – | – | – | 75.00 |
| Junior DIP Funding | | 21.20 | – | – | – | 21.20 |
| **Total Cash Receipts** | **$5.00** | **$21.20** | **–** | **–** | **–** | **$98.68** |
| **Cash Disbursements** | | | | | | |
| **Operating Disbursements** | | | | | | |
| Payroll, Taxes, and Medical | (0.39) | (1.51) | (0.55) | (2.21) | (0.05) | (27.73) |
| Rent / Operating Leases | (1.28) | (0.22) | – | – | (1.28) | (8.43) |
| Licensing, Taxes, and Insurance | (0.53) | (0.03) | (0.03) | (0.03) | (0.63) | (4.23) |
| SG&A Other | (2.51) | (1.32) | (1.15) | (1.03) | (0.23) | (9.40) |
| ACEA China Funding | (1.00) | – | (1.00) | (1.00) | – | (7.00) |
| Critical Vendor Payments | (0.10) | (0.10) | (0.10) | – | – | (0.30) |
| Contingency | – | – | – | – | – | – |
| Capital Expenditures | – | – | – | – | – | – |
| **Total Cash Operating Disbursements** | **($5.81)** | **($3.18)** | **($2.83)** | **($4.27)** | **($2.19)** | **($57.08)** |
| **Other Disbursements** | | | | | | |
| Professional Fees - Estate Advisors | (1.29) | (1.51) | (1.41) | (1.30) | (1.30) | (32.97) |
| Professional Fees - UCC Advisors | (0.05) | (0.05) | (0.05) | (0.05) | (0.05) | (1.80) |
| Professional Fees - Equity Committee Advisors | – | – | – | – | – | (0.40) |
| **Total Retained Professionals** | **(1.34)** | **(1.56)** | **(1.46)** | **(1.35)** | **(1.35)** | **(35.17)** |
| Professional Fees - Ordinary Course Professionals | (1.87) | (0.15) | (0.25) | (0.10) | (0.10) | (4.33) |
| Senior DIP Interest and Fees[1] | (0.97) | (0.50) | (0.09) | – | – | (7.01) |
| Junior DIP Interest and Fees[1] | – | (1.20) | | | | (1.20) |
| **Total Other Disbursements** | **($4.18)** | **($3.41)** | **($1.80)** | **($1.45)** | **($1.45)** | **($47.70)** |
| **Total Disbursements** | **($9.99)** | **($6.60)** | **($4.63)** | **($5.72)** | **($3.65)** | **($104.79)** |
| **Cash Roll-Forward** | | | | | | |
| **Net Cash Flow** | **($4.99)** | **$14.60** | **($4.63)** | **($5.72)** | **($3.65)** | **($6.11)** |
| Beginning Cash | $5.55 | $0.56 | $15.16 | $10.53 | $4.81 | $7.28 |
| Net Cash Flow | (4.99) | 14.60 | (4.63) | (5.72) | (3.65) | (6.11) |
| **Ending Cash** | **$0.56** | **$15.16** | **$10.53** | **$4.81** | **$1.16** | **$1.16** |
| *Senior DIP Loan Balance* | *$75.00* | *$75.00* | *$75.00* | *$75.00* | *$75.00* | |
| *Junior DIP Loan Balance* [2] | *–* | *$21.62* | *$21.62* | *$21.62* | *$21.62* | |

Notes:
*(1) Fees for Sr. and Jr. DIP Lender counsels represent initial estimates and remain subject to further negotiations.*
*(2) Includes 1.0% commitment fee (PIK), 1.0% funding fee (PIK), and $1.2MM lender counsel fees*