United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 14, 2023
Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SORRENTO THERAPEUTICS, INC., *et al.*[1] | ) | Case No. 23-90085 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 810** |

### ORDER APPROVING AND IMPLEMENTING
### MEDIATION SETTLEMENT AND GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (i) authorizing the Debtors' entry into a settlement (the "Settlement") reached in mediation conducted by Judge Marvin Isgur of the United States Bankruptcy Court for the Southern District of Texas (the "Court") by and among the Debtors, Immunotherapy NANTibody, LLC ("NANTibody"), NantCell, Inc. ("NantCell"), NantPharma, LLC ("NantPharma"), and their respective Related Parties (as defined in Exhibit D hereto), and (ii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, their interest holders, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having determined that the legal and factual bases

---

[1]    The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842); and Scintilla Pharmaceuticals, Inc. (7956).  The Debtors' service address is: 4955 Directors Place, San Diego, CA 92121.

set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing,

**IT IS HEREBY ORDERED THAT:**

1. Pursuant to Bankruptcy Rule 9019 and sections 105(a), 362, and 363 of the Bankruptcy Code, the Settlement is approved on the terms and conditions set forth herein.

2. Upon entry of this Order, the Settlement shall be binding on the Debtors and their Related Parties, and NANTibody, NantCell, and NantPharma and their Related Parties.

3. The implementation of the Settlement with NANTibody, NantCell, and NantPharma and their Related Parties (i) will be effectuated through the Debtors' chapter 11 plan of reorganization (the "Plan") if the Plan is effective on or prior to August 31, 2023, or (ii) if the Plan is not effective on or prior to August 31, 2023, will be effectuated prior to and separate from the Plan pursuant to this Order.  Upon the entry of this Order, the Nant Parties agree to support and vote to accept the Plan (and will take no actions that could interfere with or delay confirmation of the Plan or that support any competing plan), provided that the Plan contains (1) the terms of the Settlement and all of the terms and conditions contained in this Order, (2) no terms and conditions inconsistent with the Settlement or any terms and conditions contained in this Order, and (3) only such other terms that are acceptable to NANTibody, NantCell, and NantPharma and their Related Parties to the extent any of them are affected by any of such other terms.  The terms and conditions of the Settlement are as follows:

4. Upon the earlier to occur of the Effective Date of the Plan or August 31, 2023: (A) the Debtors shall

(i) cause NantCell to irrevocably receive $168,374,224.20 via wire transfer in accordance with the wire transfer instructions set forth on Exhibit A;

(ii) cause NANTibody irrevocably to receive $17,909,786.80 or to cause NantCell to receive an additional $10,745,878.08 via wire transfer in accordance with the wire transfer instructions set forth on Exhibit A; and

(iii) in the event that the payments described in the preceding clauses (i) and (ii) (collectively, the "Nant Payments") are made on or prior to August 31, 2023, (X) Exhibits D through Exhibit H attached hereto will not become effective (except for any applicable defined terms that are incorporated herein by reference) and the Clerk of the Court shall retain them in the Court's files and (Y) nothing in this Order shall (1) require any transfer of Sorrento Therapeutics, Inc.'s ("Sorrento") interests in NANTibody, NantCancerStemCell LLC, NantBio, Inc. ("NantBio") or the Exclusive License Agreement between NantCell and Sorrento or (2) impact any of the litigation (other than the judgments entered in *Sorrento Therapeutics, Inc. v. NantCell, Inc., et al.*, Case No. 19STCV11328 and *Immunotherapy NANTibody, LLC, et al. v. Sorrento Therapeutics, Inc., et. al.*, Case No. 19STCV18304) between the Nant Parties and their Related Parties, on the one hand, and the Debtors and their Related Parties, on the other hand, other than as set forth in Section 8 hereof; or

(B) if any or both of the Nant Payments described in Section 4(A)(i) and 4(A)(ii) above have not been made on or prior to 2:00 p.m. prevailing Eastern Time on August 31, 2023 for any reason, then no later than September 6, 2023,

(i) NantBio shall cause the Debtors to irrevocably receive $1,500,000 via wire transfer in accordance with the wire instructions set forth on Exhibit B;

(ii) NANTibody and/or NantCell shall certify to the Debtors, the Unsecured Creditors' Committee, and the Equity Committee in the form attached hereto as Exhibit C (the

"Certification") that: one or more of the Nant Payments has not been timely received; and the wire described in Section 4(B)(i) above has been sent;

(iii) the documents attached as Exhibits D through Exhibit H hereto shall become effective immediately, (x) if the Effective Date of the Plan occurs on or prior to August 31, 2023 as a result of the occurrence of the Effective Date of the Plan, or (y) if the Effective Date of the Plan has not occurred on or prior to August 31, 2023, pursuant to this Order;

(iv) upon the Debtors' receipt of the Certification, Jones Day is authorized to deliver a copy of the Certification to the Clerk of the Court and the Clerk of the Court shall promptly release the original and fully executed copies of all of such documents to Jones Day, 717 Travis Street, 33rd Floor, Houston Texas (and Jones Day is authorized to distribute such documents to the pertinent entities as promptly as practicable following receipt); and

(v) it is the intention of the parties that all of Sorrento's interests and rights in any of the Related Parties be terminated upon the failure of the Debtors to make either of the Nant Payments whether or not the Plan has been confirmed or has become effective and the parties shall take reasonable additional steps to accomplish that.

5.   The Debtors, the Debtors' postpetition DIP financing facility (the "DIP Lender"), the Unsecured Creditors' Committee, and the Equity Committee agree that the Debtors shall not make the Nant Payments unless the Debtors have secured committed financing without material contingencies to pay each of (i) the Debtors' postpetition DIP financing facility and (ii) unless otherwise agreed in advance in writing by the Unsecured Creditors' Committee, all allowed general unsecured claims in full in cash on the Effective Date of the Plan.  If the Debtors do not make the Nant Payments because they are unable to satisfy such requirements, then the terms of Section 4(B) of this Order shall become applicable.

6.  The Exhibits attached to this Order are as follows:

   a.  Exhibit A contains wire instructions for NANTibody and NantCell.

   b.  Exhibit B contains wire instructions for the Debtors.

   c.  Exhibit C is the form of Certification.

   d.  Exhibit D is an agreement providing for mutual general releases of all claims, known and unknown whether or not related to any and all pending litigation by (a) Sorrento and the Related Parties, including Henry Ji, on the one hand, and (b) NANTibody, NantPharma, NantCell, and their respective Related Parties, including Patrick Soon-Shiong, on the other hand and includes consents by all parties to the dismissal with prejudice of all pending litigation between or among them.  These mutual general releases agreement shall also include instructions on the prompt filing of notices of dismissal with prejudice of all actions involving the parties.

   e.  Exhibit E provides for the conveyance of all 8,000,000 of Sorrento's 8,000,000 Series A Units of NANTibody to NANTibody and cancellation of Sorrento's membership, directorship, and any other rights in NANTibody.

   f.  Exhibit F provides for the conveyance of all 20,000,000 of Sorrento's 20,000,000 Series A Units of NantCancerStemCell, LLC to NantCancerStemCell, LLC and cancellation of Sorrento's membership, directorship and any other rights in NantCancerStemCell LLC.

   g.  Exhibit G provides for the conveyance of all 1,000,000 of Sorrento's 1,000,000 shares of NantBio stock to NantBio.

h. <u>Exhibit H</u> provides for the release by Sorrento of any and all claims for royalties or other amounts in any way related to the PD-L1 antibody that is the subject of the April 21, 2015 Exclusive License Agreement between NantCell and Sorrento.

7. The Judgment Debtor Examination currently scheduled for June 14, 2023 in the Superior Court of Los Angeles shall be adjourned by agreement of Sorrento and NantPharma to the earliest date available in Department 14 on or after July 20, 2023. Nothing in this Order shall affect any party's rights or obligations with respect to (a) the subpoenas duces tecum previously served on NantWorks and NantCapital (save for the requirement to provide oral testimony on June 14, 2023), or (b) the written discovery requests previously served on NantPharma; <u>provided</u>, <u>however</u>, that NantPharma, NantWorks, and NantCapital will not use the adjournment of the Judgment Debtor Examination or anything else in this Order as a basis for any motion or argument to quash, modify, delay, or limit their responses to the subpoenas and written discovery.

8. Proceedings in *Sorrento Therapeutics, Inc. vs. NantCell, Inc., et al.*, Case No. 19STCV11328, *Immunotherapy NANTibody, LLC, et al. v. Sorrento Therapeutics, Inc., et. al.*, Case No. 19STCV18304, and *Sorrento Therapeutics, Inc. v. Patrick Soon-Shiong*, Case No. 20STCV08789 (each in Los Angeles Superior Court), *Sorrento Therapeutics, Inc. v. Nantpharma LLC* (Trial Court Case: 23STCP00295; Court of Appeal Case: B329235) are stayed in accordance with the Joint Stipulation To Put All Litigation Activities On Hold Through August 31, 2023.

9. No person or entity may seek any change in the dates specified for payment included in this Order.

10. The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order.

11. Except as set forth in this Order, nothing contained in the Motion, this Order, or any actions taken by the Debtors pursuant to the relief granted in the Order shall be construed as: (i) an admission as to the validity of any claim of or against the Debtors, (ii) a waiver or limitation of the Debtors' or any other person's or entity's rights under the Bankruptcy Code or any other applicable law, or (iii) an approval of an assumption of any lease, sublease, or contract pursuant to section 365 of the Bankruptcy Code.

12. Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

13. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed:  August 14, 2023.

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

## <u>EXHIBIT A</u>

### Wiring Instructions



## **EXHIBIT B**

**Wiring Instructions**



**EXHIBIT C**

**CERTIFICATE**

**Immunotherapy NANTibody, LLC ("NANTibody"), NantCell, Inc. ("NantCell") and NantBio, Inc. ("NantBio")**

**[__], 2023**

[The undersigned officer of NANTibody certifies that the payment of $17,909,786.80 from Sorrento Therapeutics, Inc. ("Sorrento") described in Section 4(A)(ii) of the Order Approving and Implementing Mediation Settlement and Granting Related Relief (the "Settlement Order") was not received by NANTibody in the bank account specified on Exhibit A to the Settlement Order on or before 2:00 p.m. ET on August 31, 2023.]

[The undersigned officer of NantCell certifies that the payment of $168,374,224.20 from Sorrento described in Section 4(A)(i) of the Settlement Order was not received by NantCell in the bank account specified on Exhibit A to the Settlement Order on or before 2:00 p.m. ET on August 31, 2023 [and/or] the payment of an additional $10,745,878.08 described in Section 4(A)(ii) of the Settlement Order was not received in the bank account specified on Exhibit A to the Settlement Order 2:00 p.m. ET on August 31, 2023.]

Accordingly, the undersigned officer of NantBio certifies that such officer caused a wire transfer to be sent to the bank account specified by Sorrento on Exhibit B to the Settlement Order in the amount of $1.5 million on ___, 2023 at _____ _.m.[1]  The federal reference number for such wire transfer is [_____].

IN WITNESS WHEREOF, the undersigned [as applicable] have executed this Certificate on behalf of NANTibody, NantCell, and NantBio, respectively, and not individually, as of the date first stated above.

Immunotherapy NANTibody, LLC

By: _____
Name:
Title:

NantCell, LLC

By: _____
Name:
Title:

---

[1]  NTD: Such date and time shall be no later than September 6, 2023 at 2:00 p.m. prevailing ET.

NantBio, Inc.

By: _____

Name:

Title:

**Exhibit D**

**MUTUAL RELEASE OF ALL CLAIMS**

This Release Agreement is entered into as of the ___ day of _____ 2023 (the "<u>Effective Date</u>") by and among Sorrento Therapeutics, Inc. ("<u>Sorrento</u>"), Dr. Henry Ji, and the Sorrento Related Parties (defined below) on the one hand, and Dr. Patrick Soon-Shiong, Immunotherapy NANTibody, LLC ("<u>NANTibody</u>"), NantCell, Inc. ("<u>NantCell</u>"), NantPharma, LLC ("<u>NantPharma</u>"), and the Nant Related Parties (defined below), on the other hand.

**Recitals**

WHEREAS, in April 2019, Sorrento filed a derivative action in the Los Angeles County Superior Court on behalf of NANTibody against NantCell, Dr. Patrick Soon-Shiong, and Charles Kim (Case No. 19STCV11328), alleging a breach of NANTibody's LLC Agreement, and a breach of fiduciary duty.

WHEREAS, in March 2020, Sorrento filed an action in the Los Angeles County Superior Court against Dr. Soon-Shiong (Case No. 20STCV08789), relating to a 2015 transaction in which rights to Cynviloq were purchased by NantPharma.

WHEREAS, in February 2023, NantCell and NANTibody obtained judgments in the Los Angeles County Superior Court (Case Nos. 19STCV11328 and 19STCV18304) in an aggregate amount exceeding $176 million against Sorrento relating to license agreements for certain antibodies (the "<u>NantCell and NANTibody Judgment</u>").

WHEREAS, on February 13, 2023, Sorrento and its affiliated debtor, Scintilla Pharmaceuticals, Inc. (collectively, the "<u>Debtors</u>"), filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas (Case No. 23-90085), and judgment-enforcement proceedings against the Debtors have been stayed.

WHEREAS, in April 2023, Sorrento obtained a judgment in the Los Angeles County Superior Court in the amount of approximately $127 million against NantPharma (Case No. 23STCP00295) relating to a stock sale and purchase agreement of rights to Cynviloq (the "<u>Sorrento Judgment</u>"), and on May 15, 2023, NantPharma filed and served a notice of appeal of that judgment.

WHEREAS, Sorrento has served post-judgment discovery in connection with the judgment against NantPharma, including serving document requests and interrogatories, and issuing subpoenas to NantWorks and Nant Capital, in Los Angeles County Superior Court (Case No. 23STCP00295).

WHEREAS, the Sorrento Related Parties and the Nant Related Parties believe it is in their mutual best interests to fully and finally resolve any and all disputes between them in accordance with the terms set forth herein and solely for convenience and without admitting the validity of any of the claims and/or defenses that could be asserted; and

1

NOW, THEREFORE, in consideration of mutual promises and other good and valuable consideration, the receipt and sufficiency which is hereby acknowledged, the Sorrento Related Parties and the Nant Related Parties agree as follows:

1.    <u>Accuracy of Recitals</u>.  The parties hereto understand, acknowledge, and agree that the foregoing Recitals are true and correct and are part of and incorporated into this Release Agreement.

2.    Definitions:

a.    "<u>Nant Related Parties</u>" means: NantPharma; NantCell; NANTibody; California Capital Equity, LLC; Cambridge Equities, LP; ImmunityBio, Inc.; MP 13 Ventures, LLC; NantBio, Inc.; NantCancerStemCell LLC; Nant Capital, LLC; NantWorks, LLC; (i) each of their respective assignees, predecessors, successors, parents, subsidiaries, and affiliated entities; and (ii) each of the preceding entities' respective current or former stockholders, managers, investment managers, general partners, partners, members, directors, officers, administrators, insurers, servants and employees in their capacities as such, which, (iii) for greater certainty, includes Patrick Soon-Shiong.

b.    "<u>Reorganized Debtors</u>" means, collectively, a Debtor, or any successor or assign thereto, by merger, consolidation, transfer of all or substantially all assets, or otherwise, on and after the effective date of the Debtors' chapter 11 plan of reorganization (the "<u>Plan</u>"), as reorganized pursuant to and in accordance with the Plan.

c.    "<u>Sorrento Related Parties</u>" means Sorrento, (i) each of its assignees, predecessors, successors, parents, subsidiaries, and affiliated entities; and (ii) each of the preceding entities' respective current or former stockholders, managers, investment managers, general partners, partners, members, directors, officers, administrators, insurers, servants and employees in their capacities as such, which (iii) for greater certainty, includes Henry Ji and the Reorganized Debtors.

3.    <u>Release of Claims</u>.

a.    For good and valuable consideration, the adequacy of which is hereby confirmed, the Sorrento Related Parties, hereby conclusively, absolutely, unconditionally, irrevocably, and forever waive, release, and forever discharge the Nant Related Parties, from any and all liabilities, including claims, judgments, demands, suits, debts, dues, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, complaints, damages, sums of money, interest, attorneys' fees and costs, or causes of action of any kind or nature whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, against the Nant Related Parties, that the Sorrento Related Parties ever had, now have or hereafter can, shall or may have based upon, arising from or related to all prior and pending transactions or other interactions between or among them to-date (including all pending litigation between or among them), except that this release shall not apply to obligations under this Release Agreement or under

other documents dated [_____], 2023 and entered into pursuant to the Order Approving and Implementing Mediation Settlement and Granting Related Relief.

        b.      For good and valuable consideration, the adequacy of which is hereby confirmed, the Nant Related Parties, hereby conclusively, absolutely, unconditionally, irrevocably, and forever waive, release, and forever discharge the Sorrento Related Parties, from any and all liabilities, including claims, judgments, demands, suits, debts, dues, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, complaints, damages, sums of money, interest, attorneys' fees and costs, or causes of action of any kind or nature whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, against the Sorrento Related Parties, that the Nant Related Parties ever had, now have or hereafter can, shall or may have based upon, arising from or related to all prior and pending transactions or other interactions between or among them to-date (including all pending litigation between or among them), except that this release shall not apply to obligations under this Release Agreement or under other documents dated [_____], 2023 and entered into pursuant to the Order Approving and Implementing Mediation Settlement and Granting Related Relief

        c.      It is understood and agreed that this is a full and final release of any and all claims by the Sorrento Related Parties against the Nant Related Parties, and by the Nant Related Parties against the Sorrento Related Parties, relating to all prior and pending transactions or other interactions between or among them to-date, and the parties consent to the dismissal with prejudice of all pending litigation between or among them. To that end, upon the Effective Date of this Release Agreement, the parties shall file notices of dismissal with prejudice of all actions involving the parties, including Case Nos. 19STCV11328, 19STCV18304, 20STCV08789 and 23STCP00295 pending in Los Angeles County Superior Court. For the avoidance of doubt, upon the Effective Date, any right to payment or other consideration based on the NantCell and NANTibody Judgment or the Sorrento Judgment are forever waived, released, and discharged.

        d.      The parties further agree that this full and final release shall apply to all unknown, unanticipated, unsuspected and undisclosed claims, demands, liabilities, actions or causes of action relating to all prior and pending transactions or other interactions to-date between or among Nant Related Parties and Sorrento Related Parties, as well as those which are now known, anticipated, suspected or disclosed, in connection therewith. The parties further understand, agree and hereby expressly waive the provisions of any state, Federal or local law or statute providing in substance that this full and final release shall not extend to claims, demands, injuries or damages, losses or liability described as aforesaid that are unanticipated, undisclosed or unsuspected to exist at the time of this Release Agreement. Particularly, the parties expressly waive and relinquish all rights and benefits afforded by Section 1542 of the California Civil Code, which provides as follows:

        A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY

AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
OR RELEASED PARTY.

Further, the parties expressly waive and relinquish all rights and benefits afforded by any law in any other jurisdiction similar to Section 1542 of the California Civil Code.

4.     Consult with an Attorney.  All parties acknowledge and agree that: (1) they have been afforded a reasonable opportunity and amount of time to consult with their respective counsel prior to executing this Release Agreement; and (2) they have, in fact, consulted with their counsel prior to signing this Release Agreement.

5.     No Admission of Liability.  The Sorrento Related Parties and the Nant Related Parties acknowledge and agree that: (1) no promise, agreement, or inducement not expressed in this Release Agreement has been made between them other than the terms and conditions contained in the Order Approving and Implementing Mediation Settlement and Granting Related Relief; and (2) this Release Agreement is not executed in reliance upon any statement or representation made by either party, nor either party's representative, other than the statements contained in the Release Agreement itself or in the Order Approving and Implementing Mediation Settlement and Granting Related Relief and the exhibits thereto.

6.     Additional Representations and Warranties.  Each party represents and warrants to each other party that such party is the rightful holder of all claims being released by such party pursuant to this Release Agreement.  Each party further represents and warrants to the other party that: (a) such party has all the necessary powers, authority, authorization and approval to enter into this Release Agreement on behalf of itself and all of its Related Parties and to take the actions contemplated to be taken by it pursuant to this Release Agreement; (b) such party has received no notice and has no knowledge of any judgment, restraining order, consent decree, or judicial or administrative prohibition binding upon it that would be violated by its entry into this Release Agreement or by its performance of the actions contemplated to be taken pursuant to this Release Agreement; (c) in connection with the execution, delivery, and performance of this Release Agreement, such party requires no authorization, approval, or consent of any governmental authority or other third party other than such as already has been obtained; (d) this Release Agreement has been duly executed and delivered by an authorized signatory on behalf of such party; (e) this Release Agreement is valid, binding and enforceable against such party in accordance with its terms; and (f) such party has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claims that such party has or may have that are subject to this Release Agreement.

7.     Governing Law.  This Release Agreement shall be governed and construed in accordance with the internal laws of the State of California, including its statutes of limitation, without regard to any otherwise applicable principles of conflicts of laws or choice of law rules that would result in the application of the substantive or procedural laws or rule of any other jurisdiction.

8.     Joint Preparation.  This Release Agreement shall be deemed to have been prepared jointly by the parties hereto jointly participating in its negotiation and preparation.  In the event

4

that any uncertainty or ambiguity or question of intent or interpretation arises, this Release Agreement shall be construed and interpreted as if jointly drafted by the parties in accordance with the rules and interpretation of an "arm's length" agreement.

9.      Construction.  All recitals are incorporated herein as material provisions of this Release Agreement.  No provision of this Release Agreement shall be interpreted or construed against any party because that party or its legal representative drafted that provision.  The captions and headings of the Sections of this Release Agreement are for convenience of reference only and are not to be considered in construing this Release Agreement.  Unless the context of this Release Agreement clearly requires otherwise: (a) references to the plural include the singular, the singular the plural, and the part the whole, (b) "or" has the inclusive meaning frequently identified with the phrase "and/or," (c) "including" has the inclusive meaning frequently identified with the phrase "including but not limited to" or "including without limitation," and (d) references to "hereunder," "herein" or "hereof" relate to this Release Agreement as a whole.  Any reference herein to any statute, rule or regulation shall be deemed to include such statute, rule or regulation as it may be modified, varied, amended or supplemented from time to time.  Any reference herein to any person shall be deemed to include the heirs, personal representatives, successors and permitted assigns of such person.

10.     Modification.  This Release Agreement shall not be varied, altered, modified, canceled, changed, or in any way amended, nor any provision hereof waived, except by agreement of the parties in a written instrument executed by the parties hereto or their legal representatives.

12.     Specific Performance.  Each party acknowledges that the breach of any provision of this Release Agreement will cause irreparable harm to the other party for which any remedies at law would be inadequate.  Therefore, in the event of a material breach or threatened material breach of any such provision by any party, the other party, in addition to any other remedy under this Release Agreement, in equity or in law, shall be entitled to injunctive or other equitable relief in order to enforce or prevent any such violations without the need to demonstrate any special damages or to provide any bond or other security in connection therewith.

13.     Attorneys' Fees.  Each of the parties to this Release Agreement shall pay the fees and expenses of its own attorneys arising in connection with the resolution of the claims released hereby and the negotiation and preparation of this Release Agreement.

14.     Severability.  In the event that any provision or portion of this Release Agreement shall be determined to be invalid or unenforceable for any reason, the remaining provisions of this Release Agreement shall be unaffected thereby and shall remain in full force and effect.

15.     Counterparts.  This Release Agreement may be executed, including by facsimile and/or electronic signatures, in two (2) or more counterparts, each of which shall be deemed to be an original, but all of which together will constitute one and the same Release Agreement.

**SORRENTO THERAPEUTICS, INC.**

By:   _____

Address:  _____
          _____
          _____

Email:  _____


**DR. HENRY JI**

By:   _____

Address:  _____
          _____
          _____

Email:  _____


**IMMUNOTHERAPY NANTIBODY, LLC**

By:   _____

Address:  _____
          _____
          _____

Email:  _____


**NANTCELL, INC.**

By:   _____

Address:  _____
          _____
          _____

Email: _____

**NANTPHARMA, LLC.**

By: _____

Address: _____
             _____
             _____

Email: _____

**PATRICK SOON-SHIONG**

_____

Address: _____
             _____
             _____

Email: _____

## EXHIBIT E

### TRANSFER AGREEMENT

**THIS TRANSFER AGREEMENT** (this "*Agreement*") is made and entered into as of [_____], 2023, by and between Sorrento Therapeutics, Inc., a Delaware corporation ("*Transferor*"), Immunotherapy NANTibody, LLC, a Delaware limited liability company ("*Transferee*"), and NantCell, Inc., a Delaware corporation (solely for the purpose of Sections 4 and 5) (the "*Consenting Party*", and together with the Transferor and the Transferee, the "*Parties*"), in accordance with the terms of that certain *Order Approving and Implementing Mediation Settlement and Granting Related Relief* [Docket No. __], entered by the United States Bankruptcy Court for the Southern District of Texas on [___], 2023, in Transferor's (and its affiliated debtor's) chapter 11 bankruptcy proceedings (Case No. 23-90085) (the "*Settlement Order*").  In consideration of the premises and mutual covenants contained herein, Parties, intending to be legally bound, agree as follows:

1.      <u>Transfer of Securities; Forfeiture; Termination</u>.  Subject to the terms and conditions of the Settlement Order, on the Closing Date (defined below) Transferor (i) shall irrevocably transfer 40,000,000 Series A Units of the Transferee (the "*Securities*") to Transferee in accordance with <u>Section 2</u> below, and (ii) forfeits and terminates all membership, directorship or other rights in connection with Transferor's ownership of the Securities.

2.      <u>Closing Date</u>.  The transfer of the Securities pursuant to this Agreement shall occur on the date of receipt by the Transferor of $1,500,000 from NantBio, Inc. in accordance with the terms of the Settlement Order, or such other date as mutually agreed by Transferee and Transferor (the "*Closing Date*").  On the Closing Date, Transferor shall deliver to Transferee the Securities, registered in the name of Transferor, which Securities shall be reflected in the name of the Transferee on the Transferees' books and stock ledger.

3.      <u>Representations and Warranties of Transferor</u>.  In connection with the transfer of the Securities to Transferee, Transferor represents and warrants as follows as of the Closing Date:

(a)      <u>Ownership; Authorization</u>.  Transferor is the sole record and beneficial owner of the Securities and Transferor owns no other equity securities of Transferee and is not a party to any option, warrant, right, contract, put call or other agreement or commitment providing for the acquisition or disposition of any equity securities in Transferee, other than any such agreements or commitments set forth in Transferee's organizational documents or any other such agreements or commitments with Transferee (including without limitation the Settlement Order and any agreements contemplated thereby).  The Securities are being transferred to Transferee free and clear of any security interests, liens or other encumbrances other than any such security interests, liens or other encumbrances contained in Transferee's organizational documents or other security interests, liens or other encumbrances in favor of Transferee. Transferor has good and marketable title to the Securities and the right and full power and authority to transfer the Securities to Transferee pursuant to this Agreement and without any notice to or the consent of any third party, in each case other than any such restrictions contained in Transferee's organizational documents, other restrictions in favor of Transferee, or restrictions

as a result of Transferor's (and its affiliated debtor's) chapter 11 bankruptcy proceedings. All action has been taken by Transferor under its charter and/or organizational documents or instruments of trust that is necessary for the authorization, execution and delivery of this Agreement by Transferor and the performance by Transferor of its obligations hereunder. This Agreement, when executed and delivered by Transferor and Consenting Party (subject to this Agreement becoming effective pursuant to the Settlement Order), shall constitute a legal, valid and binding obligation of Transferor, enforceable against Transferor in accordance with its terms, subject to (i) laws of general application relating to bankruptcy, insolvency and the relief of debtors and (ii) rules of law governing specific performance, injunctive relief and other equitable remedies.

(b) <u>Tax Consequences</u>.  In making the decision to transfer the Securities to Transferee, Transferor has been given an opportunity to consult with Transferor's own attorney and tax professionals regarding the transfer of the Securities to Transferee pursuant to the terms and conditions of this Agreement.  Transferor has reviewed with his, her or its own tax advisors the federal, state, local and foreign tax consequences of this transfer of the Securities and the transactions contemplated by this Agreement.  Transferor is relying solely on such advisors and not on any statements or representations of Transferee, Transferee's counsel, auditor, or any of Transferee's agents or representatives.  Transferor understands that Transferor (and not Transferee) shall be responsible for Transferor's own tax liability that may arise as a result of this transfer of the Securities or the transactions contemplated by this Agreement.

(c) <u>Sophisticated Transferor</u>.  Transferor is a sophisticated individual or entity familiar with transactions similar to those contemplated by this Agreement, has adequate information concerning the business and financial condition of Transferee to make an informed decision regarding the transfer of the Securities, and has independently and without reliance upon Transferee or its advisors, and based on such information and the advice of such advisors as such Transferor has deemed appropriate, made its own analysis and decision to enter into this Agreement.  Transferor acknowledges that neither Transferee nor any of its affiliates is acting as a fiduciary or financial, legal, tax or investment adviser to such Transferor, has not advised Transferor with respect to Transferor's decision to transfer the Securities and has not given such Transferor any investment, tax, legal or financial advice, opinion or other information on whether the transfer of the Securities is prudent.  Transferor has considered, without limitation, the opportunity to achieve current liquidity, the risk of holding the Securities for an uncertain amount of time, the possibility that Transferee's equity securities will achieve liquidity through a public offering or acquisition or otherwise, Transferee's financial condition, Transferee's growth, Transferee's position in its market, and Transferee's potential future successful introduction of new products and businesses.

(d) <u>Excluded Information; Determination of Purchase Price</u>.  Transferee currently may have, and later may come into possession of, information with respect to itself that is not known to Transferor and that may be material to Transferor's decision to transfer the Securities ("*Transferor Excluded Information*").  Transferor has determined to transfer the Securities notwithstanding Transferor's potential lack of knowledge of Transferor Excluded Information and neither Transferee nor any of its affiliates, officers, directors, stockholders, employees, legal representatives or agents shall have any liability to Transferor, and, to the fullest extent permitted by law, as of the Closing Date, Transferor waives and releases any

2

claims, whether known or unknown and whether or not suspected by Transferor to exist, that it might have against Transferee, and/or its affiliates, officers, directors, managers, stockholders, members, employees, legal representatives or agents, whether under applicable federal and state securities laws or otherwise, with respect to the nondisclosure of Transferor Excluded Information in connection with the transfer of the Securities pursuant to this Agreement. Transferor further acknowledges the market value of the Securities may significantly appreciate or depreciate over time, and by agreeing to transfer the Securities to Transferee pursuant to this Agreement, Transferor is giving up the opportunity to sell or transfer the Securities at a potentially higher value in the future. Transferor understands that Transferee will rely on the accuracy and truth of the foregoing representations, and Transferor hereby consents to such reliance.  Transferor acknowledges that Transferee is not making any representations regarding the value of the Securities.  Transferor expressly disclaims any representations or warranties from Transferee of any kind or nature, whether express or implied, in connection with the transactions contemplated by this Agreement except as expressly set forth in Section 4 or as otherwise contemplated by the Settlement Order.

(e)      No Other Representations.  Except as expressly set forth in this Section 3 and as otherwise contemplated by the Settlement Order, neither Transferor nor any of its directors, members, officers or employees makes or has made any representation or warranty, express or implied, at law or in equity, in respect of Transferor or the transactions contemplated by this Agreement, and Transferor disclaims any other representations or warranties, whether made by Transferor or its affiliates, officers, directors, employees, agents, consultants or representatives, in each case notwithstanding the delivery or disclosure to Transferee or any of its affiliates, officers, directors, employees, agents, consultants or representatives of any documentation or other information with respect to the foregoing.

4.      Representations and Warranties of Transferee and the Consenting Party.  In connection with the transfer of the Securities to Transferee, each of Transferee and Consenting Party represents and warrants as follows as of the Closing Date:

(a)      Authorization. All action has been taken by Transferee and the Consenting Party under its respective charter and/or organizational documents or instruments of trust that is necessary for the authorization, execution and delivery of this Agreement by Transferee and the Consenting Party and the performance by Transferee and the Consenting Party of its obligations hereunder.  This Agreement, when executed and delivered by Transferor, shall constitute a legal, valid and binding obligation of Transferee and the Consenting Party, enforceable against Transferee and the Consenting Party in accordance with its terms, subject to (i) laws of general application relating to bankruptcy, insolvency and the relief of debtors and (ii) rules of law governing specific performance, injunctive relief and other equitable remedies.

(b)      No Other Representations.  Except as expressly set forth in this Section 4 and as otherwise contemplated by the Settlement Order, neither Transferee nor the Consenting Party, nor any of their respective directors, members, officers or employees makes or has made any representation or warranty, express or implied, at law or in equity, in respect of Transferee or the Consenting Party, as applicable, or the transactions contemplated by this Agreement, and each of Transferee and the Consenting Party disclaim any other representations or warranties, whether made by such Party or their respective affiliates, officers, directors, employees, agents,

3

consultants or representatives, in each case notwithstanding the delivery or disclosure to Transferor or any of its affiliates, officers, directors, employees, agents, consultants or representatives of any documentation or other information with respect to the foregoing.

(c)  Non-Reliance.  Transferee and the Consenting Party expressly disclaim any representations or warranties from Transferor or any other Person of any kind or nature, whether express or implied, in connection with the transactions contemplated by this Agreement except as expressly set forth in Section 3 or as otherwise contemplated by the Settlement Order (and none of them has relied on any other representations, warranties or statements of information).

(d)  Reliance. Transferee and the Consenting Party understand that Transferor will rely on the accuracy and truth of the foregoing representations, and Transferee and the Consenting Party hereby consent to such reliance.

5.  Consent.  In accordance with the requirements of Section 8.1 of the Transferee's Limited Liability Company Agreement, dated June 11, 2015, as amended from time to time (the "*Operating Agreement*"), the Consenting Party, which together with the Transferor constitutes all of the members of the Transferee, hereby consents to the transactions contemplated by this Agreement and irrevocably waives its rights under Section 8.4 of the Operating Agreement.

6.  Miscellaneous.

(a)  Governing Law; Venue.  This Agreement is to be construed in accordance with and governed by the internal laws of the State of California without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the internal laws of the State of California to the rights and duties of the parties.  All disputes and controversies arising out of or in connection with this Agreement shall be resolved exclusively by the United States Bankruptcy Court, Southern District of Texas; provided, however, that if the United States Bankruptcy Court, Southern District of Texas shall cease to exercise jurisdiction pursuant to the Settlement Order, all disputes and controversies arising out of or in connection with this Agreement shall be resolved exclusively by the state and federal courts located in the State of California. Each party hereto agrees to submit to the jurisdiction of said courts and agrees that venue shall lie exclusively with such courts.

(b)  Entire Agreement; Amendment.  Except as expressly set forth herein, the Settlement Order (including the exhibits affixed thereto) and this Agreement set forth the entire agreement and understanding of the parties relating to the subject matter herein and supersedes all prior discussions between them relating to the subject matter herein.  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, shall be effective unless in writing signed by the Transferor and the Transferee.

(c)  Expenses.  The Parties shall each bear their own costs, attorneys' fees and other fees incurred in connection with this Agreement or the transactions contemplated hereby.

(d)  No Third Party Beneficiaries.  Nothing in this Agreement, express or implied, is intended to or shall confer upon any person other than the parties hereto any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

4

(e)     <u>Severability</u>.  If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision shall be excluded from this Agreement and the balance of the Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

(f)     <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g. www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

*[Remainder of Page Intentionally Left Blank]*

The parties have executed this Transfer Agreement as of the date first set forth above.

**TRANSFEROR**:

**SORRENTO THERAPEUTICS, INC.**

By:   _____

Address:  _____

_____

_____

Email:  _____

**TRANSFEREE:**

**IMMUNOTHERAPY NANTIBODY, LLC**

By:  _____
Name:
Title:

Address:  _____
             _____

Email:  _____

**CONSENTING PARTY (SOLELY WITH RESPECT TO
SECTION 4 AND 5):**

**NANTCELL, INC.**


By:  _____
Name:
Title:

Address: _____
_____

Email: _____

## EXHIBIT F

### TRANSFER AGREEMENT

**THIS TRANSFER AGREEMENT** (this "*Agreement*") is made and entered into as of [_____], 2023, by and between Sorrento Therapeutics, Inc., a Delaware corporation ("*Transferor*"), NantCancerStemCell, LLC, a Delaware limited liability company ("*Transferee*"), and NantBio, Inc., a Delaware corporation (solely for the purpose of Sections 4 and 5) (the "*Consenting Party*", and together with the Transferor and the Transferee, the "*Parties*"), in accordance with the terms of that certain *Order Approving and Implementing Mediation Settlement and Granting Related Relief* [Docket No. __], entered by the United States Bankruptcy Court for the Southern District of Texas on [___], 2023, in Transferor's (and its affiliated debtor's) chapter 11 bankruptcy proceedings (Case No. 23-90085)  (the "*Settlement Order*").  In consideration of the premises and mutual covenants contained herein, Parties, intending to be legally bound, agree as follows:

1.     Transfer of Securities; Forfeiture; Termination.  Subject to the terms and conditions of the Settlement Order, on the Closing Date (defined below) Transferor (i) shall irrevocably transfer 20,000,000 Series A Units of the Transferee (the "*Securities*") to Transferee in accordance with Section 2 below, and (ii) forfeits and terminates all membership, directorship or other rights in connection with Transferor's ownership of the Securities.

2.     Closing Date.  The transfer of the Securities pursuant to this Agreement shall occur on the date of receipt by the Transferor of $1,500,000 from NantBio, Inc. in accordance with the terms of the Settlement Order, or such other date as mutually agreed by Transferee and Transferor (the "*Closing Date*").  On the Closing Date, Transferor shall deliver to Transferee the Securities, registered in the name of Transferor, which Securities shall be reflected in the name of the Transferee on the Transferee's books and stock ledger.

3.     Representations and Warranties of Transferor.  In connection with the transfer of the Securities to Transferee, Transferor represents and warrants as follows as of the Closing Date:

(a)     Ownership; Authorization.  Transferor is the sole record and beneficial owner of the Securities and Transferor owns no other equity securities of Transferee and is not a party to any option, warrant, right, contract, put call or other agreement or commitment providing for the acquisition or disposition of any equity securities in Transferee, other than any such agreements or commitments set forth in Transferee's organizational documents or any other such agreements or commitments with Transferee (including without limitation the Settlement Order and any agreements contemplated thereby).  The Securities are being transferred to Transferee free and clear of any security interests, liens or other encumbrances other than any such security interests, liens or other encumbrances contained in Transferee's organizational documents or other security interests, liens or other encumbrances in favor of Transferee. Transferor has good and marketable title to the Securities and the right and full power and authority to transfer the Securities to Transferee pursuant to this Agreement and without any notice to or the consent of any third party, in each case other than any such restrictions contained in Transferee's organizational documents, other restrictions in favor of Transferee, or restrictions

as a result of Transferor's (and its affiliated debtor's) chapter 11 bankruptcy proceedings.  All action has been taken by Transferor under its charter and/or organizational documents or instruments of trust that is necessary for the authorization, execution and delivery of this Agreement by Transferor and the performance by Transferor of its obligations hereunder.  This Agreement, when executed and delivered by Transferor and Consenting Party (subject to this Agreement becoming effective pursuant to the Settlement Order), shall constitute a legal, valid and binding obligation of Transferor, enforceable against Transferor in accordance with its terms, subject to (i) laws of general application relating to bankruptcy, insolvency and the relief of debtors and (ii) rules of law governing specific performance, injunctive relief and other equitable remedies.

(b)      Tax Consequences.  In making the decision to transfer the Securities to Transferee, Transferor has been given an opportunity to consult with Transferor's own attorney and tax professionals regarding the transfer of the Securities to Transferee pursuant to the terms and conditions of this Agreement.  Transferor has reviewed with his, her or its own tax advisors the federal, state, local and foreign tax consequences of this transfer of the Securities and the transactions contemplated by this Agreement.  Transferor is relying solely on such advisors and not on any statements or representations of Transferee, Transferee's counsel, auditor, or any of Transferee's agents or representatives.  Transferor understands that Transferor (and not Transferee) shall be responsible for Transferor's own tax liability that may arise as a result of this transfer of the Securities or the transactions contemplated by this Agreement.

(c)      Sophisticated Transferor.  Transferor is a sophisticated individual or entity familiar with transactions similar to those contemplated by this Agreement, has adequate information concerning the business and financial condition of Transferee to make an informed decision regarding the transfer of the Securities, and has independently and without reliance upon Transferee or its advisors, and based on such information and the advice of such advisors as such Transferor has deemed appropriate, made its own analysis and decision to enter into this Agreement.  Transferor acknowledges that neither Transferee nor any of its affiliates is acting as a fiduciary or financial, legal, tax or investment adviser to such Transferor, has not advised Transferor with respect to Transferor's decision to transfer the Securities and has not given such Transferor any investment, tax, legal or financial advice, opinion or other information on whether the transfer of the Securities is prudent.  Transferor has considered, without limitation, the opportunity to achieve current liquidity, the risk of holding the Securities for an uncertain amount of time, the possibility that Transferee's equity securities will achieve liquidity through a public offering or acquisition or otherwise, Transferee's financial condition, Transferee's growth, Transferee's position in its market, and Transferee's potential future successful introduction of new products and businesses.

(d)      Excluded Information; Determination of Purchase Price.  Transferee currently may have, and later may come into possession of, information with respect to itself that is not known to Transferor and that may be material to Transferor's decision to transfer the Securities ("*Transferor Excluded Information*").  Transferor has determined to transfer the Securities notwithstanding Transferor's potential lack of knowledge of Transferor Excluded Information and neither Transferee nor any of its affiliates, officers, directors, stockholders, employees, legal representatives or agents shall have any liability to Transferor, and, to the fullest extent permitted by law, as of the Closing Date, Transferor waives and releases any

claims, whether known or unknown and whether or not suspected by Transferor to exist, that it might have against Transferee, and/or its affiliates, officers, directors, managers, stockholders, members, employees, legal representatives or agents, whether under applicable federal and state securities laws or otherwise, with respect to the nondisclosure of Transferor Excluded Information in connection with the transfer of the Securities pursuant to this Agreement. Transferor further acknowledges the market value of the Securities may significantly appreciate or depreciate over time, and by agreeing to transfer the Securities to Transferee pursuant to this Agreement, Transferor is giving up the opportunity to sell or transfer the Securities at a potentially higher value in the future. Transferor understands that Transferee will rely on the accuracy and truth of the foregoing representations, and Transferor hereby consents to such reliance.  Transferor acknowledges that Transferee is not making any representations regarding the value of the Securities.  Transferor expressly disclaims any representations or warranties from Transferee of any kind or nature, whether express or implied, in connection with the transactions contemplated by this Agreement except as expressly set forth in Section 4 or as otherwise contemplated by the Settlement Order.

(e)      No Other Representations.  Except as expressly set forth in this Section 3 and as otherwise contemplated by the Settlement Order, neither Transferor nor any of its directors, members, officers or employees makes or has made any representation or warranty, express or implied, at law or in equity, in respect of Transferor or the transactions contemplated by this Agreement, and Transferor disclaims any other representations or warranties, whether made by Transferor or its affiliates, officers, directors, employees, agents, consultants or representatives, in each case notwithstanding the delivery or disclosure to Transferee or any of its affiliates, officers, directors, employees, agents, consultants or representatives of any documentation or other information with respect to the foregoing.

4.      Representations and Warranties of Transferee and the Consenting Party.  In connection with the transfer of the Securities to Transferee, each of Transferee and Consenting Party represents and warrants as follows as of the Closing Date:

(a)      Authorization. All action has been taken by Transferee and the Consenting Party under its respective charter and/or organizational documents or instruments of trust that is necessary for the authorization, execution and delivery of this Agreement by Transferee and the Consenting Party and the performance by Transferee and the Consenting Party of its obligations hereunder.  This Agreement, when executed and delivered by Transferor, shall constitute a legal, valid and binding obligation of Transferee and the Consenting Party, enforceable against Transferee and the Consenting Party in accordance with its terms, subject to (i) laws of general application relating to bankruptcy, insolvency and the relief of debtors and (ii) rules of law governing specific performance, injunctive relief and other equitable remedies.

(b)      No Other Representations.  Except as expressly set forth in this Section 4 and as otherwise contemplated by the Settlement Order, neither Transferee nor the Consenting Party, nor any of their respective directors, members, officers or employees makes or has made any representation or warranty, express or implied, at law or in equity, in respect of Transferee or the Consenting Party, as applicable, or the transactions contemplated by this Agreement, and each of Transferee and the Consenting Party disclaim any other representations or warranties, whether made by such Party or their respective affiliates, officers, directors, employees, agents,

consultants or representatives, in each case notwithstanding the delivery or disclosure to Transferor or any of its affiliates, officers, directors, employees, agents, consultants or representatives of any documentation or other information with respect to the foregoing.

(c)     Non-Reliance. Transferee and the Consenting Party expressly disclaim any representations or warranties from Transferor or any other Person of any kind or nature, whether express or implied, in connection with the transactions contemplated by this Agreement except as expressly set forth in Section 3 or as otherwise contemplated by the Settlement Order (and none of them has relied on any other representations, warranties or statements of information).

(d)     Reliance. Transferee and the Consenting Party understand that Transferor will rely on the accuracy and truth of the foregoing representations, and Transferee and the Consenting Party hereby consent to such reliance.

5.     Consent. In accordance with the requirements of Section 8.1 of the Transferee's Limited Liability Company Agreement, dated June 2, 2015, as amended from time to time (the "*Operating Agreement*"), the Consenting Party, which together with the Transferor constitutes all of the members of the Transferee, hereby consents to the transactions contemplated by this Agreement and irrevocably waives its rights under Section 8.4 of the Operating Agreement.

6.     Miscellaneous.

(a)     Governing Law; Venue.  This Agreement is to be construed in accordance with and governed by the internal laws of the State of California without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the internal laws of the State of California to the rights and duties of the parties.  All disputes and controversies arising out of or in connection with this Agreement shall be resolved exclusively by the United States Bankruptcy Court, Southern District of Texas; provided, however, that if the United States Bankruptcy Court, Southern District of Texas shall cease to exercise jurisdiction pursuant to the Settlement Order, all disputes and controversies arising out of or in connection with this Agreement shall be resolved exclusively by the state and federal courts located in the State of California. Each party hereto agrees to submit to the jurisdiction of said courts and agrees that venue shall lie exclusively with such courts.

(b)     Entire Agreement; Amendment.  Except as expressly set forth herein, the Settlement Order (including the exhibits affixed thereto) and this Agreement set forth the entire agreement and understanding of the parties relating to the subject matter herein and supersedes all prior discussions between them relating to the subject matter herein.  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, shall be effective unless in writing signed by the Transferor and the Transferee.

(c)     Expenses.  The Parties shall each bear their own costs, attorneys' fees and other fees incurred in connection with this Agreement or the transactions contemplated hereby.

(d)     No Third Party Beneficiaries.  Nothing in this Agreement, express or implied, is intended to or shall confer upon any person other than the parties hereto any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

(e)     <u>Severability</u>.  If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision shall be excluded from this Agreement and the balance of the Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

(f)     <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g. www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

[*Remainder of Page Intentionally Left Blank*]

The parties have executed this Transfer Agreement as of the date first set forth above.

**TRANSFEROR**:

**SORRENTO THERAPEUTICS, INC.**

By:   _____

Address:   _____

   _____

   _____

Email:   _____

**TRANSFEREE:**

**NANTCANCERSTEMCELL, LLC**

By: _____

Name:

Title:

Address: _____

_____

Email: _____

**CONSENTING PARTY (SOLELY WITH RESPECT TO SECTION 4 AND 5):**

**NANTBIO, INC.**


By:   _____
Name:
Title:

Address:  _____
                 _____

Email:  _____

# EXHIBIT G

## TRANSFER AGREEMENT

THIS TRANSFER AGREEMENT (this "*Agreement*") is made and entered into as of [____], 2023, by and between Sorrento Therapeutics, Inc., a Delaware corporation ("*Transferor*"), NantBio, Inc., a Delaware corporation ("*Transferee*"), and NantWorks, LLC, a Delaware limited liability company (solely for the purpose of Sections 4 and 5) (the "*Waiving Party*", and together with the Transferor and the Transferee, the "*Parties*"), in accordance with the terms of that certain *Order Approving and Implementing Mediation Settlement and Granting Related Relief* [Docket No. __], entered by the United States Bankruptcy Court for the Southern District of Texas on [____], 2023, in Transferor's (and its affiliated debtor's) chapter 11 bankruptcy proceedings (Case No. 23-90085) (the "*Settlement Order*").  In consideration of the premises and mutual covenants contained herein, Parties, intending to be legally bound, agree as follows:

       1.    <u>Transfer of Securities; Forfeiture; Termination</u>.  Subject to the terms and conditions of the Settlement Order, on the Closing Date (defined below) Transferor shall irrevocably transfer 1,000,000 shares of Common Stock, par value $0.001 per share, of the Transferee (the "*Securities*") to Transferee in accordance with <u>Section 2</u> below.

       2.    <u>Closing Date</u>.  The transfer of the Securities pursuant to this Agreement shall occur on the date of receipt by the Transferor of $1,500,000 from Transferee in accordance with the terms of the Settlement Order, or such other date as mutually agreed by Transferee and Transferor (the "*Closing Date*").  On the Closing Date, Transferor shall deliver to Transferee a certificate or certificates representing the Securities, registered in the name of Transferor, accompanied by an Assignment Separate from Certificate in the form attached to this Agreement as <u>Exhibit A</u> and executed by Transferor in favor of Transferee, or an affidavit of lost certificate in a form reasonably acceptable to Transferee.

       3.    <u>Representations and Warranties of Transferor</u>.  In connection with the transfer of the Securities to Transferee, Transferor represents and warrants as follows as of the Closing Date:

           (a)    <u>Ownership; Authorization</u>.  Transferor is the sole record and beneficial owner of the Securities and Transferor owns no other equity securities of Transferee and is not a party to any option, warrant, right, contract, put call or other agreement or commitment providing for the acquisition or disposition of any equity securities in Transferee, other than any such agreements or commitments set forth in Transferee's organizational documents or any other such agreements or commitments with Transferee (including without limitation the Settlement Order and any agreements contemplated thereby).  The Securities are being transferred to Transferee free and clear of any security interests, liens or other encumbrances other than any such security interests, liens or other encumbrances contained in Transferee's organizational documents or other security interests, liens or other encumbrances in favor of Transferee. Transferor has good and marketable title to the Securities and the right and full power and authority to transfer the Securities to Transferee pursuant to this Agreement and without any notice to or the consent of any third party, in each case other than any such restrictions contained in Transferee's organizational documents, other restrictions in favor of Transferee, or restrictions

as a result of Transferor's (and its affiliated debtor's) chapter 11 bankruptcy proceedings.  All action has been taken by Transferor under its charter and/or organizational documents or instruments of trust that is necessary for the authorization, execution and delivery of this Agreement by Transferor and the performance by Transferor of its obligations hereunder.  This Agreement, when executed and delivered by Transferor and Consenting Party (subject to this Agreement becoming effective pursuant to the Settlement Order), shall constitute a legal, valid and binding obligation of Transferor, enforceable against Transferor in accordance with its terms, subject to (i) laws of general application relating to bankruptcy, insolvency and the relief of debtors and (ii) rules of law governing specific performance, injunctive relief and other equitable remedies.

(b)     Tax Consequences.  In making the decision to transfer the Securities to Transferee, Transferor has been given an opportunity to consult with Transferor's own attorney and tax professionals regarding the transfer of the Securities to Transferee pursuant to the terms and conditions of this Agreement.  Transferor has reviewed with his, her or its own tax advisors the federal, state, local and foreign tax consequences of this transfer of the Securities and the transactions contemplated by this Agreement.  Transferor is relying solely on such advisors and not on any statements or representations of Transferee, Transferee's counsel, auditor, or any of Transferee's agents or representatives.  Transferor understands that Transferor (and not Transferee) shall be responsible for Transferor's own tax liability that may arise as a result of this transfer of the Securities or the transactions contemplated by this Agreement.

(c)     Sophisticated Transferor.  Transferor is a sophisticated individual or entity familiar with transactions similar to those contemplated by this Agreement, has adequate information concerning the business and financial condition of Transferee to make an informed decision regarding the transfer of the Securities, and has independently and without reliance upon Transferee or its advisors, and based on such information and the advice of such advisors as such Transferor has deemed appropriate, made its own analysis and decision to enter into this Agreement.  Transferor acknowledges that neither Transferee nor any of its affiliates is acting as a fiduciary or financial, legal, tax or investment adviser to such Transferor, has not advised Transferor with respect to Transferor's decision to transfer the Securities and has not given such Transferor any investment, tax, legal or financial advice, opinion or other information on whether the transfer of the Securities is prudent.  Transferor has considered, without limitation, the opportunity to achieve current liquidity, the risk of holding the Securities for an uncertain amount of time, the possibility that Transferee's equity securities will achieve liquidity through a public offering or acquisition or otherwise, Transferee's financial condition, Transferee's growth, Transferee's position in its market, and Transferee's potential future successful introduction of new products and businesses.

(d)     Excluded Information; Determination of Purchase Price.  Transferee currently may have, and later may come into possession of, information with respect to itself that is not known to Transferor and that may be material to Transferor's decision to transfer the Securities ("*Transferor Excluded Information*").  Transferor has determined to transfer the Securities notwithstanding Transferor's potential lack of knowledge of Transferor Excluded Information and neither Transferee nor any of its affiliates, officers, directors, stockholders, employees, legal representatives or agents shall have any liability to Transferor, and, to the fullest extent permitted by law, as of the Closing Date, Transferor waives and releases any

claims, whether known or unknown and whether or not suspected by Transferor to exist, that it might have against Transferee, and/or its affiliates, officers, directors, managers, stockholders, members, employees, legal representatives or agents, whether under applicable federal and state securities laws or otherwise, with respect to the nondisclosure of Transferor Excluded Information in connection with the transfer of the Securities pursuant to this Agreement. Transferor further acknowledges the market value of the Securities may significantly appreciate or depreciate over time, and by agreeing to transfer the Securities to Transferee pursuant to this Agreement, Transferor is giving up the opportunity to sell or transfer the Securities at a potentially higher value in the future. Transferor understands that Transferee will rely on the accuracy and truth of the foregoing representations, and Transferor hereby consents to such reliance.  Transferor acknowledges that Transferee is not making any representations regarding the value of the Securities.  Transferor expressly disclaims any representations or warranties from Transferee of any kind or nature, whether express or implied, in connection with the transactions contemplated by this Agreement except as expressly set forth in Section 4 or as otherwise contemplated by the Settlement Order.

(e)     No Other Representations.  Except as expressly set forth in this Section 3 and as otherwise contemplated by the Settlement Order, neither Transferor nor any of its directors, members, officers or employees makes or has made any representation or warranty, express or implied, at law or in equity, in respect of Transferor or the transactions contemplated by this Agreement, and Transferor disclaims any other representations or warranties, whether made by Transferor or its affiliates, officers, directors, employees, agents, consultants or representatives, in each case notwithstanding the delivery or disclosure to Transferee or any of its affiliates, officers, directors, employees, agents, consultants or representatives of any documentation or other information with respect to the foregoing.

4.     Representations and Warranties of Transferee and the Waiving Party.  In connection with the transfer of the Securities to Transferee, each of Transferee and Waiving Party represents and warrants as follows as of the Closing Date:

(a)     Authorization. All action has been taken by Transferee and the Waiving Party under its respective charter and/or organizational documents or instruments of trust that is necessary for the authorization, execution and delivery of this Agreement by Transferee and the Waiving Party and the performance by Transferee and the Waiving Party of its obligations hereunder.  This Agreement, when executed and delivered by Transferor, shall constitute a legal, valid and binding obligation of Transferee and the Waiving Party, enforceable against Transferee and the Waiving Party in accordance with its terms, subject to (i) laws of general application relating to bankruptcy, insolvency and the relief of debtors and (ii) rules of law governing specific performance, injunctive relief and other equitable remedies.

(b)     No Other Representations.  Except as expressly set forth in this Section 4 and as otherwise contemplated by the Settlement Order, neither Transferee nor the Waiving Party, nor any of their respective directors, members, officers or employees makes or has made any representation or warranty, express or implied, at law or in equity, in respect of Transferee or the Waiving Party, as applicable, or the transactions contemplated by this Agreement, and each of Transferee and the Waiving Party disclaim any other representations or warranties, whether made by such Party or their respective affiliates, officers, directors, employees, agents,

consultants or representatives, in each case notwithstanding the delivery or disclosure to Transferor or any of its affiliates, officers, directors, employees, agents, consultants or representatives of any documentation or other information with respect to the foregoing.

(c)     Non-Reliance.  Transferee and the Waiving Party expressly disclaim any representations or warranties from Transferor or any other Person of any kind or nature, whether express or implied, in connection with the transactions contemplated by this Agreement except as expressly set forth in Section 3 or as otherwise contemplated by the Settlement Order (and none of them has relied on any other representations, warranties or statements of information).

(d)     Reliance. Transferee and the Waiving Party understand that Transferor will rely on the accuracy and truth of the foregoing representations, and Transferee and the Waiving Party hereby consent to such reliance.

5.     Consent; Waiver.  The Transferee's board of directors has approved the transactions contemplated by this Agreement in accordance with Article III, Section B.5(b)(iv) of the Transferee's Amended and Restated Certificate of Incorporation, dated as of January 6, 2014, as amended from time to time thereafter. The Waiving Party hereby consent to the transactions contemplated by this Agreement and, solely with respect to the transactions contemplated by this Agreement, the Waiving Party hereby irrevocably waives its rights under Section 2 of that certain Right of First Refusal, Co-Sale and Drag Along Agreement, dated as of April 29, 2015, by and between the Transferee, the Waiving Party and the Transferor.

6.     Miscellaneous.

(a)     Governing Law; Venue.  This Agreement is to be construed in accordance with and governed by the internal laws of the State of California without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the internal laws of the State of California to the rights and duties of the parties.  All disputes and controversies arising out of or in connection with this Agreement shall be resolved exclusively by the United States Bankruptcy Court, Southern District of Texas; provided, however, that if the United States Bankruptcy Court, Southern District of Texas shall cease to exercise jurisdiction pursuant to the Settlement Order, all disputes and controversies arising out of or in connection with this Agreement shall be resolved exclusively by the state and federal courts located in the State of California. Each party hereto agrees to submit to the jurisdiction of said courts and agrees that venue shall lie exclusively with such courts.

(b)     Entire Agreement; Amendment.  Except as expressly set forth herein, the Settlement Order (including the exhibits affixed thereto) and this Agreement set forth the entire agreement and understanding of the parties relating to the subject matter herein and supersedes all prior discussions between them relating to the subject matter herein.  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, shall be effective unless in writing signed by the Transferor and the Transferee.

(c)     Expenses.  The Parties shall each bear their own costs, attorneys' fees and other fees incurred in connection with this Agreement or the transactions contemplated hereby.

(d)      <u>No Third Party Beneficiaries</u>.  Nothing in this Agreement, express or implied, is intended to or shall confer upon any person other than the parties hereto any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

(e)      <u>Severability</u>.  If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision shall be excluded from this Agreement and the balance of the Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

(f)      <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g. www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

[*Remainder of Page Intentionally Left Blank*]

The parties have executed this Transfer Agreement as of the date first set forth above.

**TRANSFEROR**:

**SORRENTO THERAPEUTICS, INC.**

By: _____

Address: _____
             _____
             _____

Email: _____

**TRANSFEREE:**

**NANTBIO, INC.**

By:   _____

Name:

Title:

Address:   _____

_____

Email:   _____

**WAIVING PARTY (SOLELY WITH RESPECT TO SECTION 4 AND 5):**

**NANTWORKS, LLC**


By:   _____
Name:
Title:

Address: _____
             _____

Email: _____

## Exhibit A

### Assignment Separate From Certificate

**For Value Received** and pursuant to that certain Transfer Agreement by and among the undersigned, a Delaware corporation ("*Transferor*"), NantBio, Inc., Delaware corporation ("*Transferee*"), and NantWorks, LLC, a Delaware limited liability company (solely for the purpose of waiving certain of its rights with respect to the transactions contemplated by the Agreement pursuant to Section 4 thereto) dated [____], 2023 (the "*Agreement*"), Transferor hereby transfers unto Transferee 1,000,000 shares of Common Stock, par value $0.001 per share, of the Transferee standing in Transferor's name on Transferee's books and represented by Certificate No. 3 and does hereby irrevocably constitute and appoint Jones Day to transfer said stock on the books of Transferee with full power of substitution in the premises.

Dated: _____, 2023


**Sorrento Therapeutics, Inc.**


By: _____

Address: _____
                      _____
                      _____

**Exhibit H**

**AMENDMENT AND TERMINATION AGREEMENT**

This Amendment and Termination Agreement (this "Agreement") is entered into as of the [____] day of [____] 2023 by and between Sorrento Therapeutics, Inc. ("Sorrento") on the one hand and NantCell, Inc. ("NantCell") and Immunotherapy NANTibody, LLC ("NANTibody") on the other hand.  Sorrento, NANTibody and NantCell are each sometimes referred to herein as a "Party" and collectively as the "Parties."

**Recitals**

WHEREAS, the Parties have fully and finally resolved any and all disputes among all of the Related Parties (as defined herein) in accordance with the terms set forth in that certain Mutual Release of All Claims by and among Sorrento, Dr. Henry Ji, and the Sorrento Related Parties (as defined herein) on the one hand, and Dr. Patrick Soon-Shiong, NANTibody, NantCell, NantPharma, LLC ("NantPharma"), and the Nant Related Parties (as defined herein), entered into as of the [___] day of [___] 2023;

WHEREAS, the Award (as defined herein) stated that the April 21, 2015 Exclusive License Agreement between NantCell and Sorrento (the "NantCell ELA") and the June 11, 2015 Exclusive License Agreement between NANTibody and Sorrento (the "NANTibody ELA") "remain in full force and effect only with respect to PD-L1 antibody RSBC6, except that Sorrento shall have no further obligation to contribute materials or knowhow with respect to this antibody. The Parties have no further rights or obligations under either of the ELAs with respect to any other targets, materials, or know-how, with the limited exception that [NantCell] will not be required to return any materials or know-how provided to it by Sorrento."

WHEREAS, the Parties, having no further rights or obligations under the NANTibody ELA, wish to terminate the NANTibody ELA in accordance with the terms set forth herein; and

WHEREAS, to further effectuate such resolution pursuant to Section 4.B of the Settlement Order (defined herein), the Parties wish to amend the NantCell ELA in accordance with the terms set forth herein.

NOW, THEREFORE, in consideration of mutual promises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.      Accuracy of Recitals.  Each Party understands, acknowledges, and agrees, on behalf of itself and each of its Related Parties, that the foregoing Recitals are true and correct and are part of and incorporated into this Agreement.

2.      Definitions.

(a)      "Award" means that certain Final Award dated December 2, 2022 in Arbitration Case No. 01-19-00003-3950 before the American Arbitration Association Commercial Arbitration

Tribunal between NantCell and NANTibody on the one hand, and Sorrento and Henry Ji, on the other hand.

(b)     "Closing" is defined in Exhibt E to the Settlement Order.

(c)     "Joint Patent" is defined in the NantCell ELA

(d)     "Licensed Patent Rights" is defined in the NantCell ELA.

(e)     "Licensed Product" is defined in the NantCell ELA, as amended by this Agreement.

(f)     "Nant Related Parties" means: NantPharma; NantCell; NANTibody; California Capital Equity, LLC; Cambridge Equities, LP; ImmunityBio, Inc.; MP 13 Ventures, LLC; NantBio, Inc.; NantCancerStemCell LLC; Nant Capital, LLC; NantWorks, LLC; (i) each of their respective assignees, predecessors, successors, parents, subsidiaries, and affiliated entities; and (ii) each of the preceding entities' respective current or former stockholders, managers, investment managers, general partners, partners, members, directors, officers, administrators, insurers, servants and employees in their capacities as such, which, (iii) for greater certainty, includes Patrick Soon-Shiong.

(g)     "Order" means the Judgment Re: Defendant and Cross-Complainant NantCell, Inc.'s Petition to Confirm Final Arbitration Award granted by the Hon. Terry A. Green on February 7, 2023 in Los Angeles Superior Court Case No. 19STCV11328.

(h)     "Related Parties" means: (i) with respect to NantCell, the Nant Related Parties; and (ii) with respect to Sorrento, the Sorrento Related Parties.

(i)     "Settlement Order" means that certain *Order Approving and Implementing Mediation Settlement and Granting Related Relief* [Docket No. [__], entered by the United States Bankruptcy Court for the Southern District of Texas on [___], 2023, in Sorrento's (and its affiliated debtor's) chapter 11 bankruptcy proceedings (Case No. 23-90085).

(j)     "Sorrento Related Parties" means Sorrento, (i) each of its assignees, predecessors, successors, parents, subsidiaries, and affiliated entities; and (ii) each of the preceding entities' respective current or former stockholders, managers, investment managers, general partners, partners, members, directors, officers, administrators, insurers, servants and employees in their capacities as such, which (iii) for greater certainty, includes Henry Ji and the Reorganized Debtors.

3.     Termination of the NANTibody ELA.  Subject to the occurrence of the Closing and pursuant to Section 11.2 of the NANTibody ELA, Sorrento and NANTibody hereby terminate the NANTibody ELA effective as of the date of the Order.

4.     Amendment to NantCell ELA.  Pursuant to Section 13.7 of the NantCell ELA, the Parties hereby amend the NantCell ELA as follows:

(a)     Product No. 2 of Exhibit A of the NantCell ELA is hereby deleted in its entirety and replaced with the following:

| 2 | PD-L1 | RSBC6 | USSN 13/907,685 | 31 May 2013 |

(b)      The definition of Licensed Product in Exhibit B of the NantCell ELA is hereby deleted in its entirety and replaced with the following:

> "**Licensed Product**" means: (a) the PD-L1 antibody RSBC6; and (b) NantCell/ImmunityBio, Inc.'s PD-L1 t-haNK product under research and development by or on behalf of NantCell as of the date of the Order.

(c)      The words "royalty-free and fully paid-up" are added between the words "exclusive" and "license" in the first line of Section 1.1(a) of the NantCell ELA, between the words "non-exclusive" and "license" in the first line of Section 1.1(b) of the NantCell ELA, and between the words "exclusive" and "license" in section 1.1(d) of the NantCell ELA.

(d)      The phrase "(it being understood that NantCell shall not have access to the G-MAB Library except as set forth in Section 4.1)" is removed from Section 1.1(b) and the last sentence of Section 1.1(b) is hereby deleted.

(e)      The last sentence of Section 1.1(d) is hereby deleted.

(f)      Section 2.1 (Royalties) of the NantCell is hereby deleted in its entirety and replaced with the following:

> 2.1      "Royalty Term" shall mean, with respect to a country and a Licensed Product, the period commencing upon the First Commercial Sale of such Licensed Product in such country and ending on the later of (a) the date on which the exploitation of such Licensed Product is no longer Covered by a Valid Claim of a Licensed Patent in such country and (b) the tenth (10th) anniversary of the First Commercial Stale of the Licensed Product in such country.

(g)      Sections 2.2 (Royalty Rate Increase) thru 2.8 (Record Keeping), 3.2 (Diligence), and 3.3 (Reports) of the NantCell are hereby deleted in their entireties.

(h)      Section 4.1 (Research by Sorrento) of the NantCell ELA is hereby deleted in its entirety and replaced with the following:

> 4.1      (Reserved).

(i)      Section 4.2 (License; Royalties) of the NantCell ELA is hereby deleted in its entirety and replaced with the following:

> 4.2      (Reserved).

(j)      The phrase "In addition to the royalties payable hereunder," is hereby deleted from the beginning of Article 5.

(k)      Section 12.6(c) of the NantCell ELA is hereby deleted in its entirety and replaced with the following:

(c)      (Reserved).

(l)      Section 13.1 (CAR-TNK Products) of the NantCell ELA is hereby deleted in its entirety and replaced with the following:

13.1      (Reserved).

(m)      The sentence "This Exhibit shall be updated from time to time as necessary to reflect additional Patents Rights Controlled by Sorrento after the Effective Date" is hereby deleted from Exhibit C.

(n)      The definition for Order is added to Exhibit B in alphabetical order.

(o)      The amendments to the NantCell ELA are effective as of date of the Order.  All other terms and conditions of the NantCell ELA remain in full force and effect only with respect to the PD-L1 antibody RSBC6, except as reflected in the Award.  For the avoidance of doubt, and without limiting the generality of the foregoing, Sorrento and the Sorrento Related Parties shall have no further obligations under Section 6 of the NantCell ELA except for those Licensed Patents and Joint Patents that have a Valid Claim Covering a Licensed Product.

5.      Clarification. For the avoidance of doubt, the Nant Related Parties will have no obligation to pay any royalty, license fee, charge, or other amount to any Sorrento Related Party in connection with the research, development, making, having made, using, having used, selling, offering for sale, importing, exporting, or other exploitation, that has occurred prior to the date of this Agreement, is currently occurring, or that will occur at any time in the future, of any Licensed Product.

6.      Consult with an Attorney.  All Parties acknowledge and agree that: (a) they have been afforded a reasonable opportunity and amount of time to consult with their respective counsel prior to executing this Agreement; and (b) they have, in fact, consulted with their counsel prior to signing this Agreement.

7.      No Admission of Liability.  Each Party, on behalf of itself and each of its Related Parties, acknowledges and agrees that: (a) no promise, agreement, or inducement not expressed in this Agreement has been made between them other than the terms and conditions contained in the Award and Order; and (b) this Agreement is not executed in reliance upon any statement or representation made by any of the other Party's Related Parties, nor any representative of any of the foregoing, other than the statements contained in this Agreement, the Award and the Order.

8.      Additional Representations and Warranties.  Each Party (the "Representing Party") represents and warrants to the other Party that: (a) the Representing Party has all the necessary powers, authority, authorization and approval to enter into this Agreement on behalf of itself and all of its Related Parties and to take the actions contemplated to be taken by it pursuant to this Agreement; (b) the Representing Party has received no notice and has no knowledge of any judgment, restraining order, consent decree, or judicial or administrative prohibition binding upon

4

it that would be violated by its entry into this Agreement or by its performance of the actions contemplated to be taken pursuant to this Agreement; (c) in connection with the execution, delivery, and performance of this Agreement, the Representing Party requires no authorization, approval, or consent of any governmental authority or other third party other than such as already has been obtained; (d) this Agreement has been duly executed and delivered by an authorized signatory on behalf of the Representing Party; (e) this Agreement is valid, binding and enforceable against the Representing Party and each of its Related Parties in accordance with its terms; and (f) the Representing Party has not, and no Related Party of the Representing Party has, assigned or transferred, or purported to assign or transfer, to any person or entity, any claims that the Representing Party or any of its Related Parties has or may have that are subject to this Agreement.

9.      Governing Law.  This Agreement shall be governed and construed in accordance with the internal laws of the State of California, including its statutes of limitation, without regard to any otherwise applicable principles of conflicts of laws or choice of law rules that would result in the application of the substantive or procedural laws or rule of any other jurisdiction.  All disputes and controversies arising out of or in connection with this Agreement shall be resolved exclusively by the United States Bankruptcy Court for the Southern District of Texas; provided, however, that if the United States Bankruptcy Court for the Southern District of Texas shall cease to exercise jurisdiction pursuant to the Settlement Order, all disputes and controversies arising out of or in connection with this Agreement shall be resolved exclusively by the state and federal courts located in the State of California.  Each Party hereto agrees to submit to the jurisdiction of said courts and agrees that venue shall lie exclusively with such courts.

10.      Joint Preparation.  This Agreement shall be deemed to have been prepared jointly by the Parties hereto jointly participating in its negotiation and preparation.  In the event that any uncertainty or ambiguity or question of intent or interpretation arises, this Agreement shall be construed and interpreted as if jointly drafted by the Parties in accordance with the rules and interpretation of an "arm's length" agreement.

11.      Construction.  All recitals are incorporated herein as material provisions of this Agreement. No provision of this Agreement shall be interpreted or construed against any Party because that Party or its legal representative drafted that provision.  The captions and headings of the Sections of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement.  Unless the context of this Agreement clearly requires otherwise: (a) references to the plural include the singular, the singular the plural, and the part the whole, (b) "or" has the inclusive meaning frequently identified with the phrase "and/or," (c) "including" has the inclusive meaning frequently identified with the phrase "including but not limited to" or "including without limitation," and (d) references to "hereunder," "herein" or "hereof" relate to this Agreement as a whole.  Any reference herein to any statute, rule or regulation shall be deemed to include such statute, rule or regulation as it may be modified, varied, amended or supplemented from time to time.  Any reference herein to any person shall be deemed to include the heirs, personal representatives, successors and permitted assigns of such person.

12.      Modification.  This Agreement shall not be varied, altered, modified, canceled, changed, or in any way amended, nor any provision hereof waived, except by agreement of the Parties in a written instrument executed by the Parties hereto or their legal representatives.

13.     <u>Specific Performance</u>.  Each Party acknowledges that the breach of any provision of this Agreement will cause irreparable harm to the other Party for which any remedies at law would be inadequate.  Therefore, in the event of a material breach or threatened material breach of any such provision by any Party, the other Party, in addition to any other remedy under this Agreement, in equity or in law, shall be entitled to injunctive or other equitable relief in order to enforce or prevent any such violations without the need to demonstrate any special damages or to provide any bond or other security in connection therewith.

14.     <u>Attorneys' Fees</u>.  Each Party shall pay the fees and expenses of its own attorneys arising in connection with the resolution of the claims released hereby and the negotiation and preparation of this Agreement.

15.     <u>Severability</u>.   In the event that any provision or portion of this Agreement shall be determined to be invalid or unenforceable for any reason, the remaining provisions of this Agreement shall be unaffected thereby and shall remain in full force and effect.

16.     <u>Counterparts</u>.  This Agreement may be executed, including by facsimile and/or electronic signatures, in two (2) or more counterparts, each of which shall be deemed to be an original, but all of which together will constitute one and the same Agreement.

*[Signature Page To Follow]*

**SORRENTO THERAPEUTICS, INC.**

By:_____

Name: _____

Title: _____

Date: _____

Address:  Sorrento Therapeutics, Inc.
          4955 Directors Pl.
          San Diego, California 92121
          Attn: Chief Executive Officer

**NANTCELL, INC.**

By:_____

Name: _____

Title: _____

Date: _____

Address:  NantCell, Inc.
          9920 Jefferson Boulevard
          Culver City, California 90232
          Attn: General Counsel

**IMMUNOTHERAPY NANTIBODY, LLC**

By:_____

Name: _____

Title: _____

Date: _____

Address:  Immunotherapy NANTibody
          LLC
          c/o NantCell, Inc.
          9920 Jefferson Boulevard
          Culver City, California 90232
          Attn: General Counsel