## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SORRENTO THERAPEUTICS, INC., *et al.*[1] | ) | Case No. 23-90085 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## MODIFIED JOINT PLAN OF LIQUIDATION OF
## SORRENTO THERAPEUTICS, INC. AND SCINTILLA
## PHARMACEUTICALS, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**JACKSON WALKER LLP**
Matthew D. Cavenaugh
Kristhy M. Peguero
Genevieve M. Graham
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200

**LATHAM & WATKINS LLP**
Caroline A. Reckler
Ebba Gebisa
Jonathan C. Gordon
330 North Wabash Avenue,  Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700

– and –

Jeffrey E. Bjork
Kimberly A. Posin
Isaac J. Ashworth
335 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234

Dated: November 16, 2023

---

[1] The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842) and Scintilla Pharmaceuticals, Inc. (7956).  The Debtors' service address is: 4955 Directors Place, San Diego, CA 92121.

# TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,  COMPUTATION OF TIME AND GOVERNING LAW ............................................................................................................1

    A.     Defined Terms ..................................................................................................................1
    B.     Rules of Interpretation ....................................................................................................14
    C.     Computation of Time ......................................................................................................15
    D.     Governing Law ...............................................................................................................15
    E.     Reference to Monetary Figures .......................................................................................15
    F.     Reference to the Debtors or the Liquidating Debtors ......................................................15

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS,  PRIORITY TAX CLAIMS AND UNITED STATES TRUSTEE STATUTORY FEES ...........................................................16

    A.     Administrative Claims .....................................................................................................16
    B.     DIP Facility Claims ........................................................................................................17
    C.     Priority Tax Claims .........................................................................................................17
    D.     Statutory Fees .................................................................................................................18

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS .....................18

    A.     Introduction ....................................................................................................................18
    B.     Summary of Classification ..............................................................................................19
    C.     Treatment of Claims and Equity Interests .......................................................................19
    D.     Special Provision Governing Unimpaired Claims ...........................................................22

ARTICLE IV. ACCEPTANCE REQUIREMENTS ..............................................................................22

    A.     Acceptance or Rejection of this Plan ...............................................................................23
    B.     Confirmation of This Plan Pursuant to Sections 1129(a)(10) of the Bankruptcy Code ......23
    C.     Subordination .................................................................................................................23
    D.     Elimination of Vacant Classes ........................................................................................24
    E.     Intercompany Claims ......................................................................................................24

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ..........................................................24

    A.     Sources of Consideration for Plan Distributions .............................................................24
    B.     Creation of the Liquidation Trust ...................................................................................24
    C.     Transfer and Vesting of Assets to Liquidation Trust .......................................................25
    D.     Preservation of Confidences and Attorney-Client Privilege ............................................25
    E.     Liquidation Trustee ........................................................................................................25
    F.     Liquidation Trustee's Authority and Duties ....................................................................26
    G.     Inter-Debtor Transfers of Funds .....................................................................................27
    H.     Cancellation of Securities and Agreements .....................................................................27
    I.     Wind-Down ....................................................................................................................28
    J.     Plan Administration ........................................................................................................28
    K.     Corporate Action ............................................................................................................28
    L.     Effectuating Documents; Further Transactions ...............................................................28
    M.    Exemption from Certain Taxes and Fees .........................................................................29
    N.     Professional Fee Claims Reserve ....................................................................................29
    O.     Closing the Chapter 11 Cases .........................................................................................30

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................30

    A.      Assumption or Rejection of Executory Contracts and Unexpired Leases ........................................30
    B.      Assumption of D&O Liability Insurance Policies & Fiduciary Liability Insurance Policies ..........31
    C.      Payments Related to Assumption of Executory Contracts and Unexpired Leases .........................32
    D.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases ..........32
    E.      Rejection Damages Claims ............................................................................................................32
    F.      Contracts and Leases Entered Into After the Petition Date...........................................................33
    G.      Modifications, Amendments, Supplements, Restatements or Other Agreements ..........................33
    H.      Reservation of Rights ....................................................................................................................33
    I.      Nonoccurrence of Effective Date ..................................................................................................34

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS............................................................34

    A.      Timing and Calculation of Amounts To Be Distributed; Entitlement to Distributions .................34
    B.      Disbursing Agent...........................................................................................................................34
    C.      Rights and Powers of Disbursing Agent .......................................................................................35
    D.      Distributions on Account of Claims or Equity Interests Allowed After the Effective Date ...........35
    E.      Minimum Distributions .................................................................................................................36
    F.      Delivery of Distributions and Undeliverable or Unclaimed Distributions ....................................36
    G.      Compliance with Tax Requirements/Allocations ..........................................................................37
    H.      Surrender of Canceled Instruments or Securities ..........................................................................37
    I.      Claims Paid or Payable by Third Parties.......................................................................................37

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED AND
    DISPUTED CLAIMS AND DISPUTED EQUITY INTERESTS .......................................................38

    A.      Allowance of Claims and Equity Interests ....................................................................................38
    B.      Disallowance of Certain Claims....................................................................................................38
    C.      Prosecution of Objections to Claims and Equity Interests .............................................................39
    D.      Claims Estimation .........................................................................................................................39
    E.      No Distribution Pending Allowance ..............................................................................................39
    F.      Distributions After Allowance ......................................................................................................40
    G.      No Interest .....................................................................................................................................40
    H.      Adjustments to Claims Without Objection ....................................................................................40
    I.      Time to File Objections to Claims .................................................................................................40

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE...................40

    A.      Conditions Precedent to Confirmation ..........................................................................................40
    B.      Conditions Precedent to the Effective Date ...................................................................................41
    C.      Waiver of Conditions ....................................................................................................................41
    D.      Effect of Nonoccurrence of Conditions ........................................................................................41

ARTICLE X. SETTLEMENT, EXCULPATION, INJUNCTION AND RELATED PROVISIONS .......................42

    A.      Compromise and Settlement of Claims, Equity Interests and Controversies .................................42
    B.      Exculpation....................................................................................................................................42
    C.      Injunction .....................................................................................................................................42
    D.      Setoffs and Recoupment against Holders .....................................................................................43
    E.      Setoffs and Recoupment by Holders .............................................................................................44
    F.      Release of Liens ............................................................................................................................44

ARTICLE XI. BINDING NATURE OF PLAN ..................................................................................44

ARTICLE XII. RETENTION OF JURISDICTION.........................................................................45

ARTICLE XIII. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN..................47

    A.    Modifications and Amendments .....................................................................47
    B.    Effect of Confirmation on Modifications ......................................................47
    C.    Revocation or Withdrawal of the Plan ..........................................................47
    D.    Substantial Consummation of the Plan ..........................................................48

ARTICLE XIV. MISCELLANEOUS PROVISIONS ........................................................................48

    A.    Successors and Assigns...................................................................................48
    B.    Reservation of Rights......................................................................................48
    C.    Further Assurances..........................................................................................48
    D.    Service of Documents .....................................................................................49
    E.    Nonseverability of Plan Provisions ...............................................................50
    F.    Return of Security Deposits ...........................................................................50
    G.    Term of Injunctions or Stays .........................................................................50
    H.    Entire Agreement ...........................................................................................50
    I.    Exhibits...........................................................................................................50
    J.    Votes Solicited in Good Faith ........................................................................51
    K.    Immediate Binding Effect ..............................................................................51
    L.    Conflicts .........................................................................................................51
    M.    Dissolution of the Committees .......................................................................51
    N.    Additional Documents ....................................................................................52
    O.    Tax Reporting and Compliance ......................................................................52

## INTRODUCTION

Sorrento Therapeutics, Inc. and Scintilla Pharmaceuticals, Inc., as debtors in the above-captioned Chapter 11 Cases, propose this joint plan of liquidation under chapter 11 of the Bankruptcy Code.

Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I.A of the Plan.

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Equity Interests pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors.

Reference is made to the Disclosure Statement for a discussion of (among other things) the Debtors' history and businesses, as well as a summary of the Plan and certain related matters, including distributions to be made under the Plan.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

*A.    Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*510(b) Equity Claim*" means any Claim subordinated pursuant to section 510(b) of the Bankruptcy Code.

2.    "*Accrued Professional Compensation*" means, at any given date, all accrued and/or contingent fees and reimbursable expenses (including, without limitation, success fees in accordance with the applicable engagement letter with the Debtors) for legal, financial advisory, accounting and other professional services rendered on or before the Effective Date by any Professional in the Chapter 11 Cases that are awardable and allowable under section 328, 330(a) or 331 of the Bankruptcy Code, or that are awardable and allowable under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by a Final Order, all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been Filed for any such amount). To the extent that the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

3.      "*Administrative Claim*" means a Claim (other than a Fee Claim) for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses pursuant to section 328, 330(a) or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and through the Effective Date; (c) all fees and charges assessed against the Estates under section 1930, chapter 123, of the Judicial Code; (d) compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code; (e) the DIP Facility Claims; and (f) the Cure Claims.

4.      "*Administrative Claims Bar Date*" means (a) for Administrative Claims arising between the Petition Date and the Confirmation Date, the date that is the 30th day after the Confirmation Date, (b) for Administrative Claims arising between the Confirmation Date and the Effective Date, the date that is the 30th day after the Effective Date, or (c) such other date as is ordered by the Bankruptcy Court.

5.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

6.      "*Allowed*" means, with respect to any Claim or Equity Interest (or any portion thereof):  (a) any Claim or Equity Interest (i) as to which no objection to allowance has been interposed (either in the Bankruptcy Court or in the ordinary course of business) on or before any applicable period of limitation under applicable law or such other applicable period of limitation fixed by the Bankruptcy Court (including but not limited to the Claims Objection Deadline) and that is evidenced by a Proof of Claim or Interest, as applicable, timely Filed by the applicable Bar Date or that is not required to be evidenced by a Filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, or a Final Order, and no request for estimation or other challenge, including pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed, or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder, either before or after the Effective Date; (b) any Claim or Equity Interest that is scheduled by the Debtors as neither disputed, contingent, nor unliquidated, and as for which no Proof of Claim or Interest, as applicable, has been timely Filed in an unliquidated or different amount; (c) any Claim or Equity Interest that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors, the Liquidation Trustee, or the Liquidating Debtors, as applicable; (d) any Claim or Equity Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of the Bankruptcy Court or a court of competent jurisdiction other than the Bankruptcy Court; or (e) any Claim or Equity Interest expressly deemed Allowed by this Plan.  "Allow," "Allows," and "Allowing" shall have correlative meanings.

7.      "*Avoidance Actions*" means any and all Causes of Action which any of the Debtors, the Estates, or other appropriate party in interest has asserted or may assert under section 502, 510, 542, 544, 545, or 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

8.      "*Ballots*" means the ballots accompanying the Disclosure Statement upon which Holders of Claims in the Voting Class shall, among other things, indicate their acceptance or rejection of this Plan in accordance with this Plan and the procedures governing the solicitation process, and which Ballots must be actually received by the Solicitation Agent on or before the Voting Deadline as set forth in the Ballot.

9.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Cases.

10.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under section 157 of title 28 of the United States Code and/or the Order of the United States District Court for the Southern District of Texas pursuant to section 157(a) of the Judicial Code, the United States District Court for the Southern District of Texas.

11.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated by the United States Supreme Court under 28 U.S.C. § 2075 and the general, local and chambers rules of the Bankruptcy Court, as each may be amended from time to time.

12.     "*Bar Date*" means the applicable date established by the Bankruptcy Court by which respective Proofs of Claims and Interests must be filed.

13.     "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

14.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

15.     "*Causes of Action*" means any action, cause of action (including Avoidance Action), claim, interest, liability, obligation, right, suit, debt, dues, sum of money, damages, reckoning, right to payment and claims, controversy, guaranty, account, covenant, promise, judgment, remedy, demand, setoff, power, privilege, license, defense, recoupment, cross claim, counterclaim, third-party claim, reimbursement claim, indemnity claim, contribution claim or any other claim, whether known or unknown, contingent or non-contingent, matured or unmatured, disputed or undisputed, suspected or unsuspected, liquidated or unliquidated, secured or unsecured, foreseen or unforeseen, direct, derivative, or indirect, choate or inchoate, existing or hereafter arising, in contract or in tort, in law, in equity or pursuant to any other theory of law, whether arising before, on or after the Petition Date and also includes, without limitation: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any Avoidance Action or state law fraudulent transfer claim.

16.     "*Certificate*" means any instrument evidencing a Claim or Equity Interest.

3

17.     "*Change of Control Provision*" means any provision in any agreement, contract, or other document of the Debtors, including any Executory Contract or Unexpired Lease (including, without limitation, any direct or indirect "change in control", "change of control" or "anti-assignment" provision, or provision with words of similar import) that, directly or indirectly, (a) prohibits, restricts or conditions (or purports to prohibit, restrict or condition) (i) any Debtor's or any Liquidating Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or Unexpired Lease or (ii) the Confirmation or Consummation of this Plan or (b) modifies (or permits the termination or modification of) such Executory Contract or Unexpired Lease or the Debtors' rights or obligations thereunder, including through an increase, acceleration or other alteration of any obligations or liabilities or the creation or imposition of any Lien, as a result of, or is breached by (i) the commencement of these Chapter 11 Cases or the insolvency or financial condition of any Debtor at any time before the closing of its respective Chapter 11 Case, (ii) any Debtor's or any Liquidating Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or Unexpired Lease or (iii) the Confirmation or Consummation of this Plan, including any conversion of the form of entity of any of the Debtors or Liquidating Debtors, any change of control or ownership interest composition of the Debtors or Liquidating Debtors, or any other transactions described in Article V hereof.

18.     "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the chapter 11 case pending for that Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

19.     "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against a Debtor.

20.     "*Claims Bar Date Order*" means that *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Notice of Bar Dates* [Docket No. 856].

21.     "*Claims Objection Deadline*" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a)(i) with respect to Administrative Claims, 150 days after the Administrative Claims Bar Date or (ii) with respect to all other Claims, 180 days after the Effective Date, and (b) such other deadline as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims.

22.     "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

23.     "*Combined Hearing*" means the hearing held by the Bankruptcy Court pursuant to (i) section 1128 of the Bankruptcy Code to consider Confirmation of this Plan and (ii) section 1125 of the Bankruptcy Code to consider approval of the Disclosure Statement on a final basis, as such hearing may be adjourned or continued from time to time.

24.     "*Combined Hearing Notice*" means a notice to parties in interest of the date and time of the Combined Hearing, the Combined Objection Deadline, and the Voting Deadline.

25.     "*Combined Objection Deadline*" means the deadline by which all objections to final approval of the Disclosure Statement and Confirmation of the Plan.

26.     "*Committee*" means any statutory committee (and all subcommittees thereof) appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as such committee may be reconstituted from time to time, including the Equity Security Holders' Committee and the Unsecured Creditors' Committee.

27.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

28.     "*Confirmation Date*" means the date upon which Confirmation occurs.

29.     "*Confirmation Order*" means the order or orders of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

30.     "*Consummation*" means the occurrence of the Effective Date.

31.     "*Covered Claim*" means any Claim or Cause of Action related to any act or omission on or after the Petition Date and prior to the Effective Date in connection with, relating to or arising out of the Debtors' in- or out-of-court restructuring efforts, the Debtors' Chapter 11 Cases, the DIP Facilities, the Mediation, the Scilex Stock Sale and any other section 363 sales by the Debtors, the formulation, preparation, dissemination, negotiation, solicitation or filing of the Disclosure Statement or this Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the offering, issuance, sale, and/or distribution of property under this Plan or any other agreement (including any securities, to the extent applicable); provided, however, that Covered Claims shall not include: (i) any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, criminal conduct or fraud, and/or (ii) the rights of any Entity to enforce this Plan and the contracts, instruments, releases, and other agreements or documents delivered under or in connection with this Plan or assumed pursuant to this Plan or assumed pursuant to Final Order of the Bankruptcy Court.

32.     "*Cure Claim*" means the Claim of any counterparty to any Executory Contract or Unexpired Lease, based upon a monetary default, if any, by any Debtor on such Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to section 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

33.     "*D&O Liability Insurance Policies*" means the insurance policies and all agreements, documents or instruments related thereto (including runoff endorsements extending coverage, including costs and expenses (including reasonable and necessary attorneys' fees and experts' fees) for current or former directors, managers and officers of the Debtors or the

Liquidating Debtors, including sums that any party becomes legally obligated to pay as a result of judgments, fines, losses, claims, damages, settlements, or liabilities arising from activities occurring prior to the Effective Date) for directors', managers' and officers' liability maintained by the Debtors or the Liquidating Debtors on or before the Effective Date.

34. "*Debtor*" means each of Sorrento Therapeutics, Inc. and Scintilla Pharmaceuticals, Inc.

35. "*DIP Facilities*" means the Replacement DIP Facility, the Senior DIP Facility, and the Junior DIP Facility.

36. "*DIP Facility Claims*" means the Replacement DIP Facility Claims, the Senior DIP Facility Claims, and the Junior DIP Facility Claims.

37. "*DIP Facility Credit Agreements*" means the Replacement DIP Facility Credit Agreement, the Senior DIP Facility Credit Agreement, and the Junior DIP Facility Credit Agreement.

38. "*DIP Facility Lenders*" means the Replacement DIP Facility Lender, the Senior DIP Facility Lender, and the Junior DIP Facility Lender.

39. "*DIP Facility Loan Documents*" means the Replacement DIP Facility Loan Documents, the Senior DIP Facility Loan Documents, and the Junior DIP Facility Loan Documents.

40. "*DIP Orders*" means the Replacement DIP Order, the Senior DIP Orders, and the Junior DIP Orders.

41. "*Disbursing Agent*" means, as applicable, the Liquidating Debtors, the Solicitation Agent, the Liquidation Trustee, or the Entity or Entities chosen by the Liquidating Debtors in their sole discretion to make or facilitate distributions pursuant to this Plan; provided, however, that the Solicitation Agent will only coordinate distributions as directed by the Liquidating Debtors.

42. "*Disclosure Statement*" means the disclosure statement to be filed with respect to this Plan, as the same may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto.

43. "*Disputed*" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest that is not yet Allowed, but that has not yet been disallowed pursuant to this Plan, the Bankruptcy Code, or a Final Order.

44. "*Distribution Record Date*" means the date for determining which Holders of Claims and Equity Interests are eligible to receive initial distributions under the Plan, which date shall be the Confirmation Date.

45. "*DTC*" means The Depository Trust Company.

46.     "*Effective Date*" means the date that is the first Business Day on which all of the conditions specified in Article IX.B hereof have been satisfied or waived pursuant to Article IX.C hereof.

47.     "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

48.     "*Equity Interest*" means: (a) any Equity Security in any Debtor, including, without limitation, all issued, unissued, authorized or outstanding shares of stock and other ownership interests, together with (i) any options, warrants, or contractual rights to purchase or acquire any such Equity Securities at any time with respect to any Debtor, and all rights arising with respect thereto and (ii) the rights of any Entity to purchase or demand the issuance of any of the foregoing in any of the Debtors, and shall include: (1) conversion, exchange, voting, participation, and dividend rights; (2) liquidation preferences; (3) options, warrants, and call and put rights; and (4) share-appreciation rights; and (b) any 510(b) Equity Claim, in each case, as in existence immediately prior to the Effective Date.

49.     "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

50.     "*Equity Security Holders' Committee*" means the statutory committee of Equity Security Holders appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the United States Trustee on April 10, 2023 (as subsequently reconstituted from time to time, including on April 14, 2023) [Docket No. 448].

51.     "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

52.     "*Exculpated Party*" means each of: (a) the Debtors, (b) the Committees, and (c) the Committees' members, in their capacity as such.

53.     "*Exculpation*" means the exculpation provision set forth in Article X.B hereof.

54.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code.

55.     "*Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court for compensation for services rendered or reimbursement of expenses incurred during the Chapter 11 Cases, through and including the Effective Date, under sections 328, 330, 331, 503(b)(2), 503(b)(3), 502(b)(4), or 503(b)(5) of the Bankruptcy Code.

56.     "*File,*" "*Filed*" or "*Filing*" means file, filed or filing in the Chapter 11 Cases with the Bankruptcy Court or other court of competent jurisdiction.

57.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari

or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied, resulted in no stay pending appeal or modification of such order or has otherwise been dismissed with prejudice, provided that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

58.     "*General Administrative Claim*" means any Administrative Claim, other than (i) DIP Facility Claims, (ii) Cure Claims, (iii) Fee Claims, or (iv) a Claim for fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

59.     "*General Unsecured Claim*" means any Claim against any of the Debtors that is not an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, a Fee Claim, an Other Secured Claim, an Intercompany Claim, a DIP Facility Claim, or a 510(b) Equity Claim.

60.     "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

61.     "*Holder*" means any Person or Entity holding a Claim or an Equity Interest.

62.     "*Impaired*" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

63.     "*Impaired Class*" means a Class that is Impaired.

64.     "*Intercompany Claim*" means any Claim held by a Debtor.

65.     "*Junior DIP Facility*" means that certain superpriority secured debtor-in-possession financing facility in an aggregate principal amount of $20,000,000 provided by the Junior DIP Facility Lender on the terms of, and subject to the conditions set forth in, the Junior DIP Facility Credit Agreement.

66.     "*Junior DIP Facility Claims*" means any and all Claims on account of, arising under, derived from, or based upon the Junior DIP Facility Credit Agreement or any other Junior DIP Facility Loan Documents.

67.     "*Junior DIP Facility Credit Agreement*" means that certain Junior Secured, Super-priority Debtor-In-Possession Loan and Security Agreement, dated as of July 28, 2023, entered into by and among the Debtors, as Borrowers, and the Junior DIP Facility Lender, as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof.

68.     "*Junior DIP Facility Lender*" means Scilex Holding Company and, if applicable, any successor entity.

69.     "*Junior DIP Facility Loan Documents*" means the Junior DIP Facility Credit Agreement, the Junior DIP Orders and all other related agreements and documents executed in connection with the Junior DIP Facility, in each case, as amended, restated, supplemented, or otherwise modified from time to time.

70.     "*Junior DIP Orders*" means the Junior Interim DIP Order and the Junior Final DIP Order, as applicable.

71.     "*Junior Final DIP Order*" means the order of the Bankruptcy Court authorizing and approving the Junior DIP Facility and the use of cash collateral on a final basis [Docket No. 1112].

72.     "*Junior Interim DIP Order*" means the order of the Bankruptcy Court authorizing and approving the Junior DIP Facility and the use of cash collateral on an interim basis [Docket No. 997].

73.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

74.     "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

75.     "*Liquidating Debtors*" means the Debtors after the Effective Date.

76.     "*Liquidation Trust*" means the trust that is to be established in accordance with the Plan, the Confirmation Order, and the Liquidation Trust Agreement.

77.     "*Liquidation Trust Agreement*" means the document creating and governing the Liquidation Trust (including any ancillary documents expressly referenced and incorporated therein), which shall, to the extent applicable, be included in the Plan Supplement.

78.     "*Liquidation Trust Assets*" means any and all assets of the Liquidation Trust.

79.     "*Liquidation Trust Causes of Action*" means all Causes of Action held by the Estates, each of which shall be transferred from the Debtors to the Liquidation Trust, with further details to be set forth in the Plan Supplement (to the extent applicable).

80.     "*Liquidation Trust Recovery*" means the distribution available to Holders of Allowed Claims from the Liquidation Trust Assets, all as set forth in and pursuant to the Liquidation Trust Agreement and the terms herein; *provided* that after Allowed Claims have been paid in full in Cash, any remaining Liquidation Trust Assets shall be distributed to Holders of Allowed Equity Interests.

81.     "*Liquidation Trustee*" means the trustee of the Liquidation Trust.

82.     "*Mediation*" means the mediation conducted in these Chapter 11 Cases by the Honorable Marvin Isgur of the United States Bankruptcy Court for the Southern District of Texas regarding the Chapter 11 Cases generally, including but not limited to various litigation matters between the Debtors and the Nant Parties.

83.      "*Mediation Settlement*" means the settlement set forth in the Mediation Settlement Order.

84.      "*Mediation Settlement Order*" means the *Order Approving and Implementing Mediation Settlement and Granting Related Relief* [Docket No. 1205], including any exhibits, schedules and supplements thereto.

85.      "*Nant Parties*" means Immunotherapy NANTibody, LLC, NantCell, Inc., NantPharma, LLC, and their Related Parties (as defined in the Mediation Settlement Order).

86.      "*Non-Voting Classes*" means, collectively, all Classes other than Class 3.

87.      "*Omnibus Objections*" means objections to more than one claim, including objections on the grounds set forth in Bankruptcy Rule 3007(d) or any other grounds, which omnibus objections shall be permitted and approved upon entry of the Confirmation Order.

88.      "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim, (b) a DIP Facility Claim, or (c) a Priority Tax Claim.

89.      "*Other Secured Claim*" means any Secured Claim that is not a DIP Facility Claim or Priority Tax Claim.

90.      "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

91.      "*Petition Date*" means February 13, 2023.

92.      "*Plan*" means this *Modified Joint Plan of Liquidation of Sorrento Therapeutics, Inc. and Scintilla Pharmaceuticals, Inc. Under Chapter 11 of the Bankruptcy Code*, dated November 16, 2023, and all exhibits, supplements (including the Plan Supplement), appendices, and schedules hereto (each of which is incorporated herein by reference and made part of the Plan as if set forth herein), in each case, as may be amended, supplemented or otherwise modified from time to time in accordance with the terms hereof.

93.      "*Plan Administration Process*" means the process of objecting to or Allowing Claims on or after the Effective Date and undertaking any other obligations of the Liquidating Debtors under the Plan, all in accordance with the Liquidation Trust Agreement.

94.      "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to this Plan to be Filed on notice to parties-in-interest, including, but not limited to, the following (as applicable): (a) the Liquidation Trust Agreement; (b) the Schedules of assumed or rejected Executory Contracts and Unexpired Leases; (c) the Schedule of D&O Liability Insurance Policies; and (d) the Schedule of Liquidation Trust Causes of Action.

95.      "*Plan Supplement Filing Date*" means the date that is the earlier of at least seven days prior to (i) the Voting Deadline and (ii) the Combined Objection Deadline.

96.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

97.    "*Pro Rata*" means the proportion that an Allowed Claim or Allowed Equity Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Equity Interests in that Class.

98.    "*Professional*" means a Person or an Entity:  (a) retained pursuant to a Final Order in accordance with section 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

99.    "*Professional Fee Claims Reserve*" means a Cash reserve established and maintained by the Debtors or the Liquidating Debtors, as applicable, to pay in full in Cash Accrued Professional Compensation to the extent Allowed.

100.    "*Proof of Claim*" means a proof of Claim Filed against either Debtor in the Chapter 11 Cases.

101.    "*Protected Party*" means each of: (a) the Debtors, (b) the Committees, (c) the Committees' members, in their capacity as such, (d) Mohsin Meghji, in his capacity as Chief Restructuring Officer of the Debtors, and (e) the Related Persons of each of the foregoing.

102.    "*Reinstated*" means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim or Equity Interest entitles the Holder of such Claim or Equity Interest so as to leave such Claim or Equity Interest Unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Equity Interest to demand or receive accelerated payment of such Claim or Equity Interest after the occurrence of a default: (i) curing any such default that occurred before, on or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim or Equity Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Equity Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Equity Interest arises from a failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(B)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim or Equity Interest (other than the Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim or Equity Interest entitles the Holder.

103.    "*Related Persons*" means, with respect to a Person, each of such Person's financial advisors, attorneys, accountants, investment bankers, consultants, representatives, other professionals, and employees (other than current and former directors, officers (other than the

Debtors' Chief Restructuring Officer), managers, managing members, principals, partners, members, and observers), each in their capacity as such.

104. "*Remaining Case*" means the Chapter 11 Case of Sorrento Therapeutics, Inc.

105. "*Replacement DIP Facility*" means that certain superpriority secured debtor-in-possession financing facility in an aggregate principal amount of $100,000,000 provided by the Replacement DIP Facility Lender on the terms of, and subject to the conditions set forth in, the Replacement DIP Facility Credit Agreement.

106. "*Replacement DIP Facility Claims*" means any and all Claims on account of, arising under, derived from, or based upon the Replacement DIP Facility Credit Agreement or any other Replacement DIP Facility Loan Documents.

107. "*Replacement DIP Facility Credit Agreement*" means that certain Senior Secured, Super-priority Debtor-In-Possession Loan and Security Agreement, dated as of August 9, 2023, entered into by and among the Debtors, as Borrowers, and the Replacement DIP Facility Lender, as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof.

108. "*Replacement DIP Facility Lender*" means Oramed Pharmaceuticals, Inc. and, if applicable, any successor entity.

109. "*Replacement DIP Facility Loan Documents*" means the Replacement DIP Facility Credit Agreement, the Replacement DIP Order, and all other related agreements and documents executed in connection with the Replacement DIP Facility, in each case, as amended, restated, supplemented, or otherwise modified from time to time.

110. "*Replacement DIP Order*" means the order of the Bankruptcy Court authorizing and approving the Replacement DIP Facility and the use of cash collateral on a final basis [Docket No. 1184].

111. "*Scilex Stock Sale*" means the sale approved by the Bankruptcy Court in the Scilex Stock Sale Order.

112. "*Scilex Stock Sale Order*" means the *Order (I) Approving Sale of Scilex Stock to Scilex Holding Company Free and Clear of All Liens, Claims, Interests, and Encumbrances, (II) Conditionally Vacating the Oramed Sale Order, and (III) Granting Related Relief* [Docket No. 1316], entered by the Bankruptcy Court on September 19, 2023.

113. "*Scintilla*" means Scintilla Pharmaceuticals, Inc.

114. "*Scintilla Equity Interests*" means the Equity Interests in Scintilla immediately prior to the Effective Date.

115. "*Secured*" means, when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Final Order, or that is subject to setoff pursuant to section 553 of

the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code; or (b) otherwise Allowed as a Secured Claim.

116.    "*Secured Claim*" means a Claim that is Secured.

117.    "*Senior DIP Facility*" means that certain superpriority secured debtor-in-possession financing facility in an aggregate principal amount of $75,000,000 provided by the Senior DIP Facility Lender on the terms of, and subject to the conditions set forth in, the Senior DIP Facility Credit Agreement.

118.    "*Senior DIP Facility Claims*" means any and all Claims on account of, arising under, derived from, or based upon the Senior DIP Facility Credit Agreement or any other Senior DIP Facility Loan Documents.

119.    "*Senior DIP Facility Credit Agreement*" means that certain Senior Secured, Super-priority Debtor-In-Possession Loan and Security Agreement, dated as of March 30, 2023, entered into by and among the Debtors, as Borrowers, and the Senior DIP Facility Lender, as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with the terms thereof.

120.    "*Senior DIP Facility Lender*" means JMB Capital Partners Lending, LLC and, if applicable, any successor entity.

121.    "*Senior DIP Facility Loan Documents*" means the Senior DIP Facility Credit Agreement, the Senior DIP Orders, and all other related agreements and documents executed in connection with the Senior DIP Facility, in each case, as amended, restated, supplemented, or otherwise modified from time to time.

122.    "*Senior DIP Orders*" means the Senior Interim DIP Order and the Senior Final DIP Order, as applicable.

123.    "*Senior Final DIP Order*" means the order of the Bankruptcy Court authorizing and approving the Senior DIP Facility and the use of cash collateral on a final basis [Docket No. 324].

124.    "*Senior Interim DIP Order*" means the order of the Bankruptcy Court authorizing and approving the Senior DIP Facility and the use of cash collateral on an interim basis [Docket No. 113].

125.    "*Solicitation Agent*" means Stretto Inc.

126.    "*Sorrento*" means Sorrento Therapeutics, Inc.

127.    "*Sorrento Equity Interests*" means the Equity Interests in Sorrento immediately prior to the Effective Date.

128.     "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

129.     "*Unimpaired*" means, with respect to a Claim, Equity Interest, or Class of Claims or Interests, not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

130.     "*United States Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

131.     "*Unsecured Creditors' Committee*" means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the United States Trustee on February 28, 2023 (as subsequently reconstituted from time to time, including on March 28, 2023, June 7, 2023, and July 28, 2023 [Docket Nos. 313, 813, and 1123]).

132.     "*Voting Class*" means Class 3.

133.     "*Voting Deadline*" means the deadline by which Ballots for accepting or rejecting the Plan must be received by the Solicitation Agent, which is 4:00 p.m. (prevailing Central Time) on November 10, 2023.

134.     "*Voting Record Date*" means October 18, 2023.

135.     "*Wind-Down*" means the wind down of any remaining affairs of the Liquidating Debtors, as well as the dissolution and liquidation of the Liquidating Debtors' Estates after the Effective Date.

B.     *Rules of Interpretation*

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter gender; (b) whenever from the context it is appropriate, the words "and" or "or" shall mean "and/or"; (c) unless otherwise specified, any reference in this Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be in such form and on such terms and conditions; (d) unless otherwise specified, any reference in this Plan to an existing document, schedule or exhibit, whether or not Filed, shall mean such document, schedule or exhibit, as it may have been or may be amended, modified or supplemented; (e) any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; (f) unless otherwise specified, all references in this Plan to Articles are references to Articles of this Plan or to this Plan; (g) the words "herein," "hereof" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (h) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the

interpretation of this Plan; (j) unless otherwise set forth in this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (k) any term used in capitalized form in this Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (l) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (m) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and (n) any immaterial effectuating provisions may be interpreted by the Liquidating Debtors in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order or approval of the Bankruptcy Court or any other Entity.

## C.     Computation of Time

In computing any period of time prescribed or allowed, the provisions of Bankruptcy Rule 9006(a) shall apply.  If a payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act shall instead occur on the next succeeding Business Day but shall be deemed to have occurred as of the required date.

## D.     Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of this Plan, any agreements, documents, instruments or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; provided, however, that corporate governance matters relating to the Debtors or the Liquidating Debtors, as applicable, shall be governed by the laws of the state of incorporation of the applicable Debtor or Liquidating Debtor, as applicable.

## E.     Reference to Monetary Figures

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## F.     Reference to the Debtors or the Liquidating Debtors

Except as otherwise specifically provided in this Plan to the contrary, references in this Plan to the Debtors or to the Liquidating Debtors shall mean the Debtors and the Liquidating Debtors, as applicable, to the extent the context requires.

# ARTICLE II.

## ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS,
## PRIORITY TAX CLAIMS AND UNITED STATES TRUSTEE STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Facility Claims, and Priority Tax Claims, have not been classified and thus are excluded from the Classes of Claims and Equity Interests set forth in Article III.

A.    *Administrative Claims*

1.    General Administrative Claims

Except as otherwise provided in this Plan, unless previously Filed or paid, requests for payment of Administrative Claims must be Filed and served on the Debtors, the Liquidating Debtors, the Liquidation Trustee pursuant to the procedures specified in (a) the Confirmation Order and (b) the notice of entry of the Confirmation Order and the occurrence of the Effective Date, in each case of (a) and (b) as applicable, no later than the Administrative Claims Bar Date; *provided*, that the foregoing shall not apply to Fee Claims or Claims arising under section 503(b)(1)(D) of the Bankruptcy Code or to the Bankruptcy Court or United States Trustee as the Holders of Administrative Claims.  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Liquidating Debtors, and the Liquidation Trustee (each as applicable) and their respective Estates (as applicable) and property. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article X.C hereof.  Nothing in this Article II.A shall limit, alter, or impair the terms and conditions of the Claims Bar Date Order with respect to the deadline therein for filing administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code.

Except with respect to Administrative Claims that are Fee Claims or DIP Facility Claims, and except to the extent that a Holder of an Allowed Administrative Claim and the applicable Debtor agree to less favorable treatment for such Holder, each Holder of an Allowed Administrative Claim shall receive, on the latest to occur of (a) the Effective Date, (b) the date on which such Administrative Claim becomes Allowed, and (c) the date on which such Allowed Administrative Claim becomes due and payable in the ordinary course of business, at the option of the Debtors, one of the following treatments: (1) payment in full in Cash or (2) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that Allowed Administrative Claims that arise in the ordinary course of the Debtors' business shall be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to, such Allowed Administrative Claims.

2.    Fee Claims

Each Professional asserting a Fee Claim for services rendered on or before the Effective Date must File and serve on the Liquidating Debtors and such other Entities who are designated

16

in the Confirmation Order an application for final Allowance of such Fee Claim no later than 60 days after the Effective Date. Objections to any Fee Claim must be Filed and served on the Liquidating Debtors and the requesting Professional no later than 21 days after such final application for Allowance of such Fee Claim is Filed with the Bankruptcy Court. Each Holder of an Allowed Fee Claim shall be paid in full in Cash any Allowed Accrued Professional Compensation, including from funds held in the Professional Fee Claims Reserve, within five Business Days after entry of a Final Order of the Bankruptcy Court approving such amounts. Notwithstanding anything to the contrary contained in this Plan, the failure of the Professional Fee Claims Reserve to satisfy in full Allowed Fee Claims shall not, in any way, operate or be construed as a cap or limitation on the amount of Allowed Fee Claims due and payable by the Liquidating Debtors, as the amounts in the Professional Fee Claims Reserve are solely estimates. To the extent necessary, this Plan and the Confirmation Order shall amend and supersede any previously entered order regarding the payment of Fee Claims.

Except as otherwise specifically provided in this Plan, on and after the Effective Date, the Liquidating Debtors, or the Liquidation Trustee (subject to the Liquidation Trust Agreement), as applicable, may, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, and other fees and expenses of the Professionals or other Entities related to implementation and Consummation of this Plan incurred by the Liquidating Debtors or the Liquidation Trustee, as applicable, after the Effective Date. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention for services rendered after such date shall terminate, and the Liquidating Debtors, or the Liquidation Trustee (subject to the Liquidation Trust Agreement), as applicable, may employ any Professional or other Entity in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

*B.     DIP Facility Claims*

The Senior DIP Facility Claims were paid in full on August 9, 2023. In connection with and pursuant to the terms of the Scilex Stock Sale: (i) Scilex Holding Company assumed the Debtors' obligations under the Replacement DIP Facility; and (ii) Scilex Holding Company credit bid in full the Junior DIP Facility Claims.

*C.     Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors agree to less favorable treatment for such Claim or such Claim has been paid by the Debtors prior to the Effective Date, on or as soon as reasonably practicable after the latest to occur of (a) the Effective Date, (b) the date on which such Priority Tax Claim becomes Allowed, (c) the date on which such Allowed Priority Tax Claim becomes due and payable in the ordinary course of business, and (d) such other date as may be mutually agreed to by and among such Holder and the Debtors, in full and final satisfaction, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, at the Debtors' option, each Holder of such Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of time not to exceed five years after the

Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code; or (3) such other treatment as may be agreed upon by such Holder and the Debtors or otherwise determined by an order of the Bankruptcy Court.  To the extent any Priority Tax Claim is not due and owing on the Effective Date, after such Claim becomes Allowed, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and such Holder, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

On the Effective Date, any Liens securing any Allowed Priority Tax Claims shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order or rule, or the vote, consent, authorization, or approval of any Person.

D.      *Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code to the extent necessary, shall be paid by each of the Debtors or the Liquidating Debtors (or the Disbursing Agent on behalf of each of the Debtors or Liquidating Debtors), as applicable, for each quarter (including any fraction thereof) until the earliest to occur of the entry of (a) a final decree closing such Debtor's Chapter 11 Case, (b) an order dismissing such Debtor's Chapter 11 Case, or (c) an order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

Prior to the Effective Date, the Debtors shall timely File reports for each month (including any fraction thereof) when they become due, in a form reasonably acceptable to the U.S. Trustee. On and after the Effective Date, the Debtors or the Liquidating Debtors (or the Disbursing Agent on behalf of each of the Debtors or the Liquidating Debtors), as applicable, shall timely File reports for each quarter (including any fraction thereof) in a form reasonably acceptable to the U.S. Trustee.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

A.      *Introduction*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Equity Interests in the Debtors.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes.  A Claim or Equity Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.

This Plan, though proposed jointly, constitutes a separate plan proposed by each Debtor. The categories of Claims and Equity Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation and distribution pursuant hereto and pursuant to sections

1122 and 1123(a)(1) of the Bankruptcy Code. Therefore, the classifications set forth in Article III.B herein apply separately with respect to each Plan proposed by each Debtor. If there are no Claims or Equity Interests in a particular Class for a particular Debtor, then such Class of Claims or Equity Interests shall not exist for all purposes of this Plan for that Debtor.

B.    *Summary of Classification*

The classification of Claims and Equity Interests against the Debtors pursuant to this Plan is as follows:

## SUMMARY OF STATUS AND VOTING RIGHTS

| Class | Claim/Equity Interest | Status | Voting Rights |
|:---:|:---|:---:|:---:|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| 5 | Scintilla Equity Interests | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 6 | Sorrento Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

C.    *Treatment of Claims and Equity Interests*

1.    Class 1 – Other Priority Claims

(a)    *Classification*: Class 1 consists of all Other Priority Claims. This Class will be further divided into subclasses designated by letters of the alphabet (Class 1A, Class 1B, and so on), so that each Holder of any Other Priority Claim against such Debtor is in a Class by itself, except to the extent that

there are Other Priority Claims that are substantially similar to each other and may be included within a single Class.

(b) *Treatment*:   Except to the extent a Holder of an Allowed Other Priority Claim has been paid by the Debtors prior to the Effective Date or the Holder of an Allowed Other Priority Claim and the Debtors agree to less favorable treatment of such Claim, each Holder of an Allowed Other Priority Claim due and payable on or before the Effective Date shall receive, on the latest to occur of (a) the Effective Date, (b) the date on which such Other Priority Claim becomes Allowed, and (c) the date on which such Allowed Other Priority Claim becomes due and payable in the ordinary course of business, at the option of the Debtors, one of the following treatments: (1) be paid in full in Cash or (2) otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(c) *Voting*: Class 1 is Unimpaired.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject this Plan.

2. Class 2 – Other Secured Claims

(a) *Classification*: Class 2 consists of all Other Secured Claims.  This Class will be further divided into subclasses designated by letters of the alphabet (Class 2A, Class 2B, and so on), so that each Holder of any Other Secured Claim against such Debtor is in a Class by itself, except to the extent that there are Other Secured Claims that are substantially similar to each other and may be included within a single Class.

(b) *Treatment*:   Except to the extent a Holder of an Allowed Other Secured Claim has been paid by the Debtors prior to the Effective Date or the Holder of an Allowed Other Secured Claim and the Debtors agree to less favorable treatment of such Claim, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction, settlement, and release of, and in exchange for, such Allowed Other Secured Claim, in the discretion of the Debtors, one of the following alternative treatments:

(i) payment of the Allowed Other Secured Claim in full in Cash on the latest to occur of (A) the Effective Date or as soon as reasonably practicable thereafter, (B) as soon as reasonably practicable after the date on which such Other Secured Claim becomes Allowed, and (C) as soon as reasonably practicable after the date on which such Allowed Other Secured Claim becomes due and payable in the ordinary course of business;

(ii) delivery to the Holder of the Allowed Other Secured Claim of the collateral securing such Allowed Other Secured Claim;

(iii)    Reinstatement pursuant to section 1124(2) of the Bankruptcy Code, including retention of such Holder's Lien on the collateral securing such Allowed Other Secured Claim; or

(iv)    such other treatment rendering such Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)    *Voting*: Class 2 is Unimpaired.  Holders of Allowed Other Secured Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject this Plan.

3.    Class 3 – General Unsecured Claims

(a)    *Classification*: Class 3 consists of all General Unsecured Claims.

*Treatment*:  Except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors agree to less favorable treatment on account of such Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, settlement, and release of, and in exchange for, such Allowed General Unsecured Claim, on or as soon as practicable after the Effective Date or when such obligation becomes due in the ordinary course of business in accordance with applicable law or the terms of any agreement that governs such Allowed General Unsecured Claim, whichever is later, its Pro Rata share of the Liquidation Trust Recovery.

(b)    *Voting*:  Class 3 is Impaired.  Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.    Class 4 – Intercompany Claims

(a)    *Classification*: Class 4 consists of all Intercompany Claims.

(b)    *Treatment*: No property will be distributed to the Holders of Intercompany Claims.  On the Effective Date, each Intercompany Claim shall either be, at the discretion of the Debtors, (i) Reinstated, or (ii) cancelled and extinguished, or otherwise adjusted, set off, or released with no recovery on account of such Claim.

(c)    *Voting*: Class 4 is either: (i) Unimpaired and Holders of Allowed Intercompany Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, or (ii) Impaired and not receiving any distribution under the Plan and Holders of Allowed Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, in each case, Holders

of such Allowed Intercompany Claims are not entitled to vote to accept or reject this Plan.

5.       Class 5 – Scintilla Equity Interests

     (a)    *Classification*: Class 5 consists of the Scintilla Equity Interests.

     (b)    *Treatment*: No property will be distributed to the Holders of Scintilla Equity Interests. All Scintilla Equity Interests shall remain effective and outstanding on the Effective Date for administrative convenience and shall be owned and held by the same applicable Entity that held and/or owned such Scintilla Equity Interests immediately prior to the Effective Date.

     (c)    *Voting*: Class 5 is Unimpaired and the Holder of the Scintilla Equity Interests is conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the Scintilla Equity Interests in Class 5 is not entitled to vote to accept or reject this Plan.

6.       Class 6 – Sorrento Equity Interests

     (a)    *Classification*: Class 6 consists of the Sorrento Equity Interests.

     (b)    *Treatment*: On the Effective Date, the Sorrento Equity Interests will be canceled without further notice to, approval of, or action by any Entity. Each Holder of a Sorrento Equity Interest shall receive, in full and final satisfaction, settlement, and release of, and in exchange for, such Sorrento Equity Interest, its Pro Rata share of the Liquidation Trust Recovery (subject to, for the avoidance of doubt, Allowed General Unsecured Claims being paid in full in Cash).

     (c)    *Voting*: Class 6 is Impaired. Holders of Sorrento Equity Interests are deemed to reject this Plan.

D.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided herein, nothing under this Plan shall limit or affect the Debtors' or the Liquidating Debtors' rights and defenses in respect of any Claim or Equity Interest that is Unimpaired under this Plan, including, without limitation, all rights in respect of (1) legal and equitable defenses to, (2) setoff or recoupment against or (3) counter-claims with respect to any such Unimpaired Claims and Equity Interests.

## ARTICLE IV.

## ACCEPTANCE REQUIREMENTS

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the

Holders of at least two-thirds in dollar amount and more than one-half in number of Allowed Claims in such Class actually voting have voted to accept the Plan. Pursuant to section 1126(d) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Equity Interests has accepted the Plan if the Holders of at least two-thirds in amount of the Allowed Equity Interests in such Class actually voting have voted to accept the Plan.

A.      *Acceptance or Rejection of this Plan*

1.      Voting Class

Class 3 is Impaired under this Plan and is entitled to vote to accept or reject this Plan.

2.      Presumed Acceptance of this Plan

Classes 1, 2, and 5 are Unimpaired under this Plan and Holders of Claims or Equity Interests in such Classes are, therefore, conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan.

3.      Deemed Rejection of this Plan

Class 6 is Impaired under this Plan and deemed to have rejected the Plan pursuant to Section 1126(g).

4.      Presumed Acceptance or Deemed Rejection of this Plan

Class 4 Claims are either (a) Unimpaired and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or (b) Impaired and shall receive no distributions under the Plan and are, therefore, deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Therefore, Holders of Claims in Class 4 are not entitled to vote on the Plan, and the votes of such Holders shall not be solicited.

B.      *Confirmation of This Plan Pursuant to Sections 1129(a)(10) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by an Impaired Class not counting the votes of any insiders.

C.      *Subordination*

The allowance, classification, and treatment of all Allowed Claims and Equity Interests, and the respective distributions and treatments under the Plan, shall take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Liquidating Debtors, or the Liquidation Trustee (in connection with the Plan Administration Process and subject to the Liquidation Trust Agreement), as applicable, reserve the

right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

D.      *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the date of commencement of the Combined Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (i.e., no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.      *Intercompany Claims*

To the extent Reinstated under the Plan, any distributions on account of Intercompany Claims are not being received by Holders of such Intercompany Claims on account of their Intercompany Claims but for the purposes of administrative convenience.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Sources of Consideration for Plan Distributions*

On the Effective Date, the Debtors shall make Distributions in accordance with the Plan to Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims that are due and payable as of the Effective Date using Cash on hand.  Upon completion of such Distributions, on the Effective Date, the Debtors shall transfer to the Liquidation Trust any remaining Cash (if any), the Liquidation Trust Causes of Action, and all other Liquidation Trust Assets (if any).  After the Effective Date, the Liquidation Trustee shall make Distributions from the Liquidation Trust Assets on account of Allowed Claims in accordance with the Plan and the Liquidation Trust Agreement. The Liquidation Trust Agreement will contain additional information regarding the funding of the Liquidation Trust, including in connection with the funding of any reserve needed to address Disputed Claims, as applicable.

B.      *Creation of the Liquidation Trust*

A Liquidation Trust will be created on the Effective Date.  As of the Effective Date, each Claim against the Debtors shall be deemed satisfied, settled, and released as to the Debtors and the Liquidating Debtors as provided with respect to each such Claim under this Plan, and except as otherwise set forth in this Plan or other Final Orders of the Bankruptcy Court, any Holder of an Allowed Disputed Claim against the Debtors will have recourse solely to the Liquidation Trust Assets for the payment of any such Claim that is Allowed or becomes Allowed in accordance with the Plan and the Liquidation Trust Agreement; *provided, however,* the recovery provided to any Holder of a Claim that is Allowed or becomes Allowed shall be limited to and consistent with the terms of the Plan.

Additional information regarding the Liquidation Trust will be set forth in the Plan Supplement, including with respect to the Liquidation Trust's creation, funding, administration, assets, liabilities, tax treatment, and related matters.

C.      *Transfer and Vesting of Assets to Liquidation Trust*

Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date and periodically thereafter if additional assets become available, the Debtors shall be deemed to have automatically transferred to the Liquidation Trust all of their right, title and interest in and to all of the Estates' assets, including Causes of Action, and in accordance with section 1141 of the Bankruptcy Code, all such assets shall automatically irrevocably vest in the Liquidation Trust free and clear of all Claims and Liens, subject only to Allowed Claims until paid in full, as set forth in the Plan, and the reasonable fees and expenses of administering the applicable Liquidation Trust, including, without limitation, the reasonable fees and expenses of its Liquidation Trustee, as provided in the Liquidation Trust Agreement.  Thereupon, the Debtors shall have no interest in or with respect to such additional assets or the Liquidation Trust.

In connection with the vesting and transfer of assets to the Liquidation Trust, including rights and the Causes of Action, access to books and records, any attorney-client privilege, work-product protection or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidation Trust shall vest in the Liquidation Trust. The Debtors and the Liquidation Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, protections and immunities.

D.      *Preservation of Confidences and Attorney-Client Privilege*

To effectively investigate, defend or pursue the Liquidation Trust's assets, including the Causes of Action, the Debtors, the Liquidation Trust, the Liquidation Trustee and all respective counsel thereto, must be able to exchange information with each other on a confidential basis and cooperate in common interest efforts without waiving any applicable privilege.  Given the common interests of the parties and the Liquidation Trust's position as successor to the Estates' assets, including the Causes of Action, sharing such information in the manner described in the previous sentence shall not waive or limit any applicable privilege or exemption from disclosure or discovery related to such information.

E.      *Liquidation Trustee*

On the Effective Date, the Liquidation Trustee shall be the sole authorized representative and signatory of the Liquidation Trust Agreement (if any), with authority to render all services necessary to effectuate the terms of this Plan as they relate to the Liquidation Trust.  From and after the Effective Date, the Liquidation Trustee shall be deemed to have been appointed as the representative of each of the Liquidating Debtors' Estates by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code except to the extent limited by the Liquidation Trust Agreement.

The powers, authority, responsibilities, and duties of the Liquidation Trustee shall be governed by this Plan, the Confirmation Order, and the Liquidation Trust Agreement.  The duty of the Liquidation Trustee shall be to maximize the assets of the Estates for the benefit of Holders

of Allowed Claims; *provided* that after Allowed Claims have been paid in full in Cash, any remaining Liquidation Trust Assets shall be distributed to Holders of Allowed Equity Interests.

The Liquidation Trustee may execute, deliver, file, or record such documents, instruments, releases, and other agreements, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan as they relate to the Liquidation Trust.

The Unsecured Creditors' Committee shall select the Liquidation Trustee, and its identity shall be disclosed by the Debtors at or prior to the Combined Hearing. Any successor Liquidation Trustee shall be appointed pursuant to the Liquidation Trust Agreement.

Additional information regarding the Liquidation Trustee will be set forth in the Plan Supplement, including further detail with respect to the Liquidation Trustee's responsibilities and authority, powers and limitations, compensation, and professionals. The Plan Supplement will also contain additional information regarding the establishment and administration of any reserves needed to address Disputed Claims, if any.

F.      *Liquidation Trustee's Authority and Duties*

From and after the Effective Date, the Liquidation Trustee shall serve as trustee of the Liquidation Trust, and shall have all powers, rights and duties of a trustee, as set forth in the Liquidation Trust Agreement.

Among other things, the Liquidation Trustee shall:

(i)      hold and administer the Estates' assets, all of which shall be automatically transferred to the Liquidation Trust, including the Causes of Action;

(ii)     have the sole authority and discretion on behalf of the Liquidation Trust to evaluate and determine strategy with respect to the Causes of Action, and to litigate, settle, transfer, release or abandon and/or compromise in any manner any and all such Causes of Action on behalf of the Liquidation Trust on any terms and conditions as it may determine in good faith based on the best interests of General Unsecured Creditors;

(iii)    have the power and authority to retain, as an expense of the Liquidation Trust, attorneys, advisors, other professionals and employees as may be appropriate to perform the duties required of the Liquidation Trustee hereunder or in the Liquidation Trust Agreement;

(iv)     make distributions to creditors as provided in the Liquidation Trust Agreement and the Plan,

(v)      have the right to receive reasonable compensation for performing services as the Liquidation Trustee and to pay the reasonable fees, costs and expenses of any counsel, professionals, advisors or employees as may be necessary to assist the Liquidation Trustee in performing the duties and

responsibilities required under the Plan and the Liquidation Trust Agreement;

(vi)    file, litigate, settle, compromise or withdraw objections to Claims as set forth herein;

(vii)    be considered an estate representative as provided for under section 1123 of the Bankruptcy Code with respect to the assets placed in the Liquidation Trust;

(viii)    handle the Wind-Down and the Plan Administration Process as set forth below and in accordance with the Plan; and

(ix)    have the right to provide periodic reports and updates to creditors regarding the status of the administration of the Estates' assets, including the Causes of Action.

### G.    *Inter-Debtor Transfers of Funds*

The Debtors and the Liquidating Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Liquidating Debtors to satisfy their obligations under this Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of this Plan.

### H.    *Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in this Plan, the Confirmation Order, the Scilex Stock Sale Order or any other sale(s) effectuated during the pendency of the Debtors' Chapter 11 Cases (if any), or any contract, instrument, or other agreement or document entered into or delivered in connection with this Plan: (1) the obligations of the Debtors under the DIP Facilities, and any other Certificate, share, note, bond, indenture, purchase right, option, warrant or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such Certificates, notes or other instruments or documents evidencing ownership interests, indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to this Plan, if any), shall be cancelled and of no force or effect solely as to the Debtors, the Liquidating Debtors, or the Liquidation Trustee, as applicable, and they shall not have any continuing obligations thereunder without any further action on the part of the Debtors, the Liquidating Debtors, or the Liquidation Trustee; and (2) the obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, Certificates, notes, bonds, indentures, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, Certificates, notes or other instruments evidencing ownership interests, indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to this Plan) shall be released.

I.      *Wind-Down*

On and after the Effective Date, the Liquidating Debtors shall (1) continue in existence for the limited purposes of (a) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible, (b) resolving Disputed Claims as provided hereunder, (c) paying Allowed Claims as provided hereunder, (d) filing appropriate tax returns, (e) complying with their continuing obligations under any applicable post-petition agreements governing a sale of the Debtors' assets, including any transition services under any asset purchase agreements, and (f) administering the Plan in an efficacious manner; and (2) thereafter liquidate and dissolve as set forth in the Plan. The Liquidation Trustee (or an appointee thereof) shall carry out these actions for the Debtors in accordance with the Plan and the Liquidation Trust Agreement.  The foregoing shall be funded by the Liquidation Trust and assets thereof.

J.      *Plan Administration*

On the Effective Date, other than the Liquidation Trustee and any other personnel retained by the Liquidating Debtors or the Liquidation Trustee, all directors, managers, members, officers, and employees of the Debtors shall be deemed to have resigned. On and after the Effective Date, except as otherwise provided in this Plan and the Liquidation Trust Agreement, the Liquidation Trustee shall serve as the Liquidating Debtors' sole director, manager, officer, and member, as applicable, and shall have sole authority to act on behalf of the Liquidating Debtors with respect to the Wind-Down and the Plan Administration Process. The certificates of formation, operating agreements, articles of incorporation, and other organizational or governing documents of the Liquidating Debtors shall be deemed amended by the Plan to permit and authorize the appointment of the Liquidation Trustee in accordance with this Plan.

K.      *Corporate Action*

Upon the Effective Date, all actions contemplated under this Plan shall be deemed authorized and approved in all respects.  All matters provided for in this Plan involving the legal or corporate structure of the Debtors or the Liquidating Debtors, and any corporate action required by the Debtors, the Liquidating Debtors, and the Liquidation Trust, as applicable, in connection with this Plan shall be deemed to have occurred and shall be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, and without any requirement of further action by the security holders, directors, or officers of the Debtors, the Liquidating Debtors, or the Liquidation Trustee, as applicable.  On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors, the Liquidating Debtors, or the Liquidation Trustee, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver any agreements, documents, securities, and instruments contemplated under this Plan (or necessary or desirable to effect the transactions contemplated under this Plan) in the name of and on behalf of the Liquidating Debtors.  The authorizations and approvals contemplated by this paragraph shall be effective notwithstanding any requirements under non-bankruptcy law.

L.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Liquidating Debtors and its officers and directors are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments,

releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan, and the corporate actions and transactions contemplated under this Plan, without the need for any approvals, authorizations or consents except for those expressly required pursuant to this Plan.

M.      *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Liquidating Debtor or to any Entity pursuant to, in contemplation of or in connection with this Plan or pursuant to: (1) the issuance, distribution, transfer or exchange of any debt, Equity Security or other Equity Interest in the Debtors or the Liquidating Debtors; (2) the creation, modification, consolidation or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment or recording of any lease or sublease; or (4) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments or other instruments of transfer executed in connection with any transaction arising out of, contemplated by or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, or governmental assessment.

N.      *Professional Fee Claims Reserve*

As soon as practicable after the Confirmation Date, the Debtors shall establish and fund the Professional Fee Claims Reserve with Cash in an amount determined by the Debtors or as determined by order of the Bankruptcy Court, as necessary in order to be able to pay in full in Cash the obligations and liabilities for which such reserve was established, which amount shall be based on (x) the aggregate amount of Accrued Professional Compensation billed by the Professionals prior to the Confirmation Date plus (y) an estimate of the aggregate Fee Claims for periods through the Confirmation Date that have not been billed, as provided to the Debtors by each Professional. Each Professional shall estimate in good faith their Fee Claims for periods that have not been billed as of the Confirmation Date and shall deliver such good faith estimate to the Debtors no later than five Business Days after the Debtors so request; provided, however, that such estimate shall not be deemed to limit the amount of fees and expenses that are the subject of such Professional's final request for payment of Fee Claims. If a Professional does not provide an estimate, the Debtors shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional through the Confirmation Date.

The Debtors and the Liquidating Debtors shall not commingle any funds contained in the Professional Fee Claims Reserve and shall use such funds to pay only the Fee Claims, as and when Allowed by a Final Order of the Bankruptcy Court. Except as provided in this Article V.N, after the Confirmation Date, the Debtors and the Liquidating Debtors shall not deposit any other funds or property into the Professional Fee Claims Reserve without further order of the Bankruptcy Court. No Liens or Claims shall encumber the Professional Fee Claims Reserve in any way. The

Professional Fee Claims Reserve shall be maintained in trust for the Professionals and shall not be considered property of the Debtors' Estates or the Liquidating Debtors; <u>provided</u> that the Liquidating Debtors shall have a reversionary interest in the Cash, if any, in the Professional Fee Claims Reserve after all Allowed Fee Claims are paid and satisfied in full in Cash in accordance with this Plan, with such amount being returned to the Liquidating Debtors within three Business Days after determination thereof. The Debtors or the Liquidating Debtors, as applicable, shall maintain records of all deposits to and payments made from the Professional Fee Claims Reserve. To the extent that funds held in the Professional Fee Claims Reserve do not or are unable to satisfy the full amount of any Allowed Fee Claim, the Debtors or the Liquidating Debtors, as applicable, shall, within five Business Days after entry of the Final Order approving such Allowed Fee Claim, pay such Allowed Fee Claim from Cash on hand, without any further action or order of the Bankruptcy Court.

O.    *Closing the Chapter 11 Cases*

As soon as practicable after the Effective Date, when all Disputed Claims have become Allowed or disallowed, the Liquidation Trustee may seek authority from the Bankruptcy Court to close any remaining Chapter 11 Cases of the Debtors in accordance with the Bankruptcy Code and the Bankruptcy Rules.

As of the Effective Date, the Liquidating Debtors or the Liquidation Trustee may submit a separate order to the Bankruptcy Court under certification of counsel closing the Chapter 11 Case of Scintilla and changing the caption of the Chapter 11 Cases accordingly. Nothing in the Plan shall authorize the closing of any case retroactive to a date that precedes the date any such order is entered. All contested matters and adversary proceedings relating to either of the Debtors, including objections to Claims, shall be filed, administered, and adjudicated in the Remaining Case without the need to reopen the other Chapter 11 Case. Any request for retroactive relief shall be made on motion served on the United States Trustee, and the Bankruptcy Court shall rule on such request after notice and a hearing. Upon the Filing of a motion to close the Chapter 11 Case of Sorrento, the Liquidation Trustee shall file a final report with respect to both of the Chapter 11 Cases.

### ARTICLE VI.
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption or Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, each Debtor shall be deemed to have <u>rejected</u> each Executory Contract and Unexpired Lease to which it is a party, if such Executory Contract or Unexpired Lease (i) has not previously been rejected by order of the Bankruptcy Court or is not the subject of a motion to reject on the Confirmation Date; (ii) is not identified in the Plan Supplement as a contract or lease to be assumed pursuant to the Plan; (iii) is not expressly assumed pursuant to the terms of this Plan; (iv) has not expired or terminated by its own terms on or prior to the Effective Date; or (v) has not been assumed or is not the subject of a motion to assume on the Confirmation Date.

Subject to the payment of any Cure Claim (and, if applicable, the provision of adequate assurance of future performance under such Executory Contract or Unexpired Lease), assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting assignment, the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before or on the date that the Debtors assume such Executory Contract or Unexpired Lease.

Any Change of Control Provision in any contract, agreement, or other document of the Debtors, including any Executory Contract or Unexpired Lease assumed or assumed and assigned, shall be deemed modified in accordance with section 365 of the Bankruptcy Code such that such assumption or assumption and assignment and the transactions contemplated by this Plan shall not (a) be prohibited, restricted or conditioned on account of such provision or require any consent thereunder, (b) breach or result in the modification or termination of such Executory Contract or Unexpired Lease, (c) result in any penalty or other fees or payments, accelerated or increased obligations, renewal or extension conditions, or any other entitlement in favor of such non-debtor party thereunder or (d) entitle the non-debtor party thereto to do or impose any of the foregoing or otherwise exercise any other default-related rights or remedies with respect thereto. For the avoidance of doubt, any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan or otherwise may not be terminated on account of such assumption or on account of the Plan, the transactions contemplated therein, or any change of control or ownership interest composition or entity conversion that may occur at any time before, on or in connection with the Effective Date. The Liquidating Debtors may rely on this Plan and the Confirmation Order as a complete defense to any action by a party to an assumed Executory Contract or Unexpired Lease to terminate such Executory Contract or Unexpired Lease on account of such assumption or on account of this Plan, the transactions contemplated herein, or any change of control or ownership interest composition that may occur at any time before or on the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to Article VI of the Plan shall revest in and be fully enforceable by the Liquidating Debtors in accordance with its terms, except as modified by the provisions of the Plan, any order of this Court authorizing and providing for its assumption, or applicable law.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions and rejections (as applicable) of Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Notwithstanding the foregoing, before the Effective Date, the Debtors, and, after the Effective Date, the Liquidating Debtors, shall have the right to amend the Plan Supplement to revise the list of Executory Contracts and Unexpired Leases being assumed or rejected.

B.      *Assumption of the D&O Liability Insurance Policies and Fiduciary Liability Insurance Policies*

The Debtors and, upon the Effective Date, the Liquidation Trust shall assume all of the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the foregoing assumption

of each of the D&O Liability Insurance Policies and authorization for the Debtors, Liquidating Debtors, and/or Liquidation Trust (as applicable) to take such actions, and to execute and deliver such documents, as may be reasonably necessary or appropriate to implement, maintain, cause the binding of, satisfy any terms or conditions of, or otherwise secure for the insureds the benefits of the D&O Liability Insurance Policies.

In addition and for the avoidance of doubt, after the Effective Date, none of the Liquidating Debtors nor the Liquidation Trust (as applicable) shall terminate or otherwise reduce the coverage under any "tail" D&O Liability Insurance Policies covering the Debtors' current boards of directors in effect on or after the Petition Date and, subject to the terms of the applicable D&O Liability Insurance Policies, all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such directors and officers remain in such positions after the Effective Date.

C.    *Payments Related to Assumption of Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to this Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding: (a) the amount of any Cure Claim; (b) the ability of the Liquidating Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), if applicable, under the Executory Contract or the Unexpired Lease to be assumed; or (c) any other matter pertaining to assumption, the Cure Claims shall be paid following the entry of a Final Order resolving the dispute and approving the assumption of such Executory Contracts or Unexpired Leases; provided, however, that the Debtors or the Liquidating Debtors, as applicable, may settle any dispute regarding the amount of any Cure Claim without any further notice to or action, order or approval of the Bankruptcy Court.

D.    *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases.  In particular, notwithstanding any nonbankruptcy law to the contrary, the Liquidating Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the contracting Debtors or Liquidating Debtors, as applicable, from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

E.    *Rejection Damages Claims*

All Claims arising from the rejection (if any) of Executory Contracts or Unexpired Leases must be Filed with the clerk of the Bankruptcy Court and served upon counsel for the Liquidating Debtors and the Liquidation Trust within thirty days after the later of (i) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving the rejection of such Executory Contract or Unexpired Lease and (ii) the effective date of such rejection (including the

Effective Date).  Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim is classified and shall be treated as a Class 3 General Unsecured Claim.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within the time required by this section will be forever barred from assertion against the Debtors, the Liquidating Debtors, the Estates or the property of the Debtors or the Liquidating Debtors, or the Liquidation Trust.

F.    *Contracts and Leases Entered Into After the Petition Date*

Contracts and leases entered into or assumed after the Petition Date by any Debtor that are not assigned to any purchaser in connection with a section 363 sale or the Liquidation Trust (or have not otherwise previously been assigned pursuant to a Final Order prior to the Effective Date) shall be considered repudiated by the Debtors as of the Effective Date, and the counterparties to such contracts, if they believe that such repudiation constitutes a breach of such contract or lease, must file a Proof of Claim within thirty days after the Effective Date in accordance with this Plan or have their rights forever satisfied, settled, and released.

G.    *Modifications, Amendments, Supplements, Restatements or Other Agreements*

Unless otherwise provided in this Plan, each Executory Contract or Unexpired Lease that is assumed by the Debtors or the Liquidating Debtors shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, whether executed before or during the Chapter 11 Cases, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, extension rights, purchase rights and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan.

Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or the Unexpired Lease, or the validity, priority or amount of any Claims that may arise in connection therewith.

H.    *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Liquidating Debtors have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Liquidating Debtors, as applicable, shall have sixty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

I.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts or Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts To Be Distributed; Entitlement to Distributions*

1.      Timing and Calculation of Amounts To Be Distributed

Unless otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim or Equity Interest is not an Allowed Claim or Allowed Equity Interest on the Effective Date, on the date that such Claim or Equity Interest becomes an Allowed Claim or Allowed Equity Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Equity Interest against the Debtors shall receive the full amount of the distributions that this Plan provides for Allowed Claims or Allowed Equity Interests in the applicable Class.  If and to the extent that there are Disputed Claims or Disputed Equity Interests, distributions on account of any such Disputed Claims or Disputed Equity Interests shall be made pursuant to the provisions set forth in this Article VII.  Except as otherwise provided herein, Holders of Claims shall not be entitled to postpetition interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

2.      Entitlement to Distributions

On the Effective Date, the applicable Disbursing Agent shall be authorized to recognize and deal only with those Holders of Claims listed on the Debtors' books and records as of the Distribution Record Date.  If a Claim, other than one based on a publicly-traded security, is transferred (a) twenty-one or more days before the Distribution Record Date and reasonably satisfactory documentation evidencing such transfer is Filed with the Court, the Disbursing Agent shall make the applicable distributions to the applicable transferee, or (b) twenty or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form is Filed with the Court and contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

B.      *Disbursing Agent*

Except as otherwise provided herein, all distributions under this Plan shall be made by a Disbursing Agent.  A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  In the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidation Trust. The Debtors or Liquidation Trustee, as applicable, shall seek the cooperation of DTC so that any distribution on account of an Allowed

Claim or Equity Interest that is held in the name of, or by a nominee of, DTC, shall be made as soon as reasonably practicable after the Effective Date.

C.      *Rights and Powers of Disbursing Agent*

      1.      Powers of a Disbursing Agent

A Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof; provided, however, that any such Disbursing Agent shall waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required under this Plan to be distributed by such Disbursing Agent.

      2.      Expenses Incurred on or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable and documented compensation and expense reimbursement claims (including reasonable and documented attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Liquidation Trust.

D.      *Distributions on Account of Claims or Equity Interests Allowed After the Effective Date*

      1.      Payments and Distributions on Disputed Claims or Equity Interests

Distributions made after the Effective Date to Holders of Disputed Claims or Disputed Equity Interests that are not Allowed Claims or Allowed Equity Interests as of the Effective Date but which later become Allowed Claims or Allowed Equity Interests shall be deemed to have been made on the Effective Date.

      2.      Special Rules for Distributions to Holders of Disputed Claims and Disputed Equity Interests

Notwithstanding any provision otherwise in this Plan and except as otherwise agreed to by the Debtors, the Liquidating Debtors, or the Liquidation Trust/Liquidation Trustee, as applicable, (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim or a Disputed Equity Interest until all such disputes in connection with such Disputed Claim or Disputed Equity Interest have been resolved by settlement or Final Order and such Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Allowed Equity Interest; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim or an Allowed Equity Interest and a Disputed Equity Interest shall not receive any distribution on the Allowed Claim or Allowed Equity Interest unless and until all objections to the Disputed Claim or the Disputed Equity Interest have been resolved by settlement or Final Order and the Disputed Claims or the Disputed Equity

Interests have been Allowed or disallowed (with only Allowed portions of such Disputed Claims or Disputed Equity Interests remaining).

E.     *Minimum Distributions*

Notwithstanding anything herein to the contrary, other than on account of Claims in Classes 1 and 2, the Liquidating Debtors, the Liquidation Trustee, and the Disbursing Agents, as applicable, shall not be required to make distributions or payments of less than $100 (whether Cash or otherwise).

F.     *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.     Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Allowed Equity Interests (if any) at the address for each such Holder as indicated on the Debtors' or Liquidation Trust's records (as applicable) as of the date of any such distribution.

2.     Partial Distributions

The Liquidating Debtors shall not be required to make partial distributions on account of Allowed Claims.

3.     Undeliverable Distributions and Unclaimed Property

(a)     Failure To Claim Undeliverable Distributions

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the later of (i) the Effective Date and (ii) the date of such distribution.  After such date, all unclaimed property or interests in property shall revert to the Liquidation Trust automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state or other jurisdiction escheat, abandoned or unclaimed property laws to the contrary), and the Claim or Equity Interest of any Holder to such property or interest in property shall be forever barred.  The Disbursing Agent shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the applicable books and records of the Debtors and the Bankruptcy Court's filings.

(b)     Failure To Present Checks

Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within 180 calendar days after the issuance of such check.  Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued.  Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-

negotiated check within 180 days after the issuance of such check shall be forever barred, estopped and enjoined from asserting any such Claim against the Liquidation Trust or their respective property.  In such cases, any Cash held for payment on account of such Claims shall be property of the Liquidation Trust, free of any Claims of such Holder with respect thereto.  Nothing contained herein shall require the Liquidation Trust to attempt to locate any Holder of an Allowed Claim.

G.    *Compliance with Tax Requirements/Allocations*

In connection with this Plan, to the extent applicable, the Liquidating Debtors and the Liquidation Trust, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in this Plan to the contrary, the Liquidating Debtors, the Liquidation Trust  and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information, documentation, and certifications necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.  The Liquidating Debtors and the Liquidation Trust reserve the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens and encumbrances.  For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount (as determined for U.S. federal income tax purposes) of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

Any party entitled to receive any property as an issuance or distribution under this Plan shall, upon request, deliver to the Liquidation Trust and Disbursing Agent, or such other Person designated by the Liquidation Trust and the Disbursing Agent, IRS Form W-9 or, if the payee is a foreign Person, an applicable IRS Form W-8, or any other forms or documents reasonably requested by the Liquidation Trust or the Disbursing Agent to reduce or eliminate any withholding required by a Governmental Unit.

H.    *Surrender of Canceled Instruments or Securities*

As a condition precedent to receiving any distribution under this Plan, each Holder of a Claim or an Equity Interest shall be deemed to have surrendered the Certificates or other documentation underlying each such Claim or Equity Interest, and all such surrendered Certificates and other documentations shall be deemed to be canceled pursuant to Article V.H hereto, except to the extent otherwise provided herein.

I.    *Claims Paid or Payable by Third Parties*

1.    Claims Paid by Third Parties

The Debtors or Liquidation Trustee, as applicable, shall reduce a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or the Liquidation

Trustee (or a Disbursing Agent). To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Liquidation Trustee (or a Disbursing Agent) on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Debtor or the Liquidation Trustee (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the Effective Date.

2. Claims Payable by Third Parties

No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

3. Applicability of Insurance Policies

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a release, settlement, satisfaction, compromise or waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VIII.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS AND DISPUTED EQUITY INTERESTS

A.   *Allowance of Claims and Equity Interests*

Except as expressly provided herein or any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), no Claim or Equity Interest shall be deemed Allowed unless and until such Claim or Equity Interest is deemed Allowed under the Bankruptcy Code or under this Plan, or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim under section 502 of the Bankruptcy Code. Except as expressly provided in any order entered in the Chapter 11 Cases on or prior to the Effective Date (including the Confirmation Order), on and after the Effective Date, the Liquidation Trust will have and retain any and all rights and defenses the Debtors had with respect to any Claim or Equity Interest as of the Petition Date.

B.   *Disallowance of Certain Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section

522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code unless expressly Allowed pursuant to this Plan, and Holders of such Claims may not receive any distributions on account of such Claims and Interests until such time as such Causes of Action against that Entity have been settled or a Final Order of the Bankruptcy Court with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Liquidation Trust.

C.      *Prosecution of Objections to Claims and Equity Interests*

The Debtors and the Liquidation Trustee, as applicable, shall have the exclusive authority to File, settle, compromise, withdraw or litigate to judgment any objections, including Omnibus Objections, to Claims or Equity Interests as permitted under this Plan.  From and after the Effective Date, the Liquidation Trustee may settle or compromise any Disputed Claim or Disputed Equity Interest without approval of the Bankruptcy Court.  The Liquidation Trustee shall administer and adjust the Claims register and their respective books and records to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court. The Debtors also reserve the right to resolve any Disputed Claim or Disputed Equity Interest in an appropriate forum outside the jurisdiction of the Bankruptcy Court under applicable governing law.

D.      *Claims Estimation*

Any Debtor or the Liquidation Trustee, as applicable, may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether such Debtor or Liquidation Trustee has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  Notwithstanding any provision otherwise in this Plan, a Claim against any Debtor or the Liquidation Trust that has been expunged from the claims register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Liquidation Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.  Claims may be estimated and thereafter resolved by any permitted mechanism.

E.      *No Distribution Pending Allowance*

If an objection to a Claim is Filed, no payment or distribution provided under this Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

*F.     Distributions After Allowance*

To the extent that a Disputed Claim or a Disputed Equity Interest ultimately becomes an Allowed Claim or Allowed Equity Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Equity Interest in accordance with the provisions of this Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Equity Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Equity Interest the distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Allowed Claim, without any postpetition interest to be paid on account of such Allowed Claim or Equity Interest.

*G.     No Interest*

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

*H.     Adjustments to Claims Without Objection*

Any duplicate Claim or Equity Interest, any Claim that is substantiated by an invoice that is invalid, previously rejected, or otherwise deemed erroneous by the Debtors, any Claim asserted solely on the basis of an Equity Interest (other than a 510(b) Equity Claim), or any Claim or Equity Interest that has been paid, satisfied, amended, or superseded, may be adjusted on the Claims register by the Liquidation Trust without filing a claim objection and without any further notice or action or any order or approval of the Bankruptcy Court.

*I.     Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Deadline, subject to any extensions thereof approved by the Bankruptcy Court.

## ARTICLE IX.

## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

*A.     Conditions Precedent to Confirmation*

1.     The Disclosure Statement shall have been approved as containing "adequate information" under section 1125 of the Bankruptcy Code; and

2.     The Bankruptcy Court shall have found that parties in interest received adequate notice of, and an opportunity to be heard as to, the Disclosure Statement, the Plan, and the Combined Hearing.

B.      *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following provisions, terms and conditions are satisfied (or waived pursuant to the provisions of Article IX.C hereof), and the Effective Date shall occur on the date upon which the last of such conditions are so satisfied and/or waived.

1.      Confirmation shall have occurred, and the Confirmation Order shall not have been vacated and shall not be subject to a stay pending appeal;

2.      All actions, documents, certificates, deeds, filings, notifications, pleadings, orders, letters, instruments, and agreements necessary to implement this Plan, including the documents set forth in the Plan Supplement, shall have been effected or executed and delivered to the required parties, in accordance with the Plan (including the Plan Supplement), and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws;

3.      All approvals and consents of Governmental Units that are legally required for the consummation of this Plan and the occurrence of the Effective Date shall have been obtained, shall not be subject to unfulfilled conditions, and shall be in full force and effect;

4.      No court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, limiting, preventing, or prohibiting the consummation of this Plan; and

5.      The Professional Fee Claims Reserve shall have been established and funded in Cash in accordance with Article V.N.

C.      *Waiver of Conditions*

Each of the conditions to Confirmation and to Consummation set forth in this Article IX may be waived by the Debtors without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate this Plan.

D.      *Effect of Nonoccurrence of Conditions*

If the Consummation of this Plan does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Entity in any respect.

# ARTICLE X.

# SETTLEMENT, EXCULPATION, INJUNCTION AND RELATED PROVISIONS

A.    *Compromise and Settlement of Claims, Equity Interests and Controversies*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Equity Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Allowed Equity Interest, or any distribution to be made on account of such Allowed Claim or Allowed Equity Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interest of the Debtors, their Estates and Holders of Claims and Equity Interests and is fair, equitable and reasonable.  In accordance with the provisions of this Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Debtors and the Liquidation Trustee (as applicable) may compromise and settle Claims against them and Causes of Action against other Entities.

B.    **Exculpation**

**Except as otherwise specifically provided in this Plan, from and after the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby exculpated from, any Covered Claim, obligation, Cause of Action or liability for any Covered Claim, and in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The exculpation hereunder will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

**Except as otherwise specifically provided in this Plan, from and after the Effective Date, pursuant to and in accordance with section 1125(e) of the Bankruptcy Code, no Protected Party shall have or incur, and each Protected Party is hereby exculpated from, any Claim, obligation, Cause of Action or liability related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan (to the extent applicable).**

C.    **Injunction**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR CONFIRMATION ORDER, OR ON ACCOUNT OF OBLIGATIONS ISSUED OR**

**CREATED PURSUANT TO THIS PLAN, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, OR CAUSES OF ACTION THAT ARE SUBJECT TO EXCULPATION OR SETTLEMENT ARE PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND; OR (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND, IN EACH CASE IN THE FOREGOING CLAUSES (I) THROUGH (IV), ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY EXCULPATED OR TO BE EXCULPATED OR SETTLED OR TO BE SETTLED PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER AGAINST ANY EXCULPATED PARTY (OR THE PROPERTY OR ESTATE OF ANY SUCH EXCULPATED PARTY). ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

**No Person or Entity (other than the Liquidation Trust, the Liquidation Trustee, or any of its representatives, successors, or assigns) who has held, holds, or may hold Claims, Equity Interests, or Causes of Action may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Liquidating Debtors, or the Protected Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Covered Claim, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Liquidating Debtor, or Protected Party, as applicable. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Liquidating Debtor, Protected Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action file a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Federal Rules of Civil Procedure, including, but not limited to, Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination.**

D.    *Setoffs and Recoupment against Holders*

Except as otherwise expressly provided for in this Plan, the Debtors or Liquidation Trust, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim or an Equity Interest, may set off or recoup against any Allowed Claim or Allowed Equity Interest and the distributions to be made pursuant to this Plan on account of such Allowed Claim or Allowed Equity Interest (before any

distribution is made on account of such Allowed Claim or Allowed Equity Interest), any claims, rights and Causes of Action of any nature that such Debtors or Liquidation Trust, as applicable, may hold against the Holder of such Allowed Claim or Allowed Equity Interest, to the extent such claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to this Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Equity Interest pursuant to this Plan shall constitute a waiver or release by such Debtors or the Liquidation Trust (as applicable) of any such claims, rights and Causes of Action that such Debtors or Liquidation Trust (as applicable) may possess against such Holder.

E.    *Setoffs and Recoupment by Holders*

In no event shall any Holder of Claims (including those arising from the rejection of any Executory Contracts or Unexpired Leases) or Equity Interests be entitled to set off any Claim or Equity Interest against any claim, right or Cause of Action of the Debtors or the Liquidation Trust, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the thirtieth day after the Effective Date.  In no event shall any Holder of Claims (including those arising from the rejection of any Executory Contracts or Unexpired Leases) or Equity Interests be entitled to recoup any Claim or Equity Interest against any claim, right or Cause of Action of the Debtors or the Liquidation Trust, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XIV.D of the Plan on or before the thirtieth day after the Effective Date.

Notwithstanding anything to the contrary, nothing shall modify the rights, if any, of any Holder of Claims or any current or former party to an Executory Contract or Unexpired Lease, to assert any right of setoff or recoupment that such party may have under applicable non-bankruptcy law.

F.    *Release of Liens*

Except as otherwise provided in this Plan or in any contract, instrument, release or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of an Other Secured Claim, satisfaction in full of the portion of the Other Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall vest in the Liquidation Trust.

## ARTICLE XI.

## BINDING NATURE OF PLAN

**THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER**

**(I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THIS PLAN, (II) HAS FILED A PROOF OF CLAIM OR EQUITY INTEREST IN THE CHAPTER 11 CASES, OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THIS PLAN OR VOTED TO REJECT THIS PLAN.**

## ARTICLE XII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, the Liquidating Debtors, the Liquidation Trust, the Liquidation Trustee, and this Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority, Secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount or allowance of Claims or Equity Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan; *provided*, *however*, that, from and after the Effective Date, the Liquidation Trustee shall pay Professionals in the ordinary course of business for any work performed after the Effective Date and such payment shall not be subject to the approval of the Bankruptcy Court;

3.      resolve any matters related to: (a) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Liquidation Trustee amending, modifying, or supplementing, after the Effective Date, pursuant to Article VI, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of this Plan;

5.      adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide or resolve any and all matters related to Causes of Action, including but not limited to matters relating to the Mediation;

45

7.      adjudicate, decide or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.      resolve any cases, controversies, suits, or disputes that may arise in connection with General Unsecured Claims, including the establishment of any bar dates, related notices, claim objections, allowance, disallowance, estimation and distribution;

9.      enter and implement such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with this Plan or the Disclosure Statement;

10.     enter and enforce any order for the sale of property pursuant to section 363, 1123 or 1146(a) of the Bankruptcy Code;

11.     resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with the Consummation, interpretation or enforcement of this Plan n or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan, or any Entity's obligations incurred in connection with this Plan;

12.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of this Plan;

13.     resolve any cases, controversies, suits, disputes or Covered Claims with respect to the exculpation, injunctions and other provisions contained in Article X and enter such orders as may be necessary or appropriate to implement such exculpation, injunctions and other provisions;

14.     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or an Equity Interest for amounts not timely repaid;

15.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

16.     determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with this Plan or the Disclosure Statement;

17.     enter one or more orders or final decrees concluding or closing the Chapter 11 Cases;

18.     adjudicate any and all disputes arising from or relating to distributions under this Plan;

19.     consider any modifications of this Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20.     determine requests for the payment of Claims and Equity Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

21.     hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

22.     hear and determine matters concerning any tax matters relating to the restructuring, including state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the injunctions, exculpations, and other provisions set forth in Article X of the Plan;

24.     enforce all orders previously entered by the Bankruptcy Court; and

25.     hear any other matter not inconsistent with the Bankruptcy Code.

Notwithstanding the forgoing, if the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article of this Plan, the provisions of this Article XII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XIII.

## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.     *Modifications and Amendments*

Subject to the limitations and rights contained in this Plan: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtors, or the Liquidating Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

B.     *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.     *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date and to File subsequent chapter 11 plans. If the Debtors revoke or withdraw this Plan or if Confirmation or Consummation does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

D.     *Substantial Consummation of the Plan*

Substantial consummation of this Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

## ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

A.     *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiary or guardian, if any, of each Entity.

B.     *Reservation of Rights*

Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur (except to the extent expressly provided therein). Neither this Plan, any statement or provision contained in this Plan, nor any action taken or not taken by any Debtor with respect to this Plan, the Plan Supplement or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Equity Interests before the Effective Date.

C.     *Further Assurances*

The Debtors or the Liquidation Trust, as applicable, all Holders of Claims and Equity Interests receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.

D.    *Service of Documents*

Any pleading, notice or other document required by this Plan to be served on or delivered shall be sent by overnight mail to:

If to a Debtor, to:

M3 Advisory Partners
1700 Broadway | 19th Floor
New York, NY 10019
Attn:  Mo Meghji (mmeghji@m3-partners.com)
Attn:  Seth Herman (sherman@m3-partners.com)
Telephone:  (212) 202-2200

with copies to:

Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Attn: Caroline Reckler (caroline.reckler@lw.com)
Attn: Ebba Gebisa (ebba.gebisa@lw.com)
Attn: Jonathan Gordon (jonathan.gordon@lw.com)
Telephone: (312) 876-7700

After the Effective Date, the Liquidation Trustee has authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidation Trustee is authorized to limit the list of Entities receiving documents pursuant to a pre-Effective Date request under Bankruptcy Rule 2002 to those Entities who have filed renewed requests pursuant to Bankruptcy Rule 2002.

In accordance with Bankruptcy Rules 2002 and 3020(c), within ten Business Days after the date of entry of the Confirmation Order, the Debtors shall serve a notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice; provided that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Combined Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address, provided that the Debtors are unable to ascertain new address information for such Entity after a commercially reasonable search. Mailing of such notice of Confirmation in the time and manner set forth in this paragraph shall be good and sufficient notice under the particular circumstances

and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

### E.    Nonseverability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted; provided that any such alteration or interpretation shall be acceptable to the Debtors. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered from time to time prior to the entry of the Confirmation Order, is: (1) valid and enforceable pursuant to its terms; (2) integral to this Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

### F.    Return of Security Deposits

Unless the Debtors have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits provided by the Debtors to any Person or Entity at any time after the Petition Date shall be returned to the Liquidating Debtors within twenty (20) days after the Effective Date, without deduction or offset of any kind.

### G.    Term of Injunctions or Stays

Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### H.    Entire Agreement

Except as otherwise indicated herein, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into this Plan.

### I.    Exhibits

All exhibits hereto (including the Plan Supplement) are incorporated into and are a part of this Plan as if set forth in full in this Plan.  Except as otherwise provided in the Plan, such exhibits and documents included in the Plan Supplement shall initially be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date to the extent practicable. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written

request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://cases.stretto.com/Sorrento or the Bankruptcy Court's website at www.txs.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

J.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale and purchase of securities offered and sold under this Plan (if any), and, therefore, will have no liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on this Plan or the offer, issuance, sale or purchase of the securities offered and sold under this Plan.

K.      *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon (i) the Debtors, the Liquidating Debtors, the Liquidation Trust, or the Liquidation Trustee, (ii) any and all Holders of Claims and Equity Interests (irrespective of whether Holders of such Claims or Equity Interests are deemed to have accepted the Plan), (iii) all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, (iv) each Entity acquiring property under the Plan and (v) any and all non-Debtor parties to Executory Contracts and Unexpired Leases. The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

L.      *Conflicts*

Except as set forth in this Plan, to the extent that any provision of the Disclosure Statement or any order (other than the Confirmation Order) referenced in this Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of this Plan, this Plan shall govern and control.  In the event of an inconsistency between the Plan (excluding the Plan Supplement) and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall govern and control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of a conflict between any provision of this Plan and the Confirmation Order, the Confirmation Order shall govern and control.

M.      *Dissolution of the Committees*

Each Committee shall dissolve, and the current and former members of each Committee shall be released and discharged from all rights and duties arising from, or related to, the Chapter

11 Cases on the Effective Date; *provided* that the Committees and their respective Professionals shall have the right to file, prosecute, review, and object to any applications for approval of Fee Claims filed in accordance with Article II.A.2 hereof.

*N.*     *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.  The Debtors or the Liquidation Trustee, as applicable, and all Holders of Claims and Equity Interests receiving distributions pursuant to the Plan (if any) and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

*O.*     *Tax Reporting and Compliance*

The Liquidating Debtors shall be authorized to request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

Dated:  November 16, 2023

Respectfully submitted,

**SORRENTO THERAPEUTICS, INC.,**
a Delaware corporation

By:    _/s/ Mohsin Meghji_
Name:  Mr. Mohsin Meghji
Its:     Chief Restructuring Officer


**SCINTILLA PHARMACEUTICS, INC.**
a Delaware corporation

By:    _/s/ Mohsin Meghji_
Name:  Mr. Mohsin Meghji
Its:     Chief Restructuring Officer