IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>Sorrento Therapeutics, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-90085 (CML)<br><br>(Jointly Administered)<br><br>Related ECF Nos.: 1851 |

**OPPOSITION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO TIMOTHY CULBERSON'S MOTION
TO DISMISS OR TRANSFER VENUE PURSUANT TO RULE 1014(A)(2)**

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of Sorrento Therapeutics, Inc., *et. al* (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through its undersigned counsel, hereby submits this opposition to *Party in Interest, Timothy Culberson's Motion to Dismiss or Transfer Venue Pursuant to Rule 1014(a)(2) Due to Fraudulent Venue Selection By Debtors' Counsel and Motion for Reconsideration of Motion to Compel Discovery from Latham & Watkins, LLP* [Docket No. 1851] filed by Timothy Culberson ("Motion).[2]

**I.    The Court Should Deny the Motion Because (a) Transferring Venue Would Not Be in The Interest of Justice or the Convenience of Parties and (b) the Motion Was Not Brought Timely.[3]**

1.    Even if all of the allegations made in the Motions are true, the Court should deny the Motion because Mr. Culberson: (a) fails to carry his burden of showing that dismissal or transfer

---

[1]    The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842) ("Sorrento") and Scintilla Pharmaceuticals, Inc. (7956) ("Scintilla"). The Debtors' service address is: 9380 Judicial Drive, San Diego, CA 92121.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

[3]    The Creditors' Committee files this opposition only with respect to the request of Timothy Culberson to dismiss these chapter 11 cases or transfer venue. The Creditors' Committee takes no position with respect to Mr. Culberson's discovery-related requests.

of venue for these Chapter 11 Cases would be convenient to parties or in the interests of justice; and (b) failed to bring the Motion timely, waiting until after the Court confirmed the plan of liquidation [Docket No. 1442] (the "Plan"), and over a year after the voluntary petitions were filed on February 13, 2023 (the "Petition Date") and the relevant facts were disclosed.

### A.    Changing Venue After Plan Confirmation Would Not Be in The Interest of Justice or the Convenience of the Parties.

2. Rule 1014 requires a court to evaluate whether venue transfer of a case filed in an improper venue would be "in the interest of justice or for the convenience of the parties." Fed. R. Bankr. P. 1014(a)(2). "There is no litmus test or set of hard and fast rules that offer precise guidance for transfer of venue, and the bankruptcy courts are left to a case-by-case determination based upon all relevant factors." *In re New Luxury Motors, LLC*, No. 10-30835-H3-11, 2010 WL 817204, at *3 (Bankr. S.D. Tex. Mar. 4, 2010).

3. The movant carries the burden of showing, by a preponderance of the evidence, that transfer is in the interest of justice or for the convenience of the parties. *Id.* Ultimately, the Debtors' choice of forum is given considerable weight. When "the transferee venue is not clearly more convenient than the venue chosen by the debtor, the debtor's choice should be respected." *Id.*

4. Among other things, Mr. Culberson fails to explain how parties would be better off if the Court transferred (or dismissed) these Chapter 11 Cases and unwound over a year's worth of multi-lateral negotiations at this late stage. In fact, Mr. Culberson provides no evidence whatsoever as to how the interests of justice would be served or the parties would be convenienced by a transfer of venue at this time, merely asking rhetorically, "what does the company have to lose?" Mot. at

¶ 11.[4]

5. A new court would need to become familiar with the plan, the liquidating trust agreement, pending mediation, the Debtors' estates' (the "Estates") current liquidity position, sale efforts, as well as alternatives to the proposed Sale (defined and discussed below). That duplication of effort could not be justified as justice or convenience.

6. Plainly, transferring these Chapter 11 Cases would not benefit stakeholders. The Debtors, the Court, two official committees, mediators, government officials, a liquidation trustee, and a host of other parties have spent nearly a year attempting to negotiate a resolution to these Chapter 11 Cases. In that time, the Debtors solicited and obtained the overwhelming acceptance for a plan of liquidation which has been *confirmed* by the Court. [Docket No. 1652] (the "Confirmation Order"). General unsecured creditors approved the Plan nearly unanimously because it provided their best prospects of recovery.

7. As described in the Debtors' disclosure statement[5] and as the Court has been informed at prior hearings, creditors have continued to negotiate the sale of the Debtors' assets post-confirmation. The result of these negotiations is a proposed financing and sale (the "Sale") described in the *Debtors' Emergency Motion For Entry of Orders Approving (I) Senior Secured Superpriority Financing and (II)(A) Sale of Assets and (B) Modifications to Chapter 11 Plan* [Docket No. 1884] (the "Sale Motion").

8. It is critical to note that the Debtors lack the funds with which to keep operating such that, if a hearing on the Sale Motion is delayed by transferring venue, the proposed Sale could not proceed. Instead, the Debtors would be forced to convert these Chapter 11 Cases to cases under

---

[4] Mr. Culberson appears to believe that, if venue were transferred, all prior orders (including the Confirmation Order (defined below)) would be nullified. That would not be the case but, even if it were, how would that benefit parties in interest?

[5] [Docket No. 1443].

chapter 7, and that would cause great harm to the creditors and other stakeholders. Specifically:

    a. In chapter 7, the Debtors would not have the cash necessary to protect their intellectual property from legal challenges and/or to take whatever acts are necessary to renew/register their patents.

    b. Liquidation of the Debtors' equipment would destroy existing cell banks and other drug program materials, rending some of the Estates' intellectual property almost certainly worthless.

    c. Asset valuations would fall precipitously, as purchasers in the biotechnology industry are unlikely to purchase early-stage intellectual property as standalone assets—sales typically require the transfer of drug materials, program, and key employees who have knowledge of the products' uses.

    d. The Debtors' China-based subsidiaries and assets would likely be abandoned in a chapter 7 given the costs of monetization.

    e. At least two of the Debtors' foreign subsidiaries would be forced to file insolvency proceedings of their own, further decreasing the likelihood that the Estates would be able to monetize those assets.

    f. The Estates would lack funding to pursue receivables owed to the Estates, reducing the value of those receivables.

    g. Earn-outs may be triggered if a chapter 7 trustee is forced to abandon assets, which may trigger additional liabilities being asserted.

    h. A chapter 7 scenario would likely result in an additional $6 million or more of lease rejection damages.

    i. There might be environmental liabilities if the Estates are unable to properly fund

biohazard cleanup costs.

9. In addition, the Estates would forego the financial benefits of the Sale, which includes $15 million cash, a $5 million note, 7% of the equity of certain companies going forward, and a percentage of litigation recoveries for certain claims that the buyer would purchase.

10. In short, Mr. Culberson fails to consider that creditors and other stakeholders of the Estates would lose considerable progress towards an exit from these Chapter 11 Cases and substantial value if the Court grants the Motion.

11. Because transfer or dismissal of these Chapter 11 Cases at this late stage would be neither in the interest of justice nor convenient to the parties, Mr. Culberson has failed to satisfy his burden. Thus, the Court should deny the Motion.

## B. The Court Should Deny the Motion Because It Clearly Is Not Timely.

12. "If a petition is filed in an improper district, the court, on the ***timely*** motion of a party in interest or on its own motion . . . may dismiss the case or transfer it to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties." Fed. R. Bankr. P. 1014(a)(2) (emphasis added); *see also* 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue."). A party "waives venue by failing seasonably to assert it[.]" *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960); *see also In re Land*, 215 B.R. 398, 403 (B.A.P. 8th Cir. 1997) (If "a timely motion to dismiss for improper venue is not filed, the right to object to venue is waived.") (quoting Fed. R. Bankr.P. 1014, Advisory Committee Note (1987)). Thus, "even if [a] Debtor's bankruptcy case were improperly venued," the Court should find that "the [movants] have not interposed a timely and sufficient objection to venue of the Debtor's case and accordingly have waived that objection." *In re Bavelis*, 453 B.R. 832, 867

(Bankr. S.D. Ohio 2011).

13. To avoid duplication of effort and waste of expended resources, some courts have determined that a motion under Rule 1014 is timely only if filed within sixty days of the petition date. *See*, *e.g.*, *In re Boca Raton Sanctuary Assocs.*, 105 B.R. 273, 275 n. 2 (Bankr. E.D. Pa. 1989) ("We believe that such motions should generally be filed no later than sixty (60) days after the case filing, before the debtor and the original filing court have expended resources in reliance upon the case's presence."). Other courts analyze multiple factors to determine if a motion under Rule 1014 is timely, including the "fragmentation or duplication of administration, increase expense, or delay closing of the estate[.]" *In re Blagg*, 223 B.R. 795, 802 (B.A.P. 10th Cir. 1998). At bottom, a motion under Rule 1014 is not timely if "sufficiently substantial developments" have occurred during the case. *In re Pickett*, 330 B.R. 866, 871 (Bankr. M.D. Ga. 2005). Accordingly, courts overrule Rule 1014 motions filed after plan confirmation. *See*, *e.g.*, *In re Land*, 215 B.R. 398, 403 (B.A.P. 8th Cir. 1997) (affirming bankruptcy court's denial of venue transfer motion brought post-confirmation).

14. Under any of the aforementioned standards, the Motion is not timely. These Chapter 11 Cases have been pending for nearly a full year. In that time, nearly two thousand entries have been entered onto the docket, including the confirmation of the Plan, which was approved nearly unanimously by general unsecured creditors. As such, there have been sufficiently substantial developments in these Chapter 11 Cases, precluding the transfer of venue.

15. Moreover, transfer would likely result in the duplication of effort, increased expenses, and administrative delay. The Debtors and the Creditors' Committee have reached a post-confirmation agreement to sell assets, preserving the prospect of some return to unsecured creditors and maintaining the potential upside of the Debtors' assets for the benefit of all

stakeholders. This value would be lost if these Chapter 11 Cases were converted to cases under chapter 7. The Sale Motion, to approve the sale and corresponding debtor-in-possession financing to fund the sale process, are pending before this Court.

16. Once the Sale is consummated, the Creditors' Committee and the Debtors will focus on completing all conditions to the Effective Date (as defined in the Plan). Dismissal or transfer would interrupt—and given costs may terminate—this process.

17. Attempting to address this obvious timeliness defect, Mr. Culberson claims that the basis for the Motion were discovered "only recently" or "in the past few days[.]" This is not so. The basis for the Motion is that the Debtors represented Scintilla's principal place of business to be a post office box. Mot. at ¶ 7. That is *not* new information. In fact, Scintilla disclosed the post office box address in its petition:

| 4. Debtor's address | Principal place of business | Mailing address, if different from principal place of business |
|---|---|---|
| | 7 Switchbud Place, Suite 192-513 | 4955 Directors Place |
| | Number    Street | Number    Street |
| | P.O. Box 513 | |
| | The Woodlands    TX    77380 | San Diego    CA    92121 |
| | City    State    Zip Code | City    State    Zip Code |
| | | Location of principal assets, if different from principal place of business |
| | Montgomery | |
| | County | Number    Street |
| | | |
| | | City    State    Zip Code |

18. Mr. Culberson also claims that he has just recently uncovered evidence that Scintilla's "business address" is 4955 Directors Place, San Diego, CA 92121. Mot. at ¶ 8. Again, this is not new evidence. It is listed on Scintilla's petition under "Mailing address". Indeed, nearly every pleading filed in these Chapter 11 Cases have stated that fact on the first page.

19. Thus, Mr. Culberson's claim that he only now learned that Scintilla represented the

post office address above as its principal place of business lacks merit. He has been on notice since February 13, 2023.

20. Attempting to minimize the timeliness requirement, Mr. Culberson contends that the Court does not have discretion to retain these cases. Mot. at ¶ 9. That statement is false. Both section 1406 of title 28 and Rule 1014 explicitly require venue challenges to be timely. Courts will retain jurisdiction—even if there is no basis for venue—if the challenge is untimely. *See Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 244 (5th Cir. 2017) (denying request to transfer venue after deeming venue challenge waived); *Resol. Tr. Corp. v. Sonny's Old Land Corp.*, 937 F.2d 128, 130 (5th Cir. 1991) (rejecting challenge to venue, finding that movant failed to "assert a seasonable objection and thereby waived the defect.").

21. Indeed, the cases cited by Mr. Culberson for this position expressly acknowledge that section 1406 of title 28 and Rule 1014 authorize transfer or dismissal ***only if the movant files a motion timely***. *See, e.g.*, *Thompson v. Greenwood*, 507 F.3d 416, 422 (6th Cir. 2007) ("Thus, where a bankruptcy case is brought in an improper venue, and an interested party *timely* objects, the court must either dismiss it or transfer it to a jurisdiction of proper venue in accordance with § 1406, notwithstanding any differing language in Rule 1014(a)(2).") (emphasis added); *In re Sorrells*, 218 B.R. 580, 589 (B.A.P. 10th Cir. 1998) ("[I]t is clear that objections to venue may be waived if not *timely* made.") (emphasis added).

22. In short, Mr. Culberson failed to file the Motion timely. A year has passed since the Petition Date and the plan has been confirmed. Thus, the Court should not dismiss these Chapter 11 Cases or transfer venue.[6]

---

[6] Given that all pertinent evidence has been available to all parties in interest for over a year, the Creditors' Committee presumes that the official committee for equity holders (the "Equity Committee") was aware of any potential venue issues and chose not to bring a motion to transfer venue motion earlier. The Creditors' Committee considered the question of venue and could *not* conclude that doing so would be beneficial to the Estates. More

**II.       If the Court Finds Transfer of Venue Appropriate, It Should Wait Until After the Effective Date to Do So.**

23. To the extent applicable, section 1406 of title 28 "requires only that the Court dismiss or transfer. It does not say when and does not tie the hands of a court in mitigating the resulting damage to the creditor community." *In re Houghton Mifflin Harcourt Pub. Co.*, 474 B.R. 122, 137 (Bankr. S.D.N.Y. 2012). So, if the Court intends to grant the Motion, it should do so in a manner that "minimizes" the "harm to creditors and other stakeholders[.]" *Id.*

24. In *Houghton Mifflin*, the court agreed with the movant that the bankruptcy case should be transferred to a different venue. There, the chapter 11 case had included a prepackaged plan approved by its creditors. *Id.* at 124. The United States trustee *timely* brought a motion to transfer venue. Despite agreeing that venue was improper, and the motion was timely, the court determined that the interests of creditors would best be served if the timing of such transfer occurred after the effective date. *Id.* at 137.

25. Like *Houghton Mifflin*, if the Court is inclined to grant the Motion, it should not do so until after the Effective Date to minimize harm to creditors and other stakeholders.

**III.      Resolution of These Chapter 11 Cases**

26. Implicit in the Motion is the idea that equity holders like the movant, Mr. Culberson, would fare better were if these chapter 11 cases were to proceed in another jurisdiction at this time. There is no evidence to support that position. Indeed, the evidence is to the contrary given the events leading up to these Chapter 11 Cases, the developments in these Chapter 11 Cases, and where the Estates are presently.

**A.       Events Leading Up to the Chapter 11 Cases Show a Company**

---

specifically, at the time of the Creditors' Committee's appointment, the Court had already approved debtor in possession financing, was familiar with the assets and potential claims in these cases and understood the interests of the various parties including the Creditors' Committee's concerns about Debtors' prepetition management, among other things. Moreover, given the Estates' tight liquidity, discussed below, time was of the essence.

- 9 -

**Desperate for Liquidity Without Any Marketable Product.**

27. Equity holders in this case invested nearly $500 million and yet, unfortunately, the Debtors were unable to develop a product that they could bring to market. Indeed, throughout these Chapter 11 Cases, the Debtors have not received any funds from the commercialization of any of their products in the market.

28. To complicate matters, before commencing these Chapter 11 Cases, Sorrento improperly distributed shares of its (almost) wholly owned subsidiary, Scilex Holding Company, to its shareholders.[7] Had those shares not been transferred, the Debtors would have been able to use such shares to generate additional cash, and thus would have had additional runway for the bankruptcy process, and /or would have been able to pay something to unsecured creditors (who, as a matter of law, have priority over equity holders).

29. To complicate matters even further, shortly before commencing these cases, Sorrento repaid over thirty million dollars to an unsecured creditor outside of the ordinary course of business—only to have to borrow money post-petition to operate in the bankruptcy case. Had the Debtors not repaid that unsecured creditor, it would not have needed an emergency DIP loan.

30. In addition, the Estates are owed money by third parties, including Lee Pharmacy. Had such third parties paid the Estates what they owe, the Estates may have had a longer runway. But such third parties have not paid, and, in the case of Lee Pharmacy, are denying any current obligation to pay.[8]

31. In short, the Debtors were unable to successfully develop the products with the money that shareholders had invested and took actions that impaired liquidity unnecessarily such that the

---

[7]   As the Creditors' Committee has previously disclosed, those shares should not have been distributed given the lack of consideration therefor, and will be the subject of a further action.
[8]   In the event that the proposed Sale is approved, the Estates would preserve all claims against Lee Pharmacy and other such third parties who have failed to make payments owed.

Debtors entered bankruptcy on an emergency basis without adequate liquidity or a defined exit strategy.

32. The Creditors' Committee also understands that Debtors rejected certain transactions prepetition and may have backed out of a deal or two, decisions that, in retrospect, appear to have been most unfortunate.

> **B.  Events During These Chapter 11 Cases Improved the Position of Creditors and Equity Holders but Did NOT Solve the Debtors' Underlying Problem—the Failure to Bring Products to The Market.**

33. Given their severe liquidity issues, at the onset of these Chapter 11 Cases the Debtors immediately sought and obtained an emergency debtor-in-possession loan [Docket No. 74] (the "Initial DIP"). The Initial DIP provided only a few months of liquidity, with proceeds expected to be exhausted by June 2023. Through a series of asset sales, cost-cutting, collaboration with various parties, and other efforts, the Debtors were able to extend the runway into 2024.

34. In addition, creditors and equity holders benefited greatly from the settlement that the Debtors reached with the Nant party litigants which reduced claims against the Estates by more than $170 million—a claim that would have had to been paid ahead of shareholder interests.

35. It also bears noting that the Debtors' financial advisor, Moelis & Company, has led a robust sale effort that, unfortunately, did not result in enough material sales. On several occasions, there were buyers who indicated a willingness to buy, only to back out after diligence and or for unknown reasons. Moelis' process was multi-pronged, seeking to monetize Sorrento's remaining holdings in Scilex, raise exit financing to consummate a reorganization, and sell non-Scilex assets, in parallel. Much time and effort were expended in pursuit of a reorganization, which could have resulted in some reinstatement of equity. The Debtors and Moelis kept the Equity Committee and Creditors' Committee informed about these efforts every step of the way.

      **C.**      **The Current Status of These Chapter 11 Cases Does Not Show How Equity Holders Like Mr. Culberson Would Benefit by Transferring Venue.**

36. So where does that leave us now? In addition to the equity investment that did not result in any commercialization of products, the Debtors incurred substantial liabilities. The Creditors' Committee estimates that unsecured claims exceed $130 million and may exceed $300 million, depending on rejection damages, earnout provisions, litigation against Debtors, and other incurred liabilities. Those creditor claims are required to be paid ahead of the equity interests.

37. As has been reported thought these Chapter 11 Cases, including at the confirmation hearing, equity holders are likely out of the money. Indeed, creditor recoveries may be very low depending on the success of potential litigation and the success of the proposed buyer in the Sale in developing the Debtors' intellectual property.

38. As explained above, the Sale Motion, including the proposed debtor-in-possession financing, provides the only pathway to a recovery by creditors and, maybe, equity as well. Transferring venue, also as explained above, would threaten to eliminate that pathway.

**IV.**    **Conclusion**

39. The Court should deny the Motion because: (a) it would not be in the interest of justice or convenient to the parties; and (b) the Motion is not timely, having been filed approximately a year after the Petition Date and after Plan confirmation.

[Remainder of page intentionally left blank.]

Dated:  February 22, 2024

Respectfully submitted,

By:  Ryan Manns

**NORTON ROSE FULBRIGHT US LLP**

Ryan Manns
(Texas SBT # 24041391)
Julie Harrison
(Texas SBT# 24092434)
1301 McKinney St., Suite 5100
Houston, TX 77010
Tel: (713) 651-5151
Email: ryan.manns@nortonrosefulbright.com
Email: julie.harrison@nortonrosefulbright.com

– and –

**MILBANK LLP**

Nelly Almeida (admitted *pro hac vice*)
55 Hudson Yards,
New York, NY 10001
Tel: (212) 530-5271
Email: nalmeida@milbank.com

Mark Shinderman (admitted *pro hac vice*)
2029 Century Park East, 33rd Floor,
Los Angeles, CA 90067
Tel: (424) 386-4411
Email: mshinderman@milbank.com

*Counsel to the Official Committee of Unsecured Creditors*

**CERTIFICATE OF SERVICE**

I, Ryan Manns, hereby certify that on the 22nd day of February, 2024, a copy of the foregoing *Opposition of the Official Committee of Unsecured Creditors to (A) Timothy Culberson's Motion to Dismiss or Transfer Venue Pursuant to Rule 1014(A)(2) and (B) United States Trustee's Motion to Transfer Venue or Dismiss Pursuant to 28 U.S.C. § 1408 and Fed. R. Bankr. P. 1014(A)(2)* was served via Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

By: */s/ Ryan Manns*
     Ryan Manns