IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| *In re:* | Chapter 11 |
| SORRENTO THERAPEUTICS, INC., *et al.*,[1] | Case No. 23-90085 (CML) |
| Debtors. | (Jointly Administered) |
|  | Re: Docket No. 1884 |

**ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Sorrento Therapeutics, Inc. and Scintilla Pharmaceuticals, Inc. (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363, 364, 503, 506, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-1(b), 4002-1 and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas and the Procedures for Complex Chapter 11 Bankruptcy Cases (together, the "Local Bankruptcy Rules")

---

[1] The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842) ("Sorrento") and Scintilla Pharmaceuticals, Inc. (7956) ("Scintilla"). The Debtors' service address is: 9380 Judicial Drive, San Diego, CA 92121.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the DIP Note (as defined below), as applicable.

US-DOCS\148760738.3148760738.4

promulgated by the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"), seeking entry of this final order (this "Final Order"), among other things:

(a) authorizing the Debtors to obtain postpetition financing on a superpriority senior secured basis (the "DIP Facility", and the loans made, advanced or deemed advanced thereunder, the "DIP Loans") in the form of a term loan facility in an aggregate principal amount of up to $5,000,000 (plus any and all amounts capitalized thereon) (the "DIP Facility"), comprised of (i) $3,000,000 of DIP Loans (the "First Draw") advanced within two Business Days of the entry of this Final Order, and (ii) $2,000,000 (the "Second Draw") to be made available to the Debtors on March 1, 2024, in accordance with and subject to the terms and conditions (including, without limitation, any conditions precedent to each of the DIP Loans) set forth in that certain *Debtor-in-Possession Term Loan Promissory Note and Security Agreement*, substantially in the form attached to this Final Order as **Exhibit 1** (as may be amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Note", and, together with the Approved Budget (as defined herein) and all other agreements, guarantees, pledge, collateral and security agreements, deeds, charges, control agreements, instruments, certificates, notes, any separate fee letter agreements between any of the Debtors, on the one hand, and the DIP Lender, on the other hand, and other documents executed, filed and/or delivered in connection therewith, (each as amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof), collectively, the "DIP Loan Documents"), by and among the Debtors, as borrowers (the "DIP Borrowers"), each of the Guarantors (as defined in the DIP Note) (collectively, the "DIP Guarantors", and together with the DIP Borrowers, the "DIP Loan Parties"), ~~BioVintage~~Vivasor, Inc., a ~~California~~Delaware corporation, as the lender (together with its successors and permitted assigns, the "DIP Lender"), and this Final Order;

(b) authorizing the DIP Loan Parties to (i) execute, deliver, and perform under the DIP Note and each of the DIP Loan Documents, (ii) incur all loans, advances, extensions of credit, financial accommodations, indemnification and reimbursement obligations and other obligations, and pay all principal, interest, premiums, fees, costs, expenses, charges and all other amounts payable under the DIP Loan Documents, including without limitation, all Obligations (as defined in the DIP Note, and referred to herein as the "DIP Obligations") in accordance with the terms of the DIP Loan Documents, and (iii) perform such other and further acts as may be necessary, required or desirable to implement and effectuate the terms of this Final Order, the DIP Loan Documents and the transactions contemplated hereunder and thereunder;

(c) authorizing the DIP Borrowers to incur, and the DIP Guarantors to jointly and severally guarantee, all DIP Obligations, in accordance with this Final Order and the DIP Loan Documents;

(d) granting to the DIP Lender the DIP Liens (as defined below) in all Collateral (as defined in the DIP Note, and referred to herein as the "DIP Collateral"), as set forth in this Final Order, subject only to the Carve Out, any Prior Permitted Liens (as defined below), subject to the relative priorities set forth in this Final Order and the DIP Loan Documents;

(e) granting to the DIP Lender allowed super-priority administrative expense claims against each of the Debtors, on a joint and several basis, in respect of all DIP Obligations, subject in each case to the Carve Out, as set forth in this Final Order and the DIP Loan Documents;

(f) authorizing the Debtors to use the proceeds of the DIP Facility and the DIP Collateral, including cash collateral, as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), solely in accordance with the terms and conditions set forth in this Final Order and the DIP Loan Documents, including the Approved Budget (as defined below), subject to any variances expressly permitted herein and under the DIP Note;

(g) approving the Debtors' waiver of the right to surcharge the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise;

(h) approving the Debtors' waiver of the equitable doctrine of "marshaling" and other similar doctrines with respect to the DIP Collateral; and

(i) modifying or vacating the automatic stay imposed by sections 105(a) and 362 of the Bankruptcy Code or otherwise, to the extent necessary, required or desirable to implement and effectuate the terms and provisions of this Final Order and the DIP Loan Documents, as set forth herein, waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Final Order, providing for the immediate effectiveness of this Final Order, and granting related relief.

The Court, having considered the Motion, the DIP Loan Documents, the exhibits attached thereto, the DIP Note, and the evidence submitted and arguments proffered or adduced at the hearing on the Motion **on February 26, 2024** (the "Hearing"); and due and proper notice of the Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Local Bankruptcy Rules; and it appearing that no other or further notice need be provided; and upon the record of the Chapter 11 Cases; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; the Court

by reference (without duplication) and which shall continue in effect for the duration of these Chapter 11 Cases**; *provided, however*, that the Debtors are not required to fund the Carve Out Trigger Notice Reserve (as defined in the Prior Final DIP Orders) for purposes of this Final Order**. The DIP Liens and the DIP Superpriority Claims shall be subject and subordinate to payment of the Carve Out and any transaction fee or the like owed to Moelis & Company LLC or M3 Advisory Partners, LP. The Carve Out shall be senior to all claims and liens over all assets of the Debtors, including any DIP Collateral, as set forth in this Final Order, other than the Prior Permitted Lien in the BOA Collateral Account.

21. *Limitations on Use of DIP Collateral, Cash Collateral, Carve Out or Other Funds*. Notwithstanding anything contained in this Final Order or any other order of the Court to the contrary, no DIP Collateral, DIP Loans, Cash Collateral, proceeds of any of the foregoing, or any portion of the Carve Out may be used (including to pay professional fees) by any of the DIP Loan Parties, the Official Committees, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any Successor Cases, or any other party-in-interest (including without limitation any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases), directly or indirectly, to:

> (a) investigate (including by way of examinations or discovery proceedings, whether formal or informal), prepare, initiate, commence, support or prosecute (or finance the preparation, initiation, commencement, support or prosecution of) any claim, counterclaim, cross-claim, cause of action, suit, arbitration, application, motion, contested matter, objection, defense, adversary proceeding, litigation or other proceeding of any kind or nature (whether for monetary, injunctive, affirmative relief or otherwise) (i) against the DIP Lender or its representatives (each in their capacities as such), (ii) objecting to, challenging, contesting, or raising any defense to, the amount, validity, enforceability, perfection, priority, extent or scope of the claims, liens and security interests granted under this Final Order or the DIP Loan Documents, (iii) asserting avoidance (whether under Chapter 5 of the Bankruptcy Code or under applicable law (including any applicable state law Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law)), any so-called "lender liability" claims, or any other any claim or cause of action seeking reduction,

**DEBTOR-IN-POSSESSION**
**TERM LOAN PROMISSORY NOTE AND SECURITY AGREEMENT**

Up to $5,000,000                                                                Dated as of February [__], 2024

FOR VALUE RECEIVED, and subject to the terms and conditions set forth herein, SORRENTO THERAPEUTICS, INC. ("Sorrento" or the "Borrower"), a Delaware corporation, hereby unconditionally promises to pay to the order of ~~BioVintage~~Vivasor, Inc., a ~~California~~Delaware corporation (in such capacity, together with its successors and assigns in such capacities, collectively, the "Lender"), the aggregate of any and all amounts the Lender has disbursed to the Borrower and that remain outstanding pursuant to this Debtor-in-Possession Term Loan Promissory Note and Security Agreement (as the same may be amended, modified, renewed, restated or supplemented from time to time, this "Note"), not to exceed the aggregate principal amount at any time outstanding of up to five million dollars ($5,000,000) (plus any amounts that are added to the principal in accordance with the terms hereof), together with all accrued and unpaid interest and fees thereon, as provided in this Note.  This Note is being executed pursuant to the Final Order, the terms of which are fully incorporated herein.

On February 13, 2023 (the "Petition Date"), the Borrower and Scintilla (as defined below) filed voluntary petitions ("Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., as amended (the "Bankruptcy Code").  The Chapter 11 Cases are being jointly administered under Case No. 23-90085 (CML).  The Borrower and Scintilla continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Borrower and the Guarantors (as defined below) have requested that the Lender make loans to the Borrower from time to time on the terms, and subject to the conditions, set forth in this Note and the Final Order.  The Borrower intends to utilize such loans to fund its working capital requirements and certain costs and expenses of administration of the Chapter 11 Cases.

1.     Term Loans.

       (a)     Subject to the terms and conditions in Section 2(a) hereof, the Lender hereby agrees to make available to the Borrower in a single draw within two Business Days of the entry of the Final Order a term loan (the "Initial Term Loan") in an aggregate principal amount of three million dollars ($3,000,000).  Any portion of the Initial Term Loan that is repaid may not be re-borrowed.

       (b)     Subject to the terms and conditions in Section 2(b) hereof, the Lender hereby agrees to make available to the Borrower in a single draw on March 1, 2024 a term loan (the "Subsequent Term Loan"; together with the Initial Term Loan, collectively, the "Term Loans") in an aggregate principal amount equal to the Subsequent Term Loan Amount (as defined below).  Any portion of the Subsequent Term Loan that is repaid may not be re-borrowed.

       (c)     The entire unpaid balance of the Term Loans and all other Obligations shall be immediately due and payable in full in cash in immediately available funds on the Maturity Date.

       (d)     The Borrower shall utilize the proceeds of Term Loans to fund working capital requirements and costs and expenses of administration of the Chapter 11 Cases, in each case, in accordance with the Approved Budget.