IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **In re:** | Chapter 11 |
| **SORRENTO THERAPEUTICS, INC.,** *et al.*,[1] | Case No. 23-90085 (CML) |
| **Debtors.** | (Jointly Administered) |

**UNITED STATES TRUSTEE'S REPLY IN SUPPORT OF MOTION
TO TRANSFER VENUE OR DISMISS PURSUANT TO
28 U.S.C. § 1408 AND FED. R. BANKR. P. 1014(A)(2)**

[Relates to ECF Nos. 1879, 1900, 1960]

TO THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), submits this reply (the "Reply") in further support of his motion to transfer the venue of, or in the alternative to dismiss, these chapter 11 cases pursuant to 28 U.S.C. §§ 1406 and 1408 and Fed. R. Bankr. P. 1014(a)(2) (ECF No. 1879) (the "Motion") and in response to the objections to the Motion filed by the Debtors (ECF No. 1900) (the "Debtor Objection") and the Official Committee of Unsecured Creditors (ECF No. 1960) (the "Committee Objection").[2]

**I.    INTRODUCTION**

1.      This is a case of forum shopping and venue manipulation taken to a new and unprecedented extreme.  It is undisputed that the only possible connection between the Debtors

---

[1] The Debtor entities in these chapter 11 cases, along with the last four digits of each Debtor entity's federal tax identification number, are: Sorrento Therapeutics, Inc. (4842) and Scintilla Pharmaceuticals, Inc. (7956). The Debtors' service address is: 4955 Directors Place, San Diego, CA 92121.

[2] Except as otherwise indicated, all capitalized terms shall have the meaning ascribed to them in the Motion.

and the Southern District of Texas before the filing of these cases were two economically insignificant transactions by Scintilla on the very eve of bankruptcy—the rental of a small UPS Mailbox that Scintilla admits was not used as its mailing address and a cash deposit into a New York chartered bank that maintained a non-depository, representative office in Houston—and it is based on these transactions alone that the Debtors contend venue is proper.[3]  But the Debtors cannot identify a single reported decision, in this District or elsewhere, in which a mere mailbox or bank account was sufficient to create venue under 28 U.S.C. § 1408, nor can they reconcile their theories with controlling circuit law.  Moreover, the implications of the Debtors' arguments are extraordinary.  If venue in this case were proper, any corporate debtor could just as easily manufacture venue in any judicial district in the country, a result that would encourage unlimited forum shopping and eviscerate the congressionally imposed limitations on bankruptcy venue.

2.	The Debtors and the Committee also attack the U.S. Trustee and another movant for their supposed delay in contesting venue and argue that their motions should be denied as untimely.  But any delay is due to the Debtors' own lack of candor and their incomplete and misleading disclosures in their petitions and thereafter.  On the face of Scintilla's bankruptcy petition, it recited a routine claim for venue based on a Texas principal place of business.  It was not until much later (and through the efforts of Mr. Culberson) that the essentially fictitious nature of that place of business was revealed.  Nor did the Debtors ever disclose that this "place of business" had existed, at most, for only a few hours prior to filing the bankruptcy petition or that the alleged Texas "bank" where Scintilla supposedly did business was a corporate service center not equipped or legally permitted to accept deposits.  Even if these facts could have been

---

[3] In contrast to the Debtors, the Committee Objection relies only on the interest of justice and the convenience of the parties and does not allege that venue in these cases is proper.

discovered earlier, the Debtors ignore that it was their obligation to set forth fully the relevant facts behind their venue choice, particularly where, as here, that venue is based on a novel and untested legal theory. The Court should not reward or encourage gamesmanship by denying the Motion based on the Debtors' own lack of disclosure.

3. Finally, although the Debtors and the Committee urge the Court to deny the Motion because of the alleged inconvenience to the parties and the advanced state of this case, those factors are not relevant to a motion to transfer venue under 28 U.S.C. §§ 1406 and 1408, which mandates transfer or dismissal. In any case, those concerns are misplaced. These cases have already been reassigned to a second judge within this District; they can just as easily be transferred to a third judge outside this District. A transfer will not have the effect of vacating any orders already entered and will not require these chapter 11 cases to be relitigated from the start. And the parties in interest in these cases are based outside of Texas or already have out-of-state counsel, with the sole exception of Mr. Culberson, who supports a change of venue. Therefore, even if the Court had discretion to retain these cases (which it does not), it should decline to do so.

## II.   REPLY TO OBJECTIONS

**A.   Texas Was Not the "Principal Place of Business" of Scintilla**

4. The Supreme Court has defined "principal place of business" as a corporation's "nerve center," that is, as its "actual center of direction, control, and coordination." *See Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). The Debtors do not contend that the UPS Mailbox ever was, or ever could have been, the "actual center" of any corporate direction or control for Scintilla. Indeed, in his deposition testimony Dr. Ji (the sole director and officer of Scintilla) admitted that he had never visited the UPS Mailbox and was not aware of whether the UPS Mailbox had ever

3

received mail.[4] Instead, the Debtors suggest that the Court apply a "last business activity" test for Scintilla's principal place of business, citing a pre-*Hertz* decision, *Harris v. Black Clawson Co.*, 961 F.2d 547, 551 (5th Cir. 1992). Debtors argue Scintilla's last—and only—business activities in the 180 days before filing for bankruptcy were its mailbox rental and its opening of a bank account, both of which allegedly occurred in Texas. Under their theory, Scintilla established a principal place of business in the Southern District a few hours before bankruptcy and had no place of business anywhere else before then, making venue proper in Houston. *See* Debtor Objection at 4.

5. That argument, however, is based on a false premise: that Scintilla had no place of business until it decided to file for bankruptcy. Even if Scintilla were not engaged in active business operations on the petition date, it maintained its corporate existence, including filing annual reports with the California Secretary of State, and maintained a governance structure in the person of Dr. Ji as its sole officer and director, who was empowered to make decisions regarding Scintilla's future, including the decision to file for chapter 11 relief. *See* Meghji Decl. at 5, Motion Exhibits B, C, D. Under the "nerve center" test, those activities are all that are required for a principal place of business. *See Smith v. 3CI Complete Compliance Corp.*, No. EP-06-CV-00282KC, 2007 WL 2973486, at *4 (W.D. Tex. Sept. 13, 2007) (holding that even though company had "ceased all business activities and became a passive instrument of its parent company… it nonetheless retained a 'nerve center' in Illinois from which its officers and board of

---

[4] The U.S. Trustee deposed Mohsin Meghji, the Debtors' Chief Restructuring Officer, on March 5, 2024, and Dr. Ji and Drew Lockard, a representative of Stretto, on March 6, 2024. Based on Dr. Ji's deposition, it is not clear that he even knew about the P.O. Box until recently.

4

directors could make decisions regarding its future"). As demonstrated in the Motion, that principal place of business was in California. *See* Motion at 8.

6. Even if *Harris* remained valid law after *Hertz*, that decision does not support placing Scintilla's principal place of business in Houston. In *Harris,* the Fifth Circuit mentioned the "last business activity" test as potentially relevant to a company's principal place of business but declined to rely on that factor in its decision and rejected the argument that the place of last business activity was determinative. *See Harris,* 961 F.2d at 551. More importantly, the court noted that the "last business activity" test would usually be equivalent to the company's final principal place of business while it was still active and cautioned against applying this test with the "odd result" that an inactive company's principal place of business became a place that was never its principal place of business while it was active. *Id.* (noting that "Congress cannot have intended to produce this result"). But this is precisely the outcome that the Debtors argue for here.

7. Nor does *Harris* depart from the general rule, later stated in *Hertz*, that the most significant factor in determining a company's principal place of business is the location of its nerve center. *Id.* at 547 (noting that "total activity" test "includes … the 'nerve center' test"). Thus, even if the venue analysis were limited to Scintilla's activities in the days and hours immediately before the bankruptcy filing, as the Debtors suggest, the relevant question under both *Harris* and *Hertz* is not where those activities took place but from where they were directed, coordinated, and controlled. *See Hertz*, 559 U.S. at 77. In this case, that place could only have been California, the location of Scintilla's sole officer, director, and operating affiliate. *See Smith*, 2007 WL 2973486 at \*4. To conclude otherwise would require this Court to equate a mail drop—a mail drop that was not even the company's mailing address—with a company's nerve center, a form of manipulation that the Supreme Court expressly cautioned against in *Hertz*. *See Hertz,* 559 U.S. at

597 (noting that purpose of principal place of business test would be subverted if companies were permitted to designate "nothing more than a mail drop box [or] a bare office with a computer" as their nerve center).[5]

8. Lastly, the Debtors' theory would lead to absurd results that undermine the purpose of 28 U.S.C. § 1408. If Scintilla could create venue in Texas by simply renting a mail drop the day before bankruptcy, so, too, could any other non-operating prospective bankruptcy debtor—in this or in any other district of their choosing. And under 28 U.S.C. § 1408(2), any affiliate of that shell debtor could follow it to the chosen district. The result would be nationwide bankruptcy venue for any corporate debtor that has one non-operating affiliate.[6] There is no evidence or reason to believe that Congress intended section 1408's venue rules to be so easily circumvented or manipulated.

---

[5] In keeping with the Supreme Court's admonition in *Hertz*, courts have consistently rejected efforts to artificially manufacture a principal place of business for venue or jurisdictional purposes. *See, e.g., In re Zimmer Holdings, Inc.,* 609 F.3d 1378, 1381 (Fed. Cir. 2010) (holding that plaintiff could not change principal place of business by transfer of its files to offices of client); *Uviado, LLC ex rel. Khan v. U.S. ex rel. I.R.S.*, 755 F. Supp. 2d 767, 787 (S.D. Tex. 2010) (lease of "virtual" office space insufficient to create principal place of business); *In re Silicon Valley Bank (Cayman Islands Branch)*, No. 24-10076 (MG), 2024 WL 734735, at *12 (Bankr. S.D.N.Y. Feb. 22, 2024) (mail drop did not establish presence of entity in foreign jurisdiction for chapter 15 purposes). The same concerns are equally present here.

[6] This venue manipulation could be further expanded if the inactive affiliate is incorporated on the eve of bankruptcy. For example, in *In re Patriot Coal Corp.*, 482 B.R. 718 (Bankr. S.D.N.Y. 2012), even though the court found that, unlike these cases, "[n]o party disputes that section 1408 of title 28 has been satisfied," *id.* at 741, it nevertheless ruled under the discretionary provisions of 28 U.S.C. § 1412 that creating shell affiliates "solely for the purpose of establishing venue is not the thing which the statute intended." *Id.* at 744 (internal quotes omitted). Moreover, "the creation of facts to fit the statute is a far cry from taking advantage of the facts as they existed before the Debtors embarked on their path to a chapter 11 filing." *Id.* at 746.

B.  **Scintilla's Principal Assets Were Not Located in Texas**

1.  **The Debtors Cannot Rely on a Basis for Venue That Was Not Asserted in Their Petitions**

9.  Although Scintilla's petition, on its face, relied only on its alleged principal place of business as a basis for venue, *see* Motion at 9, the Debtors belatedly argue that venue might instead have been proper based on Scintilla's place of principal assets, which is alleged to be a Texas bank holding certain cash deposits. But it was Scintilla's burden to identify a basis for venue in its petition. *See In re Townsend*, 84 B.R. 764, 768 (Bankr. N.D. Fla. 1988) ("at least one of the bases for venue enumerated in 28 U.S.C. § 1408 should be clearly stated on the face of the petition"); *see also In re FRG, Inc.*, 107 B.R. 461, 470 (Bankr. S.D.N.Y. 1989) (refusing to consider possible bases for venue not asserted by debtor in petition).

10.  Here, Scintilla left blank the box of its chapter 11 petition for the address of its principal assets, thereby representing that it had no principal place of assets that was different from its alleged principal place of business at the UPS Mailbox. *See* Motion at 4. Scintilla's bankruptcy schedules, filed more than three months later, listed the Signature Bank account as an asset but did not list any alleged location. *See* ECF No. 712 at 3. Nothing in the petition or the schedules put parties on notice that Scintilla was relying on its bank account, or indeed anything other than its alleged principal place of business, to establish venue—an argument that the Debtors raised for their first time in the Debtor Objection.[7] But it is not the obligation of the U.S. Trustee or other

---

[7] At the section 341 meeting, conducted on May 30, 2023, the Debtors' counsel stated that Scintilla "has a bank account in Houston" but was unable to identify the branch at which this account was located. *See* Debtor Objection at 46. That statement was made in response to a question about the location of Scintilla's principal place of business. At no point during the section 341 meeting did the Debtors discuss the principal location of their assets or indicate that they were relying on asset location as an alternative basis for venue.

7

parties to scour the docket for feasible reasons that venue is proper or to rebut legal arguments that the Debtor had not yet made. Had the Debtors announced that they were relying on Scintilla's bank account to establish venue at the outset of the case, the U.S. Trustee and other parties could have raised objections or otherwise responded at that time. But the Debtors did not identify the bank account as a source of venue in their petition, and they are now estopped from relying on a different theory. *See Browning Mfg. v. Mims* (*In re Coastal Plains, Inc.*), 179 F.3d 197, 213 (5th Cir. 1999) (holding that doctrine of judicial estoppel applies to statements made in debtor's bankruptcy petitions and schedules).

> **2. Under the Common Law Test for Intangible Assets, The Situs of Scintilla's Bank Accounts for Venue Purposes is Scintilla's Domicile or Principal Place of Business**

11. But even if the Debtors could assert venue based on their "place of assets," that argument fails because Scintilla's bank account was not located in the Southern District of Texas for venue purposes under either of the potentially applicable tests.

12. "In this wired age, the location of an intangible, especially a bank account, is a metaphysical question. By and large, bank deposits exist as electronic impulses embedded in silicone chips. In a sense, therefore, bank funds are both everywhere and nowhere." *Yayasan Sabah Dua Shipping SDN BHD v. Scandinavian Liquid Carriers Ltd.*, 335 F. Supp. 2d 441, 448 (S.D.N.Y. 2004). In general, courts have employed two different approaches to determining the situs of a bank account.

13. The first approach "flow[s] from the common-law concept of '*mobilia sequuntur personam*,' according to which intangible personal property is found at the domicile of its owner." *Delaware v. New York*, 507 U.S. 490, 503 (1993) (internal quotation omitted); *United States v. Webster Rec. Corp.*, 208 F. Supp. 412, 415 (S.D.N.Y. 1962) (for purposes of filing tax lien, bank account was located in taxpayer's domicile).

14. Under the second approach, courts have looked to the physical location of the bank at which the account was created. *See, e.g., Power Rental Op Co. v. V. I. Water & Power Auth.*, No. 20-1015, 2021 WL 9881137, at *8–9 (M.D. Fla. July 6, 2021) (garnishment); *Yayasan Sabah Dua*, 335 F. Supp. 2d at 449 (attachment under maritime law); *In re Iglesias*, 226 B.R. 721, 723 (Bankr. S.D. Fla. 1998) (debtor eligibility under 11 U.S.C. § 109).

15. In deciding the location of an intangible, courts must consider the purpose of the underlying law being applied. As future Justice Cardozo noted, "[t]he situs of intangibles is in truth a legal fiction, but there are times when justice or convenience requires that a legal situs be ascribed to them . . . . At the root of the selection is generally a common sense appraisal of the requirements of justice and convenience in particular conditions." *Severnoe Sec. Corp. v. London & Lancashire Ins. Co.,* 255 N.Y. 120, 123–24, 174 N.E. 299, 300, *reargument denied, remittitur amended*, 255 N.Y. 631, 175 N.E. 345 (1931); *see also Tabacalera Severiano Jorge, S. A. v. Standard Cigar Co.,* 392 F.2d 706, 714–15 (5th Cir. 1968) (noting that situs of intangible "may be in one place for ad valorem tax purposes . . . it may be in another place for venue purposes, i.e., garnishment . . . it may be in still a different place when the need for establishing its true situs is to determine whether an overriding national concern, like the application of the Act of State Doctrine is involved").

16. No reported decision has discussed the situs of a bank account for purposes of bankruptcy venue under 28 U.S.C. § 1408.[8] The purpose of that statute, however, weighs heavily

---

[8] The Debtors cite *Iglesias* as authority that a bank account is "located in the district where the bank at which the account was opened." Debtor Objection at 6–7. But *Iglesias* was a case decided under section 109 of the Bankruptcy Code, where the issue before the court was whether the person qualified to be a debtor in the United States; it did not address venue within the United States under 28 U.S.C. § 1408. As courts have noted, these sections serve very different purposes and raise different statutory considerations. *See, e.g.*, *In re B.C.I. Fins. Pty Ltd.,* 583 B.R. 288, 295–96

9

in favor of the common law rule of siting the account in the customer's domicile. The rationale for bankruptcy venue based on place of assets is that judges and trustees will often be able to more efficiently supervise or administer properties that are nearby. As one court has explained,

> But, for the hands-on sale of income-generating real estate, physical plant, machinery, equipment, and the like, the advantage for an administering trustee lies in physical proximity to the asset. Physical inspection is more convenient; preexisting ties to knowledgeable local professionals, agents, and property managers can be used more quickly; and a trustee's conversance with local markets and local legal governance will enable more adept and reliable administrative decisions to be made more quickly.

*In re Murrin*, 461 B.R. 763, 788–89 (Bankr. D. Minn.), *rev'd and remanded on other grounds*, 477 B.R. 99 (D. Minn. 2012).

17. The argument for local administration, however, is far weaker when the debtor's principal asset is not a factory or a parcel of real estate but is, instead, money in a bank account that can be accessed from anywhere. In that case, a venue rule based on the bank's location would impede, rather than promote, local administration, because a debtor may use a bank in a place remote from its customers, employees, and other properties. For this reason, the location of bank accounts is usually ignored as a factor when considering a discretionary transfer of venue under 28 U.S.C. § 1412. *See, e.g.*, *In re AnthymTV Co.*, 650 B.R. 261, 281 (Bankr. D.S.C. 2023) (declining to consider location of bank assets for purposes of 28 U.S.C. § 1412 where those assets could be accessed from anywhere); *In re Enron Corp.*, 284 B.R. 376, 392 (Bankr. S.D.N.Y. 2002) (noting that location of assets was not an important factor where assets did not consist of real property). And in contrast to cross-border cases such as *Iglesias*, this Court's authority over Scintilla's bank accounts is the same regardless of whether those accounts are deemed to be located

---

(Bankr. S.D.N.Y. 2018) (holding that decision involving venue under title 28 was not persuasive authority in contested matter under section 109).

in Texas, New York, or some other state. The policy considerations that have motivated exceptions to the common law in other contexts are absent here, and the Court should follow the rule that the location of Scintilla's intangible bank assets follows Scintilla's location. As discussed, that location is either California or Delaware, but not Texas.

### 3. Alternatively, Scintilla's Deposits Were Not Held in a Bank in this District

18. Even if the Court follows the "bank location" test for the situs of Scintilla's Signature Bank account, the result would be the same. Under this test, "the mere fact that one has a checking account in a bank that happens to have an operation in [the] district does not in itself provide a valid basis for venue." *In re Ross*, 312 B.R. 879, 889 (Bankr. W.D. Tenn. 2004), *aff'd sub nom. In re MacDonald*, 356 B.R. 416 (W.D. Tenn. 2006), *aff'd sub nom. Thompson v. Greenwood*, 507 F.3d 416 (6th Cir. 2007); *see also Power Rental Op Co*, 2021 WL 9881137 at *8 (holding that bank funds "are not located everywhere that a garnishee bank has a branch"). Instead, courts following the "bank location" approach for the situs of a bank account have identified several indicia to determine the account's physical location. These include documents relating to the account's opening, *see Power Rental*, 2021 WL 268472 at *8; the location from which the account is serviced, administered, and regulated, *see Yayasan Sabah Dua*, 335 F. Supp. 2d at 449; the address listed on the account statements, *Davis v. Bank of Am., N.A.*, 348 So. 3d 663, 667 (Fla. Dist. Ct. App. 2022); and how the account is accessed. *Am. Veteran Enter. Team, LLC v. Silver Falcon, Inc.*, No. 21-647, 2021 WL 2446261, at *3 (M.D. Fla. Apr. 30, 2021). Each of these indicia weighs strongly in favor of a location for Scintilla's Signature Bank account not in the Southern District of Texas.

19. <u>Account Opening.</u> The Debtors have not identified any Texas bank or Texas bank branch that opened Scintilla's Signature Bank account. According to Mr. Lockard's testimony, that account was opened on Scintilla's behalf by Stretto professionals in California. The account

11

application between Scintilla and Signature Bank (the "Account Application") is dated March 8, 2023, nearly one month after the account was funded. *See* Exhibit A at 1. The Account Application was executed by Mohsin Meghji, the Debtors' Chief Restructuring Officer, on Scintilla's behalf and listed Eli Rodriguez as the Signature Bank account officer. *See id.* Mr. Meghji is not based in Texas, and there is no evidence that Mr. Rodriguez is either. *See infra* ¶¶ 22–23 (Signature Bank did not and could not "engage in general banking transactions" in Houston). In addition, the Account Application lists a business address for Scintilla in San Diego. *See* Exhibit A at 1. No activities relating to the opening of the Signature Bank account appear to have taken place in this District.

20.  Servicing, Administration, and Regulation of Account.  The Account Application states that the Signature Bank account is governed by the laws and regulations of New York and includes a New York forum selection clause. *See* Exhibit A at 23, 25, 84. The Account Application also includes a New York address for all customer inquiries and notices relating to the account. *See id.* at 85.

21.  Account Statements.  The account statement for the Signature Bank account, which the Debtors produced to the U.S. Trustee at their initial debtor interview, reflects an intercompany transfer of $60,000 from Sorrento to Scintilla on February 10, 2023, and lists an address for Signature Bank of 565 Fifth Avenue, New York City (the "New York Address"). *See* Motion Exhibit A. A second document, attached as Exhibit 1 to the Debtor Objection and not previously disclosed, purports to contain the funding instructions from Sorrento and lists both the New York Address as well as a second address for Signature Bank, as its "Local Office," at 9 Greenway Plaza, Houston, Texas (the "Houston Office").

12

22. According to Signature's regulatory filings and other public statements, the Houston Office was not a full-service branch, but only a "representative office." Exhibit B at 7; Exhibit C at 1 (Houston location was a "representative office," not a "branch," that did "not engage in general banking transactions"); Exhibit D at 212 (Houston location is an "SBA Institutional Trading and Sales and Representative Office").

23. Because Signature Bank was chartered by New York, its ability to establish representative offices in states other than New York had to be in accordance with New York state law. *See* Exhibit B at 28. As a representative office of a New York bank, the Houston Office was authorized only to approve loans, solicit business, and conduct research, but it was explicitly forbidden from disbursing, transmitting, or depositing funds. *See* N.Y. Comp. Codes R. & Regs. Title 3, § G8.4. New York law also requires the posting of a disclaimer that the representative office is not a branch, and it must identify the location as a representative office on its "telephone listing, print advertisement and on its stationery." N.Y. Comp. Codes R. & Regs. tit. 3, § G8.5. For this reason, the Debtors' unsupported assertion that "Scintilla's cash was located in [the Houston Office]" is neither plausible nor legally possible. *See* Debtor Objection at 7.

24. <u>Access to Funds.</u> As discussed above, the Houston Office was not authorized to disburse funds to Scintilla.

25. Each factor overwhelmingly demonstrates that, even if Scintilla's bank account had a physical location on the petition date, that location was in New York, not Texas. Conversely, the Debtors identify no facts that would support locating this account in Texas, other than a single reference to the Houston "Office" (in which it is listed alongside the New York Office) on wire transfer instructions. *See* Debtor Objection at 7. But the Houston Office is mentioned on no other statement or document associated with the Signature Bank account, and it was not a location where

13

Signature Bank was legally authorized to provide banking services. For these reasons, there is no basis to treat Houston as the location of Scintilla's bank account or of its principal assets.

26. Finally, Scintilla produced the wiring instructions that were presumably used upon opening the Signature Bank account and included the account's ABA routing number. The ABA routing number for the Scintilla Signature Bank account links to Signature Bank branches in five states where it had branch locations —but it does not link to a Texas location because, as discussed above, Houston was simply a representative office.[9]

**C.     The U.S. Trustee's Motion is Not Untimely**

27. The Debtors and the Committee argue that even if the Debtors lacked venue in the Southern District of Texas, these cases should not be dismissed or transferred because the U.S. Trustee's Motion was untimely. *See* Debtor Objection at 8; Committee Objection at 8; Fed. R. Bankr. P. 1014(a)(2) (court may dismiss or transfer case filed in improper district "on the timely motion of a party in interest or on its motion").[10] Here, however, the Motion is not untimely because the Debtors' gamesmanship and lack of candor caused the delay, not the U.S. Trustee.

28. Under Bankruptcy Rule 1014, whether a venue motion is untimely is not determined by a bright-line rule but by the particular facts and circumstances of the case. *See Bryan v. Land (In re Land)*, 215 B.R. 398, 403 (B.A.P. 8th Cir. 1997). The requirement of

---

[9] Because Signature Bank failed about a month after Scintilla opened its account and the ABA routing tool links to current, not historical, branches, the routing number now links to Flagstar Bank, which acquired Signature Bank in late March 2023. *See* Exhibit E.

[10] The Debtor Objection is somewhat unclear as to whether the Debtors' argument is based on Rule 1014(a)(2) alone, or also on the general equitable doctrine of waiver. In any case, that doctrine is unavailable here, because that doctrine requires an "intentional relinquishment or abandonment of a known right," *Kontrick v. Ryan*, 540 U.S. 443, 458 (2004), and here the Debtors do not contend that the U.S. Trustee had actual knowledge of the deficiencies of their petition until shortly before the Motion was filed.

timeliness is less stringently enforced when, as here, the motion is based on a lack of proper venue. *See In re Deabel, Inc.*, 193 B.R. 739, 743 (Bankr. E.D. Pa. 1996) (noting that "courts have properly been more tolerant of later filings of motions to transfer improperly-venued cases than of motions to transfer properly-venued cases for the convenience of the parties"). Moreover, a debtor "should not be allowed to plead the creditor's delay in filing a venue motion when the debtor's actions misled that creditor." *In re McCall*, 194 B.R. 590, 593 (Bankr. W.D. Tenn. 1996).

29. In contrast to cases where a motion to transfer or dismiss was found untimely, the venue defect was not apparent from the face of the Debtors' petitions. *Cf. In re Shelton*, No. 01-20655, 2001 WL 35814440, at *7 (Bankr. D. Idaho Oct. 12, 2001) (petitions of individual debtors claimed venue in Idaho but reported home address in Washington). Here, the Scintilla petition on its face presented a routine and unremarkable assertion of venue in this District based on a principal place of business in The Woodlands, Texas. That assertion was supported by the Debtors' statements under penalty of perjury that: (i) the address listed in The Woodlands (that turned out to be the UPS Store) was Scintilla's principal place of business; (ii) that same location was also the place of Scintilla's principal assets; and (iii) Scintilla had maintained a principal place of business or principal assets in the Southern District of Texas for at least 180 days before the petition date or for a greater proportion of such 180 days than in any other district. *See* Scintilla Petition at 1, 3.

30. Each of these statements was at worst false and, at best, technically true only if this Court were to adopt a novel and unsound interpretation of the venue statute never before adopted by any other court: that Scintilla's rental of a mail drop (and deposit into an out-of-state bank with a non-depository representative office in Houston) on the eve of bankruptcy established its

principal place of business in this District.[11] But the Debtors did not inform the U.S. Trustee or other parties that their statements were conditioned on a novel proposition of law. Nor did they disclose key facts—including that Scintilla's The Woodlands suite address was only a mailbox and nothing more or that it had only been rented hours before the bankruptcy filing—that would have alerted the U.S. Trustee and others to the potential defect in its venue.

31. For purposes of the timeliness of the Motion, the issue is not whether the Debtors had a nonfrivolous basis to raise their venue arguments. *See* Fed. R. Bankr. P. 9011. Rather, the relevant question is whether the U.S. Trustee or other parties had any warning that these arguments would be raised at all.

32. Nor did the Debtors cure their misstatements and omissions at their section 341 meeting of creditors. The only discussion of Scintilla's venue at that meeting came in response to a creditor question, to which the Debtors' counsel answered that Scintilla "has a post office box in Houston, and it has a bank account in Houston as well, and its principal place of business is in Houston." Debtor Objection at 46. That answer wrongly implied that the alleged "principal place of business" was separate from the "post office box" (which it was not) and that the Signature Bank account was "in Houston" (which it also was not). In response to a follow-up question on Scintilla's principal place of business, counsel simply referred the questioner to Scintilla's petition. *See id.* at 48 ("It's on the face of the petition, so I would just direct you to item number 4 of the Scintilla petition"). But the Debtors' professionals knew the face of the petition was misleading because the professionals themselves arranged for the opening of the UPS Mailbox and the

---

[11] But Scintilla's statement that its principal assets (i.e., its bank deposits) were located at the UPS Store would have been false even under the theories that the Debtors present in the Debtor Objection.

Signature Bank account. Because Scintilla's alleged principal place of business was a mailbox that could only be used to receive mail, it could not possibly have been a repository for Scintilla's books and records or its principal assets, much less its corporate "nerve center." Here again, the Debtors' and their professionals' evasive answers appeared calculated to conceal, rather than to disclose, the defects in venue.

33. Other facts relevant to venue were not discovered until well after the section 341 meeting. As stated in the Motion, and as the Debtors do not dispute, the Debtors rented the UPS Mailbox the afternoon before filing bankruptcy. This was not disclosed but was only brought to the U.S. Trustee's attention by Mr. Culberson in February 2024. *See* Motion at 5. In addition, facts relating to the Signature Bank account, including the circumstances of the account opening and the limited function of the alleged Texas location of that account, were not obtained until the U.S. Trustee conducted discovery on the Motion.

34. By arguing that the U.S. Trustee unreasonably delayed filing the Motion, the Debtors fault the U.S. Trustee for taking them at their word and believing the statements signed by Scintilla's sole director and officer under penalty of perjury and by Debtors' counsel. Had the Debtors been forthright about their attempt to manufacture venue through a mailbox rental, this Motion would have been filed, litigated, and decided at the outset of this case. But the Debtors cannot misrepresent venue and then argue that venue was established solely because their misrepresentation was not detected in time. This gamesmanship and abuse of the bankruptcy system should not be tolerated by the Court, much less rewarded and encouraged by denying the Motion.

**D.    The Dismissal or Transfer of Venue is Not Discretionary**

35. Lastly, the Debtors and the Committee argue that these cases should not be dismissed or transferred because of "the convenience of parties" and the "interest of justice."

17

Debtor Objection at 10; Committee Objection at 5. In doing so, they mistakenly argue the discretionary standards under 28 U.S.C. § 1412 applicable to motions to transfer venue where venue was proper. *See, e.g.*, *Commonwealth of P.R. v. Commonwealth Oil Refin. Co.* (*In re Commonwealth Oil Refin. Co.*), 596 F.2d 1239, 1247 (5th Cir. 1979) (applying test in case where original venue was proper). Where, as here, the Motion seeks to dismiss or transfer venue under 28 U.S.C. §§ 1406 and 1408 because venue was never proper, dismissal or transfer (but only if in the interest of justice) is mandatory, and the convenience of creditors is irrelevant. *See Thompson*, 507 F.3d at 420.

36. Even if the convenience of the parties standard did apply, the Debtors and the Committee have not demonstrated that a transfer would disrupt the administration of these cases. These cases have already been reassigned once, following the resignation of now former Bankruptcy Judge David R. Jones. The Debtors and the Committee do not allege that any significant disruption occurred because of the transfer four months ago or that the present judge has been unable to bring himself up to speed on the docket and issues of these cases. There is no reason to expect that any transfer would be any more disruptive when the case is transferred to a judge in a properly-venued district. Nor can the Debtors or the Committee point to any compelling local interest in keeping these cases in Houston; rather, as they concede, the Debtors, their lead counsel, their chief restructuring officer, and lead counsel for the Committee are based out of state. *See* Debtor Objection at 13. Of the active parties in these cases, only Mr. Culberson—who supports the change in venue—appears to be based in Texas.

37. Nor would retaining venue be in the interests of justice, even if relevant. The Debtors' and their counsel's conduct reflects clear forum shopping and venue manipulation, as well as a lack of candor to the U.S. Trustee and this Court, none of which should be countenanced

18

or rewarded. *See In re Barrington Spring House, LLC*, 509 B.R. 587, 606 (Bankr. S.D. Ohio 2014) ("what you have is forum shopping . . . [t]he interest of justice and integrity of the bankruptcy court system require that the bankruptcy court not reward such efforts"). For these reasons, these cases should be transferred or dismissed.

E.  **The Transfer of Venue Should Not Be Delayed**

38. Lastly, the Committee suggests that if venue is transferred, the Court should delay the transfer until after the closing of the sale, the plan's effective date, and related matters. *See* Committee Objection at 12. But even though a similar relief was granted in *In re Houghton Mifflin Harcourt Publ'g Co.*, 474 B.R. 122 (Bankr. S.D.N.Y. 2012), both the circumstances of that case and the scope of the delay were different from the case here. In that case, the delay was less than three weeks. *Id.* at 138. Here, the relief proposed by the Committee is open-ended and would give the Debtors and Dr. Ji (as purchaser) the ability to delay transfer of venue indefinitely. Moreover, in *Houghton Mifflin*, the delay was ordered to effectuate a prepackaged plan that had unanimous creditor support; here, the plan is not fully consensual. Finally, although venue in *Houghton Mifflin* was defective, no facts relating to venue had been concealed from the parties or the court. In contrast, by delaying dismissal or transfer here, the Court would allow the Debtors the very benefits they sought by improperly manufacturing venue in this Court. For this reason, any transfer of venue should be immediate, and any pending matters should be transferred with these cases to the receiving court.

### III. CONCLUSION

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court dismiss or transfer these cases and grant such other relief as is just and proper.

Dated: March 7, 2024

Respectfully Submitted,

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 7, SOUTHERN and WESTERN
DISTRICTS OF TEXAS

| | |
|---|---|
| RAMONA D. ELLIOTT<br>Deputy Director/<br>General Counsel<br>NAN ROBERTS EITEL<br>Associate General Counsel<br>Fed. ID No. 561226<br>JOHN SHEAHAN<br>Trial Attorney<br>Department of Justice<br>Executive Office for<br>United States Trustees<br>Washington, D.C. 20530<br>(202) 307-1399 – Telephone | By: */s/ Millie Aponte Sall*<br>MILLIE APONTE SALL<br>Assistant U.S. Trustee<br>Tex. Bar No. 01278050/Fed. ID No. 11271<br>AUBREY L. THOMAS<br>Assistant United States Trustee<br>San Antonio and Corpus Christi<br>Tex. Bar No. 24130279/Fed ID No. 3674535<br>ALICIA BARCOMB<br>Trial Attorney<br>Tex. Bar No. 2406276/ Fed. ID No. 3456397<br>HECTOR DURAN<br>Trial Attorney<br>Tex. Bar No. 00783996/Fed. ID No. 15243<br>Department of Justice<br>515 Rusk, Suite 3516<br>Houston, Texas 77002<br>(713) 718-4650 – Telephone<br>(713) 718-4670 – Fax<br>Email: millie.sall@usdoj.gov<br>aubrey.thomas@usdoj.gov<br>alicia.barcomb@usdoj.gov<br>hector.duran.jr@usdoj.gov |

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by electronic means via ECF transmission to all Pacer System participants in these bankruptcy cases on March 7, 2024.

*/s/ Millie Aponte Sall*
Millie Aponte Sall